**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
**BREEDEN & ASSOCIATES, PLLC**
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DEREK MYERS, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CASE NO. |
| v. | |
| CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; and SERGIO GUZMAN, individually, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Plaintiff, DEREK MYERS, individually on behalf of himself and all others similar situated, by and through his counsel, Adam J. Breeden, Esq. of BREEDEN & ASSOCIATES, PLLC, hereby alleges the following as his Complaint:

## INTRODUCTION

1. Plaintiff DEREK MYERS, individually and on behalf of all others similarly situated, brings this class action lawsuit against the CITY OF LAS VEGAS and city marshals BROOKS and GUZMAN for a systemic pattern of unconstitutional and unlawful conduct. Defendants have repeatedly and willfully exceeded their statutory law enforcement territorial jurisdiction under NRS § 280.125(3) and Las Vegas Municipal Code (LVMC) § 2.28.080 by conducting traffic stops, detentions, searches, and arrests on property not owned, leased, or otherwise under the control of the City of Las Vegas, such as Interstate 11/US Route 95.

2. The Defendants' actions have subjected Plaintiff and the proposed class members to hundreds if not thousands of illegal searches and seizures, false arrests, and subjected them to emotional distress and other damages, violating their rights under the Fourth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983 and other law.

3. Further, the CITY OF LAS VEGAS is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for its policies, customs, and failure to train or supervise the City Marshals, which have directly caused and perpetuated these violations.

4. Plaintiff, on his behalf and on behalf of the purported class members, seeks compensatory and punitive damages, injunctive relief to enjoin Defendants from continuing these unlawful practices, and certification of a class of all individuals similarly harmed by the Defendants' unlawful actions.

**PARTIES, JURISDICTION AND VENUE**

5. Plaintiff DEREK MYERS is a resident and citizen of the State of Nevada, County of Clark, and was at all times relevant to this Complaint.

6. Defendant, CITY OF LAS VEGAS is a political subdivision of the State of Nevada.

7. Defendant, JASON BROOKS is, on information and belief, a resident and citizen of the State of Nevada, County of Clark, and was at all times relevant to this Complaint. He is sued in his individual capacity.

8. Defendant, SERGIO GUZMAN is, on information and belief, a resident and citizen of the State of Nevada, County of Clark, and was at all times relevant to this Complaint. He is sued in his individual capacity.

9. On information and belief, BROOKS and GUZMAN are members of the CITY OF LAS VEGAS' city marshal's office. As such, they are "peace officers" of limited jurisdiction as defined by NRS § 289.150(2) and other state and local law.

10. Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. § 1391 because the Defendants reside in the District and the events giving rise to the claim occurred in the District of Nevada.

11. The Court has personal jurisdiction over the Defendants because they have minimum contacts with the state of Nevada and under FRCP 4(k) are subject to personal jurisdiction in the Eighth Judicial District Court of Nevada, where this federal District Court is located.

12. This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1331 (federal question jurisdiction), 28 USC § 1343(a) (jurisdiction over civil rights claims), and 28 USC § 1367 (supplemental jurisdiction over state law claims). This case is brought, in part, under 42 USC §§ 1983, 1985, 1986, 1988 and the Fourth and Fourteenth Amendments of the United States Constitution.

13. Plaintiff alleges that the State of Nevada has waived its sovereign immunity for claims against the State, its political subdivisions and its employees under NRS Chapter 41.

14. Plaintiff alleges that the causes of action contained herein do not require exhaustion of administrative remedies. *Eggleston v. Stuart*, 495 P.3d 482, 486 (Nev. 2021) ("a party generally is not required to exhaust administrative remedies before filing a § 1983 civil rights claim").

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15. This matter involves the interplay of state statutes and one ordinance of the Las Vegas Municipal Code relating to the legal authority of City of Las Vegas marshals to enforce laws, including but not limited to enforcement of traffic laws. The laws involved include NRS § 280.125 and LVMC § 2.28.080 and concern the scope of the city marshals' territorial jurisdiction and how it is limited to city owned, leased or managed property.

16. In the early 1970s, in order to better serve the citizens of Clark County, Nevada and to eliminate redundancy and administrative costs in law enforcement, the City of Las Vegas Police Department and the Clark County Sheriff's Officer merged under a new state law permitting the formation of the Las Vegas Metropolitan Police Department. This effectively ended the CITY OF LAS VEGAS police department and the CITY OF LAS VEGAS' operation of a general law enforcement agency throughout the city limits.

