JEFFRY M. DOROCAK
City Attorney
Nevada Bar No. 13109
By: NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
By: PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
(702) 229-6629
(702) 386-1749 (fax)
Email: ngarcia@lasvegasnevada.gov
Email: pmata@lasvegasnevada.gov
Attorneys for CITY DEFENDANTS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEREK MYERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; SERGIO GUZMAN, individually; and JASON POTTS, individually,<br><br>Defendants. | CASE NO. 2:25-cv-0562-GMN-DJA |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants CITY OF LAS VEGAS, JASON BROOKS, SERGIO GUZMAN, and JASON POTTS, through their attorneys of record, JEFFRY M. DOROCAK, City Attorney, by NECHOLE GARCIA, Chief Deputy City Attorney, and PAUL MATA, Deputy City Attorney, file this Reply in Support of Defendants' Motion to Dismiss. Plaintiff's Opposition failed to establish that his Amended Complaint set forth plausible claims for relief; thus, dismissal is warranted.

This motion is based upon the pleadings and papers on file herein, the following points and authorities, and any oral argument that the Court may entertain.

. . . .

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Derek Myers ("Myers") opens his Opposition by making several misrepresentations that are immaterial to Defendants' Motion to Dismiss. For example, he contends that Defendant City of Las Vegas ("City") made an "admission" regarding marshal jurisdiction in a reply brief before the Nevada Supreme Court. ECF No. 17 at 2:11-13. However, Myers' use of an out-of-context sentence in a reply brief in an entirely different case cannot serve as some sort of admission in this case. *United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995) (assertions in pleadings are not evidence). Myers also points to some memorandum authored by general counsel for a labor union to support his position. ECF No. 17 at 2:13-14. However, that attorney has never represented the City, nor does he speak on behalf of the City. Further, his legal conclusions regarding the City marshals' legal authority are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ultimately, Myers concedes that his entire case rests on the "simple premise" that Defendants Guzman and Brooks (collectively "the Defendant officers") did not have authority under state law to stop and arrest him. ECF No. 17 at 1:23-25. However, his Opposition fails to establish the illegality of the Defendant officers' actions under state law. Moreover, he fails to sufficiently overcome the abundant federal jurisprudence holding that a state law violation, on its own, does not amount to a Fourth Amendment violation. Rather than establishing plausible claims, Myers Opposition further demonstrated the untenable legal foundation upon which his case rests. Thus, this Court should dismiss his Amended Complaint in its entirety.

**II.    ARGUMENT**

Myers fails to plausibly allege that the Defendant officers' actions violated state or federal law. Indeed, the officers have legal authority under NRS 280.125(3)(a), NRS 171.124 and NRS 171.17751 for the stop and arrest. Thus, Myers state law claims against all Defendants fail. Even if the Defendant officers exceeded the parameters set forth in state law, that alone does not constitute a violation of the Fourth Amendment. Because Myers cannot establish a federal

. . . .

constitutional violation, all his 42 U.S.C. § 1983 claims against Defendants cannot succeed. Therefore, Defendants' Motion to Dismiss should be granted.

### A. Myers failed to plausibly plead any state law violations.

Myers takes the overly simplistic view that NRS 280.125(3)(b) alone is dispositive, conflicting with the legal authority for peace officers set forth in NRS 171 and/or rendering it void. ECF No. 17 at 3:14-20. This is incorrect. Before automatically declaring a statute void, the court has a duty "when possible, to interpret provisions within a common statutory scheme 'harmoniously with one another in accordance with the general purpose of those statutes' and to avoid unreasonable and absurd results, thereby giving effect to the Legislature's intent." *Southern Nevada Homebuilders Ass'n v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) (internal citation omitted). Thus, before summarily concluding that the statutes conflict, a court must first attempt to read the statutes harmoniously with one another.

Here, NRS 171.124 and NRS 280.125(3)(b) can be read harmoniously together. While NRS 280.125(3)(b) provides a general territorial limitation for City marshals, NRS 171.124(1)(a) provides an exception to that limitation, i.e., when a peace officer observes a public offense committed in his presence. This reading of the statutes avoids an unreasonable and absurd result - that a peace officer would have to ignore someone creating a public safety risk by driving recklessly on the highway. Further, this reading is supported by the breadth of federal jurisprudence on this issue. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); *Brinegar v. United States*, 338 U.S. 160, 164, 170, 175-6 (1949).