17. In 1993, state law was enacted to allow the CITY OF LAS VEGAS to maintain what became known as the City Marshal's office, a branch of law enforcement with limited subject matter and limited territorial jurisdiction. As originally adopted, NRS § 280.125(3) was meant to allow creation of a city marshals unit but severely restrict their authority. The clear intent of NRS § 280.125(3)(b) was to limit the territorial jurisdiction of city marshals to "enforcement of state laws and city and county ordinances on real property owned, leased or otherwise under the control of the participating political subdivision." As contemplated and enacted, the city marshals were clearly meant to have jurisdiction only in city-owned, leased or directly controlled property such as city parks, buildings, jails and other spaces.

18. Over time, NRS § 280.125 was amended on several occasions regarding the subject matter scope of the jurisdiction of the city marshals. However, the territorial jurisdictional limits of the city marshals set forth in NRS § 280.125(3)(b) has never changed and continues to limit the city marshal's territorial jurisdiction to city owned, lease or directly controlled property, such as city parks, buildings, jails and other spaces.

19. This limitation on territorial jurisdiction of the city marshals is reiterated into city ordinance, with LVMC § 2.28.080 expressly limiting the territorial jurisdiction of the city marshals to "[t]he enforcement of State laws and City and County ordinances on real property owned, leased or otherwise under the control of the City of Las Vegas, including without limitation the Pedestrian Mall established pursuant to LVMC Chapter 11.68."

20. The CITY OF LAS VEGAS itself has acknowledged the limited jurisdiction of city marshals. Only recently in a brief filed with the Nevada Supreme Court in October of 2023 in the case of *City of Las Vegas v. Las Vegas Police Protective Ass'n* did the CITY OF LAS VEGAS in its own legal brief acknowledge that the city's Department of Safety, under which the city marshals act "is a limited jurisdiction agency whose duties are necessarily limited to protection of City property and operation of the City jail."

21. David Roger, Esq., the former elected District Attorney for Clark County, in 2014 as General Counsel for the Las Vegas Police Protective Ass'n issued a memorandum outlining the City marshals as limited in territorial scope. In this memo, Mr. Roger specifically acknowledged that

"Deputy City Marshals may enforce state laws and City and County ordinances on city property." He further explained that because of the statutory limitations on the jurisdiction of city marshals that interlocal agreements may not be enforceable as such agreements could not enlarge the statutory jurisdiction limitations on the marshals.

22. The legislative history of NRS § 280.125 supports this territorial restriction as well. The official summary of 1995 AB 164 reiterated the limited scope of "city marshals" was to "enforce certain laws and ordinances on all real property owned, leased, or otherwise under the control of the city" which is not co-extensive with the city limits. During legislative session, Mr. Marvin Leavitt representing the City of Las Vegas explained the 1995 changes to the law as follows:

> under the current law, a park ranger and marshal have the authority to enforce the law within the boundaries essentially in the city parks and this is extended to include areas outside the city parks *but on city property*. He said it would basically extend to *facilities owned by the city*. He said it specifically allows them to serve warrants of arrest issued by the municipal court, which they have been doing for many years. It also states the removal of abandoned vehicles. He said this has been a problem, and the metropolitan police are too busy with other priorities to take care of this on a day to day basis. He said this bill would essentially relieve the metropolitan police department from having to do work *in the areas that relate specifically to city property.* [emphasis added]

23. Indeed, at a later legislative session meeting, Mr. Leavitt on behalf of the City returned and again explained that the 1995 amendments were meant to "allow[ ] marshals and park rangers to enforce ordinances *on city-owned property*, not just within the parks." Thus, even during the 1995 legislative session, the CITY OF LAS VEGAS' own representative expressly acknowledged that the city marshals were not confined to only city parks, but were still limited to "city-owned property."

24. Despite this clear territorial jurisdiction on the city marshals, the CITY OF LAS VEGAS and its marshals today openly violate the territorial restrictions on their jurisdiction and conduct law enforcement activities in violation of the limitations placed on their agency by state law.

25. On January 9, 2025, at approximately 5:30 p.m., Plaintiff MYERS was driving on I-11/US Route 95 northbound at Craig Road when City Marshals BROOKS and GUZMAN, while acting on behalf of the CITY OF LAS VEGAS, unjustifiably stopped his vehicle for an alleged moving traffic violation of speeding and following too closely.

26. This location is a US highway outside the city marshals' territorial jurisdiction under NRS § 280.125(3) and LVMC § 2.28.080.

27. Quickly, MYERS became one of hundreds if not thousands of victims of a rogue law enforcement agency brazenly operating outside its legal authority.