Myers also disregards NRS 280.125(3)(a), even though that subsection is the first prong of the very statute upon which Myers rests his entire case. The plain language of that subsection does not contain the same territorial limitations as subsection (3)(b). Nor does the statute that it cites, namely, NRS 171.17751. Indeed, both statutes make clear that marshals are permitted to enforce violations of city ordinances without a territorial limitation. Myers concedes that he was "allegedly" engaged in driving conduct that violated City ordinances. ECF No. 5 at ¶ 27. Accordingly, the Defendant officers also had legal authority pursuant to NRS 280.125(3)(a) and

NRS 177.17751 to stop Myers.[1] The Defendant officers had legal authority under state law to stop and arrest Myers, so his Amended Complaint should be dismissed.

### B. Myers failed to state a plausible Fourth Amendment violation.

Myers contends, without any support, that *Virginia v. Moore* "surely bars extraterritorial arrests as unreasonable." ECF No. 17 at 6:6-8. In fact, the *Moore* case does just the opposite. There, the Court makes very clear that any "additional protections" in state law that go beyond the Fourth Amendment's reasonableness standard are "exclusively matters of state law," and not violative of the Fourth Amendment. *Virginia v. Moore*, 553 U.S. 164, 171-2 (2008) (Court "thought it obvious that the Fourth Amendment's meaning did not change with local law enforcement practices – even practices set by rule.") Indeed, the Court has consistently held that various violations of both state statutory and constitutional law do not create a Fourth Amendment violation. *Cooper v. California*, 386 U.S. 58 (1967); *California v. Greenwood*, 486 U.S. 35 (1988); *␣Whren v. United States*, 517 U.S. 806 (1996).

Really, the only case law Myers cites to support his argument is from a non-binding Tenth Circuit case that is easily distinguishable. In *Ross v. Neff*, 905 F.2d 1349 (10th Cir. 1990), the court examined whether exceeding jurisdictional limitations set forth in federal law were unreasonable under the Fourth Amendment. *Id*. at 1352. Here, in contrast, Myers alleges that Defendants exceeded state law limitations, so *Ross* is inapplicable. Indeed, even the Tenth Circuit recognized the distinction when it later declined to extend *Ross* to alleged state law violations, holding that **"[t]he officers' violation of state law is not, without more, necessarily a federal constitutional violation."** *United States v. Mikulski*, 317 F.3d 1228, 1232 (10th Cir. 2003) (emphasis added). Thus, the Tenth Circuit has also found that exceeding state law parameters alone does not constitute a Fourth Amendment violation. Other circuits have made the same finding. *Pasiewicz v. Lake County Forest Preserve Dist*., 270 F.3d 520, 526 (7th Cir. 2001) (officers making an arrest outside of jurisdiction set forth in state law "is not a per se violation of the federal Constitution.").

. . . .

---

[1] Myers also minimizes the marshal's category I status, claiming that it just pertains to their certification and training. ECF No. 17 at 4:3-4. However, NRS 289.460-.480 makes clear those categories pertain to the officers' duties and scope of authority.

Myers also attempts to conflate a lack of probable cause with a lack of state law authority when he cites to *Puliafico v. Cnty. of San Bernadino*, 42 F. Supp. 2d 1000, 1012-1013 (C.D. Cal. Apr. 12, 1999). There, the court found a Fourth Amendment violation because no probable cause existed. *Id*. The key difference here is that Myers did not plead sufficient facts to claim that the Defendant officers lacked reasonable suspicion or probable cause. To the contrary, he seems to tacitly concede in his Opposition that reasonable suspicion and probable cause existed. ECF No. 17 at 7:3-4, 26-28. Therefore, *Puliafico* is inapposite as well.