28. Without legal authority, BROOKS and GUZMAN detained MYERS, searched his vehicle and person without consent or a warrant, administered a faulty Nystagmus test and arrested him. MYERS was subjected to a custodial arrest and detained for approximately 17 hours before release. As of the filing of this Complaint, no criminal charges for any offense have been formally filed.

29. As a result, MYERS suffered loss of liberty, emotional distress – including fear, humiliation, and anxiety, and economic harm, with lasting psychological impact, just as all class members have been.

**PROPOSED CLASS ACTION ALLEGATIONS**

30. Plaintiff MYERS brings this action on behalf of himself and all others similarly situated as a class action under FRCP 23.

31. MYERS alleges that the proposed class should be defined as "all persons who within two years of the filing of this complaint have been detained, searched, arrested, or punished by fine or incarceration due to law enforcement by the city marshals outside the territorial jurisdictional limits of 'real property owned, leased or otherwise under the control of' the CITY OF LAS VEGAS."

32. The proposed class is so numerous that joinder of all members is impracticable. While the exact number of affected class members is currently unknown, it is estimated to be more than 1,000.

33. There are questions of law or fact common to the proposed class, namely the interpretation of NRS § 280.125(3) and related law regarding the jurisdiction of CITY OF LAS VEGAS marshals.

34. The claims or defenses of the representative party are typical of the claims or defenses of the class. The proposed class representative, MYERS, was detained outside the territorial jurisdictional limitation of the city marshals for a traffic offense and was actually subjected to a custodial arrest.

35. The representative party will fairly and adequately protect the interests of the class. MYERS has no conflict of interest with other proposed class members, whose claims accrued separately.

36. The aggregate value of the individual claims of all potential class members reasonably exceeds $1,000,000.

37. The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class <u>and</u> injunctive relief is appropriate for the class as a whole <u>and</u> adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

38. The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

39. There are questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Many members of the

proposed class would have smaller claims and would be unable to retain counsel and bear the cost burdens of litigation were class action status not approved.

### FIRST CLAIM FOR RELIEF

### (Violation of Federal Civil Rights Under 42 U.S.C. § 1983 et. seq. –

### Fourth and Fourteenth Amendment)

40. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-39 as if fully set forth herein.

41. This cause of action is pleaded by Plaintiff MYERS and the proposed class members only against the following Defendants in their individual capacity as state actors: Defendants BROOKS and GUZMAN.

42. The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

43. The Fourth Amendment has been held applicable to the States and individual state actors, a process called incorporation, pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961) (incorporation of Fourth Amendment).

44. Further, the Fourteenth Amendment states "nor shall any State deprive any person of life, liberty, or property, without due process of law."

45. Pursuant to 42 USC § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

46. At the times alleged in the complaint Defendant BROOKS and GUZMAN were state

actors, acting under color of law for the CITY OF LAS VEGAS.

47. Defendants BROOKS and GUZMAN violated the Fourth and Fourteenth Amendment rights of Plaintiff and other members of the class by subjecting him to illegal detention, search and arrest in excess of their jurisdiction.

48. Defendants BROOKS and GUZMAN lacked any valid justification or Constitutional exception for their unlawful actions.

49. At the times alleged herein, the Constitutional rights of MYERS and the proposed class were clearly established, and it would be clear to a reasonable actor that their conduct was unlawful in the situation they were confronted.

50. As a result of the violation of the civil rights of MYERS and the proposed class members, the aggregate losses will be determined at trial but are alleged to exceed $1,000,000.

51. The aforementioned acts of the Defendants were the proximate cause of the damages, harms and civil rights violations to MYERS and the proposed class members.

52. The acts of Defendants BROOKS and GUZMAN were taken with oppression, fraud or malice and/or their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others, therefore Plaintiff and the proposed class members seek punitive damages.

53. Plaintiff and the proposed class members are entitled to attorney's fees, costs of suit, expert fees and interest, including attorney's fees and expert fees pursuant to 42 USC § 1988 and all other applicable law.

## SECOND CLAIM FOR RELIEF

### (Violations of Nevada Constitution/Constitutional Tort)

54. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-53 as if fully set forth herein.

55. This cause of action is pleaded by Plaintiff and the proposed class members against the following Defendants: Defendants BROOKS, GUZMAN and the CITY OF LAS VEGAS.

56. The Nevada Constitution Art. I Sec. 18 states that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall

not be violated; and no warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized."

57. The Nevada Constitution Art. I Sec. 8(2) states that "No person shall be deprived of life, liberty, or property, without due process of law."

58. The Nevada Supreme Court has held that there is a private cause of action under the Nevada Const. Art. I Sec. 18 for retrospective monetary relief, a so-called Constitutional Tort. *Mack v. Williams*, 522 P.3d 434, 450 (Nev. 2022).