Finally, Myers characterizes his behavior leading to the stop as a "routine traffic infraction" to argue that the exigent circumstances exception to the Fourth Amendment is inapplicable. ECF 7:14-21. However, Myers' conduct led to criminal charges for reckless driving and driving under the influence, which are hardly "routine" traffic offenses in Nevada state law.[2] Myers' own Amended Complaint concedes he was pulled over for speeding and following too closely on the highway around 5:30 p.m. ECF No. 5 at ¶ 27. Speeding and following too closely on the freeway during rush hour is hardly "routine." To the contrary, that conduct constitutes the kind of imminent threat to life and risk of serious injury the exigent circumstances exception was designed to address. *See, e.g., Mayfield v. City of Mesa*, 131 F.4th 1100, 1110 (9th Cir. 2025) (driver weaving in traffic constituted exigent circumstance); *People v. Wells*, 136 P.3d 810, 813 (Cal. 2006) (reckless driving deemed an exigency); *State v. Rutzinski*, 623 N.W.2d 516, 526 (Wis. 2001) (driving erratically posed an imminent threat to the public's safety); *State v. Stapa*, 46 So.3d 264, 265 (La. App. 2.Cir. 2010) (drunk driving poses imminent danger).

### C. Myers failed to justify preserving his Fourteenth Amendment Claim.

Myers claims that his Fourteenth Amendment claim should proceed on the baseless contention that "claims of wrongful arrest or excessive force against state actors" must also be brought under the Fourteenth Amendment. ECF No. 17 at 8:11-14. However, *Graham v. Connor*, 490 U.S. 386, 387 (1989), explicitly provides that "*all* claims that law enforcement officers have

---

[2] This Court may take judicial notice that on June 9, 2025, Myers was criminally charged with Driving Under the Influence of a Controlled Substance and Reckless Driving as a result of this incident. *City of Las Vegas v. Dereck Myers,* Case No. 25-001674; *See Mack v. South Bay Beer Distributors, Inc*. 798 F.2d 1279, 1282 (9th Cir. 1986) (court may review matters of public record, including pleadings when considering a motion to dismiss), *overruled on other grounds*.

used excessive force – deadly or not – in the course of an arrest, investigatory stop or other 'seizure' of a free citizen [emphasis in original]" may only be analyzed under the Fourth Amendment's reasonableness standard. Indeed, case law is clear that claims of a wrongful stop and arrest <u>prior to detention</u> must be brought under the Fourth Amendment, while claims of excessive force <u>while in detention</u> should be brought under the Fourteenth Amendment. 490 U.S. at 395 n.10; *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015).  Here, Myers alleges the unlawful stop and arrest occurred prior to detention, so his Fourteenth Amendment claim should be dismissed.

Myers attempts to salvage his Fourteenth Amendment claim by arguing that he "separately and specifically pleaded substance and due process violations arising under the Fourteenth Amendment." ECF No. 17 at 8:19-20. To the contrary, Myers combined the Fourth and Fourteenth Amendment claims into a single count. ECF No. 5 at 8:11-13. Further, besides quoting a snippet from the Fourteenth Amendment verbatim, Myers makes no reference to any procedural or substantive due process violation in that claim for relief. *Id*. at ¶¶ 45-55. Myers also cites to an Arizona district court case to support his position that a Fourteenth Amendment claim can be brought here. ECF No. 17 at 8:27-9:4 (citing *Ortega-Melendrez v. Arpaio*, 836 F. Supp. 2d 959 (D. Ariz. 2011)). However, that case only analyzed an equal protection violation claim under the Fourteenth Amendment; the excessive force and wrongful detention claims were solely analyzed under the Fourth Amendment. *Arpaio*, 836 F. Supp. 2d at 985-86, 971-72.  Here, Myers makes no claim that he was subjected to an equal protection violation. Thus, the *Arpaio* case is inapplicable.

Myers fails to provide any legal support for his contention that his wrongful arrest claim may be brought under the Fourteenth Amendment. Thus, this Court should dismiss his Fourteenth Amendment claim.

**D. Myers' Opposition confirms his *Monell* claim fails.**

Consistent with Myers' theme that the Court should deny Defendants' motion just because he says so, Myers' opposition fails to resolve the deficiencies in his *Monell* claim. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978).