59. Plaintiff further alleges that there is also a private cause of action under Nevada Const. Art. I Sec. 8 for retrospective monetary relief. Plaintiff's counsel presents this as an argument for a good faith interpretation or extension of the existing law under *Mack v. Williams*, 522 P.3d 434, 450 (Nev. 2022).

60. At the times alleged in the complaint, Defendants BROOKS and GUZMAN were state actors acting under color of law for the CITY OF LAS VEGAS.

61. The CITY OF LAS VEGAS is vicariously responsible for Defendants BROOKS and GUZMAN'S acts and omissions and violations of the public's civil rights.

62. Defendants BROOKS and GUZMAN did violate the civil rights of the Plaintiff and the proposed class members under the Nevada Constitution, Art. I Sec. 8 and 18 by subjecting him to illegal detention and arrest in excess of their jurisdiction.

63. The acts of the Defendants BROOKS and GUZMAN, which were done in concert, deprived MYERS and the proposed class members of their rights, privileges, or immunities secured by the Constitution or laws of the state of Nevada.

64. Defendants BROOKS and GUZMAN lacked any valid justification or Constitutional exception for their unlawful actions.

65. The Nevada Supreme Court has expressly held that there is no qualified immunity for Nevada Constitutional torts.

66. Defendants BROOKS and GUZMAN lacked any valid justification or Constitutional exception for their unlawful taking.

67. At the times alleged herein, the Constitutional rights of MYERS and the proposed class members were clearly established, and it would be clear to a reasonable actor that their conduct was unlawful in the situation they were confronted.

68. As a result of the violation of the civil rights of MYERS and the proposed class members, the aggregate losses will be determined at trial but are alleged to exceed $1,000,000.

69. The aforementioned acts of the Defendants were the proximate cause of the damages, harms and civil rights violations to MYERS and the proposed class members.

70. Plaintiff and the proposed class members are entitled to attorney's fees, costs of suit, expert fees and interest, including attorney's fees and expert fees.

## THIRD CAUSE OF ACTION

### (*Monell* Claims)

71. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-70 as if fully set forth herein.

72. This cause of action is pleaded by Plaintiff MYERS and the proposed class members against Defendant CITY OF LAS VEGAS only.

73. This cause of action is pleaded to assert liability of Defendant CITY OF LAS VEGAS pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978) and 42 U.S.C. § 1983.

74. MYERS and the proposed class members were deprived of their constitutional rights in violation of the Federal and State Constitutions and subjected to illegal detention and arrest in excess of the law enforcement territorial jurisdiction of the CITY OF LAS VEGAS city marshals.

75. The CITY OF LAS VEGAS had a policy, practice or custom that caused the Constitutional deprivation.

76. More specifically, the CITY OF LAS VEGAS had and continues to have a policy, practice or custom of city marshals operating outside of their limited territorial jurisdiction and permitting city marshals to conduct traffic stops, searches, and arrests on non-city property, including I-11/US Route 95 and other state or federal highways, despite their lack of jurisdiction.

77. In the two years prior to the filing of this Complaint, at least hundreds of individuals

have been subjected to similar unlawful stops, as evidenced by municipal court cases.

78. This policy, practice or custom is a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity and/or an official with final policymaking authority has ratified these decisions by subordinates.

79. The CITY OF LAS VEGAS' policy or custom amounts to deliberate indifference to the constitutional rights.

80. The CITY OF LAS VEGAS' policy or custom was the moving force behind the constitutional violations of its individual city marshals such as Defendants BROOKS and GUZMAN.

81. Further, the CITY OF LAS VEGAS has failed to train or supervise its marshals to confine their actions to statutorily authorized areas, demonstrating deliberate indifference to the rights of Plaintiff and the class, despite notice of these violations through statutory clarity, prior litigation, and City admissions.

82. As a result of the violation of MYERS' and the proposed class members' civil rights and others similar situated, perhaps thousands of persons have been wrongly and illegally detained and arrested.

83. The aforementioned acts of the Defendant were the proximate cause of the damages, harms and civil rights violations to MYERS and the proposed class members.

84. Plaintiff and the putative class are entitled to attorney's fees, costs of suit, expert fees and interest.

## FOURTH CAUSE OF ACTION

### (Battery)

85. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-84 as if fully set forth herein.

86. This cause of action is pleaded by Plaintiff MYERS and the class against the following Defendants: BROOKS, GUZMAN and the CITY OF LAS VEGAS.