<u>First</u>, Myers has not sufficiently alleged a policy, practice or custom. Myers argues that because his Amended Complaint literally uses the phrase "policy, practice and/or custom," he has

properly alleged a *Monell* claim. *See* Opp. at 10:6-9. Myers is mistaken. By simply alleging the City has a "policy" of extraterritorial jurisdiction [ECF No. 5 at ¶ 77], without specific facts to support this policy, Myers has merely provided "conclusory allegations that do not plausibly allege the existence of a custom, practice, or policy." *Rogers v. Las Vegas Metro. Police Dep't*, 764 F. Supp. 3d 971, 980 (D. Nev. 2025); *see also Bowie v. Lombardo*, No. 2:18-cv-00686-GMN-PAL, 2019 WL 720974, at *6 (D. Nev. Feb. 20, 2019) (dismissal where allegations lack "sufficient factual specificity as to the existence of any policy, practice, or custom.")

In addition, the examples Myers references to support his policy claim are inapposite. Myers argues his allegations go beyond bare conclusions because he identifies "multiple officers, references specific statues and ordinances limiting marshal authority, and quotes the City's own admissions from prior litigation where the City acknowledged its marshals were limited to city-owned property." ECF No. 17 at 10:13-16. But each of these "examples" are the reasons why Myers believes City marshals have limited jurisdiction; they do not speak to any alleged custom or policy of the marshals *exceeding* said jurisdiction. Absent specific facts of a City policy to exceed marshal jurisdiction, Plaintiff's *Monell* claim cannot survive and must be dismissed.

<u>Second</u>, that Myers merely uses the word "ratification" in his Amended Complaint does not translate to specific facts alleging *Monell* ratification. On this point, the sum and substance of Myers' argument is that his boilerplate statement that Defendant Chief Jason Potts ("Chief Potts") "endorsed, ratified, or even mandated or encouraged," an unspecified policy, "is not a boilerplate conclusion." ECF No. 17 at 11:24-27. Instead, Myers asserts that this "factual allegation [is] grounded in statutory context, official City admissions and a pattern of misconduct." *Id.* at 11:26-28. However, statutory language, a legal brief from another case, and the single incident at issue has literally nothing to do with properly alleging facts that Chief Potts is an official with final policymaking authority, that he was present when the Defendant officers pulled Myers over, that he ratified their decision to do so, or that he ratified any decision by any other marshal to pullover anyone else on the highway. Accordingly, Myers' boilerplate statement "does nothing more than set forth a series of legal conclusions void of the requisite factual allegations," to withstand a

. . . .

motion to dismiss. *Doe by & through Doe v. Washoe Cnty. Sch. Dist.*, No. 3:23-CV-00107-MMD-CSD, 2024 WL 4804939, at *4 (D. Nev. Nov. 14, 2024).

Third, Myers attempts to distract the Court from his deficient deliberate indifference and causation allegations under *Monell* by arguing what he thinks his Amended Complaint says, not addressing what it actually says. To be clear, in the entire Amended Complaint, Myers uses the phrase "deliberate indifference" twice and the phrase "moving force" once. ECF No. 5 at ¶¶ 80-82. In each instance, Myers merely regurgitates elements of *Monell* rather than identifying facts to support these elements. *Id.* His opposition argues that his deliberate indifference claim is based on "training failures."[3] ECF No. 17 at 13:17-18. Again, however, the only specific incident referenced in the entire complaint is Myers' own arrest on the highway. As the Ninth Circuit has made clear, a single incident is insufficient to support a *Monell* claim alleging failure to train. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021). Further, Myers' conclusion that the City's "policy or custom amounts to deliberate indifference to the constitutional rights" [ECF No. 5 at ¶ 80] is insufficient without corresponding facts demonstrating how the purported policy amounted to deliberate indifference and was the moving force behind Myers' alleged constitutional injuries. *See Bowie v. Lombardo*, No. 2:18-cv-00686-GMN-PAL, 2019 WL 720974, at *6 (D. Nev. Feb. 20, 2019). For all of these reasons, Myers has failed to properly allege a *Monell* claim against the City and his Amended Complaint should be dismissed.