87. On or about January 9, 2025, Plaintiff MYERS was physically contacted by the Defendants BROOKS and GUZMAN in a manner that was harmful or offensive, including

handcuffing and other unconsented physical contact.

88. Defendants BROOKS and GUZMAN intended to contact Plaintiff in an unconsented manner, and did so.

89. Defendant CITY OF LAS VEGAS was the principal or employer of BROOKS and GUZMAN at the time of the events and, therefore, is vicariously liability for their actions.

90. As a result of Defendants BROOKS and GUZMAN acts, Plaintiff and other class members sustained physical injury, emotional distress and incurred nominal damages for the violations of his civil rights in an amount to be proven at trial but exceeding an aggregate of $1,000,000.

91. The acts of the Defendants were taken with oppression, fraud or malice and/or their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others, therefore Plaintiff seeks punitive damages.

92. Plaintiff is entitled to attorney's fees, costs of suit, expert fees and interest.

## FIFTH CAUSE OF ACTION

### (False Imprisonment/False Arrest)

93. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-92 as if fully set forth herein.

94. This cause of action is pleaded by Plaintiff MYERS and the class against the following Defendants: BROOKS, GUZMAN and the CITY OF LAS VEGAS.

95. On or about January 9, 2025, Plaintiff MYERS was detained, arrested for had his personal liberty and freedom taken by Defendants BROOKS and GUZMAN.

96. Defendants BROOKS and GUZMAN intended to detain, arrest, confine or restrict the movements of the Plaintiff.

97. Said actions by Defendants BROOKS and GUZMAN were taken under the under the probable imminence of force, which can include physical force, threats, or other coercive means.

98. Defendants BROOKS and GUZMAN's acts constituted an unlawful violation of the personal liberty of another, and consisted in confinement or detention without sufficient legal authority.

99. This action for false imprisonment is based on the common law tort and statutory violation of NRS § 200.460.

100. Defendant CITY OF LAS VEGAS was the principal or employer of BROOKS and GUZMAN at the time of the events and, therefore, is vicariously liability for their actions.

101. As a result of Defendants BROOKS and GUZMAN acts, Plaintiff and other class members sustained physical injury, emotional distress and incurred nominal damages for the violations of his civil rights in an amount to be proven at trial but exceeding an aggregate of $1,000,000.

102. The acts of the Defendants were taken with oppression, fraud or malice and/or their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others, therefore Plaintiff seeks punitive damages.

103. Plaintiff is entitled to attorney's fees, costs of suit, expert fees and interest.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief)

104. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-103 as if fully set forth herein.

105. Pursuant to NRS Chapter 30, disputes exist between the Parties as to the scope of the territorial law enforcement jurisdiction of the CITY OF LAS VEGAS city marshals.

106. Plaintiff and the proposed members of the class assert that state and local law, including but not limited to NRS § 280.125 and LVMC § 2.28.080, restrict the territorial jurisdiction of the city marshals, which the Defendants apparently dispute.

107. Plaintiff requests that the Court review the facts of this case and issue a declaratory judgment that under NRS § 280.125, the CITY OF LAS VEGAS city marshals have territorial limitations on the scope of their law enforcement limited to "enforcement of state laws and city and county ordinances on real property owned, leased or otherwise under the control of…" the CITY OF LAS VEGAS.

108. In addition to interpreting said statutes and adjudicating whether they are Constitutional under the state and federal constitutions, the Court should enter whatever

supplemental relief it deems proper, including any injunctions against future misappropriation of interest.

**WHEREFORE**, Plaintiff prays for the following relief:

    1.    For compensatory damages including nominal damages for violations of civil rights in an unknown amount exceeding $1,000,000 in the aggregate;

    2.    For punitive damages;

    3.    For a declaratory judgment and injunction against the Defendant(s) from continuing to unlawfully conduct law enforcement activities outside their territorial jurisdiction;

    4.    For reasonable costs, interest and attorney's fees pursuant to 42 USC §§ 1983 and 1988 and all other applicable law;

    5.    Any further relief the Court deems appropriate.

DATED this 27th day of March, 2025.

        **BREEDEN & ASSOCIATES, PLLC**

        /s/ Adam J. Breeden
        _____
        **ADAM J. BREEDEN, ESQ.**
        Nevada Bar No. 008768
        7432 W. Sahara Ave., Suite 101
        Las Vegas, Nevada 89117
        Phone: (702) 819-7770
        Fax: (702) 819-7771
        Adam@Breedenandassociates.com
        *Attorneys for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial in this matter.

Dated this 27th day of March, 2025.

                                          BREEDEN & ASSOCIATES, PLLC

                                          */s/ Adam J. Breeden*

                                          **ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*