**E. Myers failed to plead a plausible personal capacity claim against Chief Potts.**

Myers argues that his 42 U.S.C. § 1983 claims against Chief Potts should survive because he sued Chief Potts in his personal capacity. However, Myers then articulates a standard of liability that only applies when suing a supervisor in their *official* capacity. ECF No. 17 at 14:20-24; s*ee Edgerly v. City and County of San Francisco,* 599 F.3d 946, 961 (9th Cir. 2010) (providing the standard required to establish *Monell* liability against a municipal government). A 42 U.S.C. § 1983 personal capacity claim can only be brought if the official had some personal involvement in the alleged violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (grant of summary

---

[3] Myers' opposition states a blatantly false quote from *Connick v. Thompson,* 563 U.S. 51, 61 (2011). *See* ECF No. 17 at 13:13-15. Nowhere in that case does the Supreme Court address NRS 280.125(3)(b), nor discuss any relation between NRS and the deliberate indifference standard.

judgment against personal capacity claim where official oversaw department but was not directly responsible for the actions against plaintiff). Finally, another case to which Myers cites, *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (1991), is wholly inapposite. There, the court found personal capacity because the police chief had <u>personally</u> ratified the conduct of one of the officers that was directly involved in the arrest. *Id*. However, here Myers makes no allegations that Chief Potts had any personal involvement in the alleged violations, nor does he claim that Chief Potts personally approved of Myers' stop and arrest.

At best, Myers makes the dubious contention that a "whistleblower" says that Chief Potts had personal knowledge. ECF No. 17 at 14:8-12. However, that contention is insufficient to make a personal capacity claim because: 1) a vague contention by an anonymous whistleblower does not provide sufficient facts for the City to defend, and even if it did, 2) that fact is not pleaded in the Amended Complaint. Myers' Amended Complaint is devoid of any facts about Chief Potts personal involvement in, or knowledge of his stop and arrest. The scarce facts he does plead establish that his 42 U.S.C. § 1983 claim against Potts are redundant with those against the City. Therefore, that claim should be dismissed.

**F. Myers failed to overcome qualified immunity.**

Myers seeks to overcome the qualified immunity defense by pointing to the supposed state law violation on NRS 280.125(3)(b) by the Defendant officers. ECF No. 17 at 16:24-26. That argument misses the point. To overcome a qualified immunity defense, a party must first demonstrate that the officer violated a **federal** statutory or constitutional right. *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018). Here, Myers failed to demonstrate any violation of a federal right; all he relies upon is an alleged state law violation. However, a violation of state law does not amount to a violation of the Fourth Amendment. *Moore*, 553 U.S. at 167. Moreover, Myers cannot establish the second element to overcome qualified immunity, namely that the federal law violation was clearly established, meaning that "every reasonable official" would understand that the Defendant officers' actions were clearly unlawful. *Wesby*, 583 U.S. at 62-63. Every police officer would think it reasonable to apprehend a possibly intoxicated person driving erratically on the highway. Indeed, most officers would have believed it was their duty to make

–9–

such a stop in order to protect the public. *See State v. Stolte*, 991 S.W.2d 336, 343 (Tex. Ct. App. 1999) (intoxicated drivers pose an "immediate threat to public safety."). It was eminently reasonable that the Defendant officers stopped Myers due the risk he posed to public safety. Thus, the Defendant officers are entitled to qualified immunity.

### G. Myers battery and false imprisonment claims should be dismissed.

Myers also fails to establish that his battery and false imprisonment claims against the Defendants should proceed. Again, his simplistic argument is that the Defendant officers' contact with him was unlawful due to NRS 280.125(3)(b) and therefore constituted battery and false imprisonment. ECF No. 17 at 18:19-22. However, as set forth previously, the Defendant officers acted within the lawful authority granted pursuant to NRS 171.124, NRS 280.125(3)(a), and NRS 171.17751. Moreover, the Defendant officers' actions were lawful under the exigent circumstances exception, which exists under both the U.S. and Nevada constitutions. *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984) (overruled on other grounds). *State v. Harnisch*, 114 Nev. 225, 227, 954 P.2d 1180, 1182 (1998). Because Myers cannot plausibly claim that the Defendant officers' actions were unlawful, his battery and false imprisonment claims against the Defendant officers and the City should be dismissed.

Myers concedes that Chief Potts did not personally participate in his stop or arrest. ECF No. 17 at 21:2-6. In fact, Myers claims he is "in part" attempting to have Chief Potts liable for battery and false imprisonment under the theory of "respondeat superior or vicarious liability." *Id*. at 21:2-3. However, NRS 41.745 permits liability against the employer for intentional torts, not the supervisor. Chief Potts cannot be held vicariously liable for the Defendant officers' actions under Nevada law because he is not their employer. NRS 41.745(3)(b) (defining "employer" for purposes of liability). Myers also argues that his state law claims are not redundant simply because he is suing Chief Potts in a personal capacity. However, he pleaded no facts in the Amended Complaint showing that Chief Potts was personally involved in his stop or arrest. All he contends is that Chief Potts ratified such conduct. ECF No. 5 at ¶¶ 90, 102. Those claims are redundant to those against the City. Therefore, his claims against Chief Potts should be dismissed.

. . . .

          1. <u>Discretionary immunity precludes Myers' battery and false arrest claims.</u>

Myers devotes four and a half pages of his opposition to argue that discretionary immunity does not apply to his battery and false arrest claims against the Defendant officers. ECF No. 17 at pp. 23-27. The glaring fallacy in Myers' opposition is that he argues discretionary immunity does not apply to *constitutional* violations, when Myers Complaint alleges *state tort claims* for civil battery and civil false imprisonment/arrest. *See* ECF No. 5 at pp. 13-14. In other words, Myers' opposition completely misses the mark. Myers' failure to address the substance of Defendants' motion to dismiss as to discretionary immunity applying to his civil battery and false arrest claims amounts to a concession that these claims should be dismissed. *See Knickmeyer v. Nevada ex rel. Eighth Judicial District Court*, 173 F. Supp. 3d 1034, 1044 (D. Nev. 2016) (citing LR 7-2(d) and noting that "[t]his failure-to-oppose rule does not apply solely to failure to file a physical document, but also to failure to assert in an opposition arguments that oppose those presented in the motion.").

**H. Myers concedes that he cannot recover punitive damages against the City.**

Myers concedes that he cannot recover punitive damages from the City but then asks the Court not to dismiss them against the "individual Defendants sued in their personal capacities." To be clear, Defendants' motion asked this Court to dismiss any punitive damages claims against the City, not the individual Defendants. ECF No. 11 at 22:20-23:3.[4]  Since Myers agrees that he may not recover punitive damages from the City as a matter of law, that request should be granted.

**I. Dismissal of Myers' individual claims will moot his class allegations.**

At the pre-certification stage, if this Court is inclined to dismiss Myers' individual claims, Myers will lack standing to represent any purported class in this litigation. Every Supreme Court case cited by Myers to dispute this point discusses standing *after* a certification decision has been

. . . .

. . . .

. . . .

---

[4] Because the underlying claims against the individual Defendants should be dismissed, the punitive damages claims against them should also not survive.

made, not before.[5] Moreover, while Defendants did not reference the Ninth Circuit's *Lierboe* decision in its motion, as Plaintiff claims, that case only supports Defendants' position. In *Lierboe,* the Ninth Circuit held that the "law makes clear that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'" *Lierboe v. State Farm Mut. Auto. Ins. Co*., 350 F.3d 1018, 1022 (9th Cir. 2003) (citation omitted). Similarly, should this Court dismiss Myers' individual claims, he cannot serve as a class representative, rendering dismissal of the class allegations appropriate pre-certification.

### III.   CONCLUSION

Myers' Opposition fails to establish that his Amended Complaint sets forth plausible claims for relief. He did not demonstrate that the Defendant officers lacked state authority for his stop and arrest, nor did he overcome the weight of legal authority establishing that no Fourth Amendment or other constitutional violation exists. Thus, Myers cannot plausibly state a claim for any of his causes of action. Accordingly, the City respectfully requests that this Court grant its Motion to Dismiss.

DATED this 25th day of June, 2025.

JEFFRY M. DOROCAK
City Attorney

By:   /s/ *Nechole Garcia*
NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
Attorneys for CITY DEFENDANTS

---

[5] *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) ("Our holding is limited to the appeal of the denial of the class certification motion. A named plaintiff whose claim expires may not continue to press the appeal on the merits until a class has been properly certified."); *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."); *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980) ("To deny the right to appeal [class certification] simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs would be contrary to sound judicial administration.")