1  JEFFRY M. DOROCAK
   City Attorney
2  Nevada Bar No. 13109
   By: NECHOLE GARCIA
3  Chief Deputy City Attorney
   Nevada Bar No. 12746
4  By: PAUL MATA
   Deputy City Attorney
5  Nevada Bar No. 14922
   495 South Main Street, Sixth Floor
6  Las Vegas, NV 89101
   (702) 229-6629
7  (702) 386-1749 (fax)
   Email: ngarcia@lasvegasnevada.gov
8  Attorneys for DEFENDANTS

9                    UNITED STATES DISTRICT COURT

10                       DISTRICT OF NEVADA

11
   DEREK MYERS, on behalf of himself and
12 all others similarly situated,

13                      Plaintiff,

14        vs.

15 CITY OF LAS VEGAS, a political                    CASE NO. 2:25-cv-0562-GMN-DJA
   subdivision of the state of Nevada; JASON
16 BROOKS, individually; SERGIO GUZMAN,
   individually; and JASON POTTS,
17 individually,

18                      Defendant.

19

20           **DEFENDANTS' RESPONSE TO PLAINTIFF'S**
             **MOTION FOR CLASS CERTIFICATION**
21

22        Defendants CITY OF LAS VEGAS ("City"), JASON BROOKS, SERGIO GUZMAN,

23 AND JASON POTTS (collectively "Defendants") through their attorneys of record, JEFFRY M.

24 DOROCAK, City Attorney, NECHOLE M. GARCIA, Chief Deputy City Attorney and PAUL MATA,

25 Deputy City Attorney, file the response to Plaintiff Derek Myers ("Myers") Motion for Class

26 Action Certification.  This Court should deny Plaintiff's motion because he fails to meet his

27 burden to show that Rule 23 is satisfied.

28

1    DATED this 28th day of August, 2025.

2                                              JEFFRY M. DOROCAK
                                               City Attorney
3

4                                      By:    /s/ Nechole Garcia
                                               NECHOLE M. GARCIA
5                                              Chief Deputy City Attorney
                                               Nevada Bar No. 12746
6                                              PAUL MATA
                                               Deputy City Attorney
7                                              Nevada Bar No. 14922
                                               495 South Main Street, Sixth Floor
8                                              Las Vegas, NV 89101
                                               Attorneys for City of Las Vegas
9
                      **MEMORANDUM OF POINTS AND AUTHORITIES**
10

11   I.     **INTRODUCTION**

12          Myers' Motion for Class Certification provides absolutely no proof to establish that any

13   of Rule 23's requirements are met. Instead, he relies on vague, anecdotal data and speculative

14   assumptions.  Myers fails to clearly define a class or provide even an <u>approximate</u> number of

15   class members.  His two vague accounts of arrests in other jurisdictions fall far short of

16   establishing numerosity. Also, because these claims would involve different dates, locations,

17   officers, underlying circumstances, and defenses, he cannot establish commonality or typicality.

18   Indeed, individual questions for each class members' claim predominate so significantly that

19   each claim would require a mini trial to establish liability. That undermines the entire purpose of

20   class certification.

21          Myers also cannot adequately represent the class because he lacks standing as he has

22   suffered no federal constitutional violation.  Additionally, Myers has competing interests with

23   the potential class. Not only does he have pending criminal charges arising out of the same facts,

24   he has also filed a second lawsuit against Co-Defendant Chief Jason Potts that he is using as

25   leverage against the City in this case. Finally, certification under Rules 23(b)(1),(b)(2) and (c)(4)

26   is inappropriate here.

27          For these reasons, this Court should deny Myers' Motion for Class Certification.

28

## II.    **LEGAL STANDARD**

Class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Duke*, 564 U.S. 338, 348 (2011) quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). Class actions should not be granted lightly. Instead, the court must conduct "rigorous analysis" to determine whether the prerequisites of Rule 23 are satisfied. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). That may involve the court probing "behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc.*. 564 U.S. at 351.  Moreover, a party seeking class certification faces a significant burden. He must "affirmatively demonstrate his compliance with the rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 350. (emphasis in original). Indeed, a plaintiff must provide "significant proof" that his claim meets Rule 23's prerequisites. *Id*. at 353.

## III.    **ARGUMENT**

Myers' fails to provide the "significant proof" required to establish compliance with Rule 23. In fact, Myers provides no evidence at all to support his motion.  For that reason alone, his motion should be denied. Further, Myers cannot establish that Rule 23's prerequisites of numerosity, commonality, and typicality are met. Indeed, each claim Myers seeks to include involves a different date, location, officer, circumstances, facts, injuries, and defenses. Put simply, the questions involved in each claim are too individualized to be tried together.  Finally, Myers cannot fairly represent the class because he lacks standing and his interests significantly diverge from the class members' interests. Thus, his motion should be denied.

### A.  Myers produced no evidence to show that Rule 23's prerequisites are met.

As the party seeking class certification, Myers has the burden of providing factual evidence establishing that he has met the standard set forth in Rule 23.   That burden is satisfied by producing "significant proof" demonstrating that Rule 23's prerequisites are met. *Wal-Mart Stores, Inc.*, 564 U.S. at 353. Indeed, "if there is no evidence the entire class was subject to the same allegedly discriminatory practice, there is no question common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011). This Court in particular has denied a motion

1   to certify a class where there was no evidence presented to support a plaintiff's claims. *Calvert v.*
2   *Alessi & Koenig*, LLC, 2012 WL 760737 at *2 (D. Nev. March 7, 2012) (denied motion where
3   no discovery was produced to the court to support claims of numerosity).

4       Myers' Motion to Certify is devoid of any real evidence to support his claims that Rule
5   23 is satisfied. All that Myers points to as evidentiary support is the Amended Complaint,
6   legislative history, and a quote from the City's brief in a completely unrelated case. ECF No. 24
7   at 3:12-15. None of that is evidence. Legislative history may help interpret the law, but it is not
8   evidence to support that this case qualifies for class certification. *Heppner v. Alyeska Pipeline*
9   *Service Co*., 665 F.2d 868, 871 (9th Cir. 1981). Moreover, an out of context assertion by the City
10  in a pleading has no evidentiary value. *U.S. v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995)
11  ("assertions in pleadings are not evidence"). Thus, Myers has produced absolutely no evidence to
12  establish "in fact" that his case warrants class certification. He has produced no declarations,
13  deposition testimony, statistical data, or discovery responses.

14      At best, Myers makes the offhand claim that the Deputy City Marshals (the "Marshals")
15  arrested an individual in North Las Vegas and another individual in Henderson. ECF No. 24 at
16  2:25-26. However, such anecdotal, unsupported evidence does not constitute the "significant
17  proof" required to warrant class certification. *Wal-Mart Stores, Inc, v. Dukes*, 564 U.S. 338, 357-
18  358 (2011).  Likewise, Myers attempts to create some statistical "evidence" in the form of a map
19  he prepared showing arrests and citations by Marshals in the last two years. ECF No. 24 at 7:13-
20  14.  Not only is this map vague, difficult to read, and unsupported by admissible evidence, it fails
21  to identify how many of those arrests and citations supposedly occurred outside of the Marshals'
22  territorial jurisdiction.

23      Myers failure to provide any evidence to support his motion is reason alone for denial.
24  Thus, this Court should deny his motion for class certification.

25  **B.  Myers proposed class definitions are overbroad.**

26      Myers proposed class definitions should be rejected because they are so "amorphous and
27  diverse" it is not "reasonably clear that the proposed class members have all suffered a
28  constitutional or statutory violation warranting some relief." *Adashunas v. Negley*, 626 F.2d 600,

604 (7th Cir. 1980). Indeed, "without reasonable specificity the court cannot define the class, cannot determine whether the representation is adequate, and the [defendant] does not know how to defend." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982) (quoting *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d. 1122, 1125-27 (5th Cir. 1969) (Godbold, J., concurring)).

As to injunctive relief, Myers proposes that the class should include everyone "in the past" who had law enforcement contact with the Marshals outside their territorial jurisdiction. ECF No. 24 at 4:4-6. This is an incredibly vague and overbroad definition of the class. First, there are no time constraints; it is anyone who at any point "in the past" had contact with the Marshals outside their jurisdiction. Moreover, both the injunctive and damages class definitions are so overbroad and diverse that it is difficult for the City to defend or for the class members to be adequately identified, let alone represented. Indeed, this class definition fails to weed out individuals who were lawfully stopped due to a variety of different statutes and legal doctrines granting authority. For example, it does not exclude those arrested pursuant to NRS 171,[1] where there were exigent circumstances justifying the contact,[2] where the Marshal witnessed a category "A" felony,[3] where the Marshals engaged in the contact at the behest of another law enforcement agency,[4] where an interlocal agreement exists,[5] or where the Marshals were engaged in fresh pursuit. [6] Another highly individualized inquiry is whether any of these individuals pled guilty or were found guilty of the underlying offense, which would preclude them from obtaining relief under § 1983. *Heck v. Humphrey*, 512 U.S. 477, 486-7 (1994).

More importantly, if any of these individualized facts apply that would make the contact lawful, then that particular class member would have suffered no injury and would lack standing.

---

[1] NRS 171.124 permits any peace officer to arrest a person for a crime committed in their presence.
[2] The exigent circumstances exception permits an officer to conduct a stop or arrest when there is a reasonable belief it was "necessary to prevent physical harm to the other person." *U.S. v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984).
[3] NRS 171.1223 permits officers with limited jurisdiction to respond to a category "A" felony outside their jurisdiction.
[4] NRS 277.035 permits one law enforcement agency to respond to a request for assistance from another law enforcement agency.
[5] NRS 277.180(f) permits law enforcement agencies to enter interlocal agreements for "joint and cooperative use" of the agencies.
[6] NRS 171.172 permits any peace officer in fresh pursuit of a person who has committed a felony or committed an offense in his presence to hold the person in custody.

1    *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974) (must allege "some threatened or actual injury"

2    injury to have standing.) Indeed, it will take an individualized inquiry into the specific facts for

3    each putative class member to determine whether the individual has standing to bring suit, which

4    defeats the purpose of class certification. Thus, Myers' motion should be denied.

5             **C.  Myers failed to meet the Rule 23(a) prerequisites.**

6           Myers failed to provide any proof establishing that this case meets any of the Rule 23(a)

7    perquisites. Indeed, he did not meet his burden of showing that numerosity, commonality, or

8    typicality exists "in fact". Moreover, the definition of "real property" under the City's control is

9    so broad that it is clear that Myers will never be able to establish these prerequisites. Myers also

10    failed to demonstrate that as class representative, he can fairly and adequately represent the

11    interests of the class. Since Myers cannot establish the prerequisites, his claims cannot achieve

12    class certification and his motion should be denied.

13             **1.  Myers produced no evidence to support numerosity.**

14           Myers produced no evidence to support that the class is "so numerous that joinder of all

15    members is impracticable." Fed. R. Civ. P. 23(a)(1). Indeed, Myers "evidence" that he's met this

16    requirement consists of two vague anecdotes of the Marshals making one arrest in Henderson

17    and one arrest in North Las Vegas. ECF No. 24 at 2:24-26. Yet, he provides no proof that these

18    arrests actually occurred, nor does he provide any specifics regarding the circumstances

19    surrounding the arrests. He also vaguely claims there will be "several hundred, if not a thousand"

20    class members, but points to nothing other than his makeshift map as proof. ECF No. 24 at 6:26.

21    That map is woefully inadequate because it purportedly shows <u>all</u> Marshal activity for two years,

22    rather than just activity outside of their jurisdiction. Without any proof to support his claims of

23    numerosity, this Court cannot find that the class size is so large as to render joinder

24    impracticable. *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011) (party "must be prepared to prove

25    there are *in fact* sufficiently numerous parties.") (emphasis in original); *Calvert v. Alessi &*

26    *Koenig*, LLC, 2012 WL 760737 at *2 (D. Nev. March 7, 2012).

27           There is another glaring flaw in Myers' argument that will permanently defeat his ability

28    to establish numerosity. Myers repeatedly points to the language in NRS 208.125(3)(b), namely

that the Marshals may enforce "state laws and city and county ordinances on real property owned, leased or otherwise under the control of the participating political subdivision." *Id*. However, Myers has never stopped to contemplate how the law defines that "real property." Instead, he appears to assume it is limited to City owned buildings and parks. However, as set forth below, the NRS definition of "real property" of the City is far more expansive:

> **NRS 268.708 "Real property" defined**. "Real property" means
> 1. Land, including land under water.
> 2. Buildings, structures, fixtures, and improvements on land.
> 3. Any property appurtenant to or used in connection with land.
> 4. Every estate, interest, privilege, easement, franchise in right of land, legal or equitable, **including without limitation rights-of-way**, terms for years, and liens, charges or encumbrances by way of judgment, mortgage or otherwise, and the indebtedness secured by such liens.

NRS 268.708 (emphasis added). Thus, "real property" encompasses so much more than City buildings and parks, as Myers seems to contend. It also includes rights-of way, i.e. streets under the City's control. Thus, any traffic stops performed on City streets where it has a right-of-way is part of the "real property" where the Marshals have jurisdiction.

No doubt individuals stopped by Marshals on City streets are a large part of the supposed "several hundreds if not a thousand" class members Myers claims will come forward. With these individuals removed from the class, Myers is left with a few isolated incidents such as his unsupported claim there was a single arrest in North Las Vegas and another in Henderson. Even if this Court accepted those two accounts as true, that is only two class members, which is insufficient. *See Andersen v. Brian Restaurant Group*, LLC, 333 F.R.D. 194, 202 (D. Nev. 2019) ("Generally, courts have held that numerosity is satisfied when the class size exceeds forty members.") Indeed, since the supposed class cannot, as a matter of law, include those stopped on City streets, Myers will be unable to identify nearly enough class members to satisfy the numerosity prerequisite. Myers motion should be denied with prejudice because he cannot establish numerosity.

### 2. Myers failed to establish commonality.

Myers also failed to produce any evidence establishing commonality. To demonstrate commonality, Myers must show "there are questions of law or fact common to the class." Fed. R.

1  Civ. P. 23(a)(2). Indeed, a party must demonstrate "that they and the proposed class have

2  suffered the same injury and have claims that depend on a common contention capable of class

3  wide resolution." *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019) citing *Wal-Mart*

4  *Stores, Inc.*, 564 U.S. at 349-50. "Capable of class wide resolution 'means that determination of

5  its truth or falsity will resolve an issue that is central to the validity of each one of the claims **in**

6  **one stroke.'**" *Id.* (quoting *Wal-Mart Stores, Inc.,* 564 U.S. at 350) (emphasis added).  Thus, the

7  commonality requirement may be fulfilled if the court can determine "in one stroke" whether a

8  single policy or practice to which the class member was subjected caused the injury. *Id*. Indeed,

9  to establish commonality, a party must be able to use the very same proof, so that proof as to one

10 will be proof as to all, obviating the need for separate trials for each class member. *See General*

11 *Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982); *Califano v. Yamasaki*, 442

12 U.S. 682, 700-1 (1979).

13        The opposite is true here. Each claim will depend on individualized facts that will require

14 different proof and legal arguments. For example, depending on the location of the incident, the

15 City will have to provide proof as to whether it is a right-of-way or otherwise "real property"

16 under the City's control.   The circumstances surrounding the stop will have to be litigated.

17 Pertinent questions for each case will also have to be litigated, such as: 1) was the stop the result

18 of a fresh pursuit? 2) did the officers witness the class member commit a crime in their presence?

19 3) did the officers respond to a category A felony? 4) did the agency with primary jurisdiction

20 request Marshal assistance? Each of these questions are unique to each case and must be litigated

21 on an individualized basis.

22        One of the anecdotes Myers provides perfectly demonstrates the lack of commonality.

23 Myers alleges that the Marshals arrested an individual in Henderson. Assuming that is true, the

24 parties would have to litigate whether the stop was made pursuant to a request from the

25 Henderson Police. Or, it could be that the Henderson Police were primary on the arrest and the

26 Marshals simply assisted. Finally, it could have been a "Joining Forces" event, a state sponsored

27 program where the Marshals join with other law enforcement agencies throughout the state to

28 increase traffic enforcement in certain concentrated areas for a short period of time. Ex. A,

*Joining Forces Press Release*.  Indeed, it is clear from this example that any class claims could not be resolved by "one stroke."  Rather, granting Myers' motion would result in there having to be mini trials as to liability for each class member.

Myers also failed to demonstrate that the putative class members have the same injury. Instead, his class definition is so broad it encompasses a wide variety of injuries. Myers not only seeks to include those arrested, but also those that were searched, and still others were cited and paid a fine.  However, as courts have recognized, there is a vast difference between being cited and being imprisoned. For example, the constitutional right to counsel only attaches when an individual faces imprisonment. *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972) (distinguishing between cases where incarceration is possible versus merely a fine). Paying a fine versus being arrested are very different injuries that do not meet the test of commonality.

Ultimately, Myers fails to establish that only one set of proof can be used for the class members.  Rather than being able to prove each members' claim in "one stroke," an individualized inquiry is required as to the specific facts and applicable law for each member. Moreover, Myers did not demonstrate that the class members all experienced the same injury. Myers failed to meet the commonality prerequisite, so his motion should be denied.

### 3. Myers failed to demonstrate typicality.

Myers also failed to demonstrate that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." *Armstrong v. Davis*, 275. F.3d 849, 869 (9th Cir. 2001). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, there are significant differences between Myers claims and the City's defenses and those of the putative class. *See Bliss v. CoreCivic, Inc.*, 711 F. Supp. 3d 1233, 1238 (D. Nev. 2024) ("[d]efenses that must be litigated on an individual basis can defeat class

1   certification.")(citations omitted.) Myers' was stopped on an interstate highway and arrested for

2   DUI. Yet, he seeks to include class members who were stopped on City streets and other

3   locations for a variety of offenses on different dates. The differences are really apparent when it

4   comes to defenses. In Myers case, the City's defense is that the contact was permitted under state

5   law and the exigent circumstances doctrine. However, in another claim, the defense may be that

6   the arrest was lawful because it was the result of a "fresh pursuit" pursuant to NRS 171.172. In

7   yet another claim, the defense may be that the suspect committed a category A felony in the

8   officer's presence and so the arrest in lawful.  Another defense could be that the Marshals were

9   asked to assist by the primary law enforcement agency or acted pursuant to an interlocal.

10  Likewise, there are a variety of injuries that could be alleged. Some may have been arrested like

11  Myers, but others could have merely been cited and/or punished with a fine. Myers does not

12  allege excessive force, but other claimants might. Indeed, Myers' claims, defenses and injuries

13  are not typical of the class, so his motion should be denied.

14              **4.   Myers and his counsel do not adequately represent the class.**

15          Rule 23(a)(4) requires the representative parties to fairly and adequately represent the

16  class. Fed. R. Civ. P. 23(a)(4).  Indeed, a class representative must be "part of the class and

17  'possess the same interest and suffer the same injury' as the class members." *General Telephone*,

18  457 U.S. at 156 (internal quotation omitted). Myers cannot adequately represent the class

19  because he suffered no injury under federal law. Indeed, Myers does not allege there was a lack

20  of reasonable suspicion for his stop or probable cause for his arrest. Rather, his entire case rests

21  on the fact that the stop occurred on the interstate, supposedly in violation of NRS 280.125.

22  According to Myers, that is the action that constitutes a Fourth Amendment violation. However,

23  federal case law is exceedingly clear that violations of a state statute alone do not amount to a

24  violation of the Fourth Amendment. Indeed, the U.S. Supreme Court has held that "state

25  restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553 U.S 164,

26  167 (2008).  The Ninth Circuit as well as other circuits have followed suit. *Sanders v. Silva*, 473

27  F. App'x 769, 770 (9th Cir. 2012) ("To constitute a Fourth Amendment violation, an arrest by a

28  state officer must be unreasonable under the United States Constitution, rather than simply not in

1    compliance with state laws."); *Martinez-Medina v. Holder*, 673 F.3d 1029, 1037 (9th Cir. 2011);

2    *United States v. Mikulski*, 317 F.3d 1228, 1232 (10th Cir. 2003); *Pasiewicz v. Lake County Forest*

3    *Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001) (officers making an arrest outside of

4    jurisdiction set forth in state law "is not a per se violation of the federal Constitution.")  Myers

5    failed to present any evidence showing that he suffered a Fourth Amendment injury, therefore he

6    cannot be the representative for a §1983 class claim.

7        Even if he did have standing, Myers is still an inadequate representative because he does

8    not have the same injury as the rest of the supposed class.  Myers was arrested and detained on a

9    DUI charge and reckless driving charge. If convicted, Myers faces up to six months in jail. NRS

10    484C.400(1)(b)(1)(I).  However, his class definition seeks to include those who have merely

11    been issued a citation by the Marshals or have paid a fine. In other words, Myers seeks to include

12    individuals who did not experience a loss of liberty as he did.  As discussed above, courts

13    consider imprisonment a much more significant injury than paying a fine. *Argersinger v. Hamlin*,

14    407 U.S. 25, 37 (1972). Myers cannot adequately represent the class because he does not have

15    the same injury.

16        Further, Myers interests are not aligned with the potential class. Subsequent to filing this

17    case, Myers filed a second lawsuit (where Mr. Breeden is also counsel) against co-Defendant

18    Chief Jason Potts that alleges First Amendment violations. (Case 2:25-cv-1543-RFB-NJK). The

19    same day he filed suit, Myers proclaimed on social media that the City has declared "war" on

20    him and that he "does not lose." Ex. B, Myers' Screenshot. Myers also stated that "the bloodbath

21    is only beginning," apparently referring to his new lawsuit. *Id*. Thus, Myers seems to view his

22    new lawsuit as part of his larger fight against Chief Potts and the City – a fight that includes his

23    criminal charges and this case.  *Id*.   Thus, Myers interests are broader than just seeking redress

24    for himself and class members for this case. Myers has expressed a desire for vengeance against

25    the City and an intent to fight his cases to the bitter end.  His additional interests in defending his

26    criminal case and using the new case as leverage directly conflict with the interests with any

27    potential class members simply seeking redress here.

28

1   Myers has suffered no constitutional violation and therefore lacks standing to represent
2   the class.  Moreover, his interests are antagonistic to the potential class. Thus, Myers cannot
3   fairly and adequately represent the interests of the class.

### a.  Mr. Breeden cannot adequately represent the interests of the proposed class.

Myers' lists the qualifications of his counsel, but glaringly absent is any experience litigating class claims. Courts have looked at whether counsel has experience with class litigation when determining whether they may adequately represent the class. *In re Mellon Bank Shareholder*, 120 F.R.D. 35, 37 (W.D. Penn. 1988); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F.Supp.2d. 1075, 1081 (D. Minn. 2009); *Boone v. City of Philadelphia*, 668 F.Supp.2d 693, 707 (E.D. Penn. 2009). Mr. Breeden has never represented a class or managed a large class case. Therefore, he lacks the experience needed to adequately represent the class.

More importantly, Mr. Breeden cannot adequately represent the class because he represents Myers in his other lawsuit against co-Defendant Chief Jason Potts. As Myers' counsel for both cases, Mr. Breeden cannot just focus on getting relief for class members in this case; he must also be concerned with Myers seeking relief in the new case as well.  It is clear that Myers is motivated to use the new case as leverage to resolve the original one. Myers copied Mr. Breeden on his tweet stating that his new case was part of his larger fight against the City, and the City is unaware of Mr. Breeden disavowing this sentiment. Ex. B. Thus, it appears Mr. Breeden concurs with Myers' use of his new case to leverage this one. This interest runs contrary to any class members, whose sole desire would be getting relief in this case alone. If appointed as class counsel, Mr. Breeden's loyalty will be divided between Myers and the class members. Thus, Mr. Breeden cannot serve as class counsel.

### D.  Myers also fails to meet his Rule 23(b) burden.

Even if Rule 23(a) factors are met (which they are not), class certification fails if the elements of Rule 23(b) are not met. Specifically, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 614 (1997). Because Myers fails to show that the putative class may proceed under any Rule 23(b) standard, class certification should be independently denied on this basis, as well.

### 1. Individual issues predominate.

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites." *Amchem Prods., Inc.* at 615. First, "common questions must 'predominate over any questions affecting only individual members.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(b)(3)). Second, "class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

As to the first requirement, the Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, at 623. The Court must rest its examination on the legal or factual questions of the individual class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). "To determine whether common issues predominate, this Court must first examine the substantive issues raised…and second inquire into the proof relevant to each issue." *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006). Thus, a court must scrutinize the relation between common and individual questions in a case. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member." *Id*. In contrast, a common question is one "where 'the same evidence will suffice for each member to make a prima facie showing [or the] issue is susceptible to generalized, class-wide proof.'" *Id.* (internal quotation omitted). Class certification is impermissible if evidence must be taken from individual class members to resolve their claims. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001).

Myers incorrectly asserts that he meets Rule 23(b)(3)'s predominance requirement. Myers concedes there are differing facts and questions presented between him and the class, though he attempts to characterize them as slight. ECF No. 24 at 11:16-17. In reality, individual issues predominate because the circumstances surrounding why, where and by whom each

putative class member was allegedly stopped by a City marshal will dominate the analysis even before getting into the merits for each claim (which inevitably requires individual inquiries). The facts surrounding Myers' specific circumstances prove this point. Myers alleges he was wrongly pulled over by City marshals Guzman and Brooks ("Defendant officers") while driving on the I-11/US-95 freeway in Las Vegas. *See* First Amended Complaint, ECF No. 5 at ¶ 27. The Defendant officers observed Myers tailgate their vehicle, pass them on the shoulder, and then speed off down the highway. *Id.* The Defendant officers conducted a traffic stop out of a concern for the public's safety. *See id.* at ¶ 30. During the stop, the Defendant officers developed reasonable suspicion that Plaintiff was driving under the influence, so they conducted field sobriety tests on Myers. *Id.* Myers exhibited clues of impairment, so the Defendant officers arrested Myers for various traffic violations and DUI. *Id.*

Thus, an initial question that is highly individual is the location of the person's contact with the Marshals. Myers' was stopped on the highway, but he seeks to include class members that stopped on City streets and other locations such as Henderson and North Las Vegas. The question of location will surely vary from class member to class member.[7] Moreover, whether that particular location is within Marshal jurisdiction will vary. As discussed above, other highly individualized questions are the class member's conduct prior to the stop, whether any exigent circumstances justify the stop, whether the stop occurred after a "fresh pursuit" or after the officer observed the suspect commit a crime. The variance of individual issues and questions is obvious, including: what type of stop was it: a traffic stop or a non-traffic stop? What was the reason for the stop: was there suspicion that a law had been violated and if so, what law? What marshal(s) were involved as the City has well over 70 individual marshals? In Myers' case for example, a key fact will be that Myers was driving erratically in front of the Defendant officers, which is what triggered his stop in the first place. Myers has not produced a single piece of

---

[7] The graphic Myers includes on page 7 of his class certification motion – which is inadmissible evidence as Myers fails to provide any foundation or authentication to support the graphic – does nothing to quash these concerns. The dots that purport to represent arrests and citations by City marshals could be literally anywhere across the valley, for any multitude of reasons, which proves why the individual issues pertaining to each alleged arrest/citation will predominate the analysis of each scenario.

1  evidence to indicate that any other putative class member was pulled over for a similar reason or

2  under similar circumstances.

3      Likewise, the injuries are different as Myers concedes, though it is not just the length of

4  detention.[8] Was the person detained? Was the person searched? Was the person arrested? Was

5  the person issued a citation? Was the person "punished" by fine? Was the person "punished" by

6  incarceration? Was there suspicion of a controlled substance involved? The list will literally go

7  on. Accordingly, each claim will have varying facts and circumstances, requiring its own trial to

8  determine liability, making class treatment futile.

9      Myers also presumes a common finding of *Monell* liability. However, he has failed to

10  even establish that a violation of § 1983 occurred. All Myers has argued is that the Marshals

11  violated state law, but that does not amount to a federal constitution violation. *Virginia v. Moore*,

12  553 U.S 164, 167 (2008).  There can be no *Monell* liability if there is no federal constitutional

13  violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Monell v. Dep't of Social*

14  *Services*, 436 U.S. 658, 692 (1978).  Thus, Myers does not share that very important common

15  question with the class.

16      Myers also claims that class certification for Section 1983 class are "routinely" granted

17  by courts. ECF No. 24 at 12:24-13:1. However, the cases he cites share characteristics that make

18  them easily distinguishable from this case. First, the party seeking class certification actually

19  provided evidence establishing compliance with Rule 23's prerequisites.  Moreover, the cases all

20  involve a group of people allegedly suffering harm the same type of event, namely protests.  For

21  example, in *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, the class was

22  subjected to a forceful dispersal of an immigration rally by police. 246 F.R.D. 621, 629 (C.D.

23  Cal 2007). *Aichele v. City of Los Angeles*, involves individuals arrested as part of a protest on a

24  specific date. 314 F.R.D. 478, 491 (C.D. Cal 2013). Conversely, here Myers attempts to take

25  different contacts with different Marshals in different locations and on different dates, based on

26  different circumstances, and claim common questions predominate. There are so many variables

27

28

---

[8] Interestingly, in this section of the motion Myers' characterizes the class claims as only including arrests, whereas he seeks to include searches and citations in his class definition.

1   with the potential class members here that there cannot be a single trial for all of them. Indeed,

2   they would require mini-trials just to establish liability. Because individual issues predominate,

3   Myers' motion should be denied.

4            **2.  Individual damages underscore why predominance is lacking.**

5            Providing no methodology for evaluating class wide damages, presumably because

6   Myers realizes he cannot do so efficiently for class treatment, Myers essentially argues that the

7   variances in class-wide damages do not matter because of the "core liability question[s]" at issue.

8   *See* ECF No. 24 at 13:15-19. Myers further suggests that the Court "kick the bucket" as to

9   general and statutory damages, stating the "Court may defer that determination until after

10  liability is adjudicated." ECF No. 24 at pp. 16-17. Myers is mistaken on multiple fronts.

11           As established above, the predominance of individual issues to analyze potential liability

12  are so numerous that "core liability" issues simply do not exist in this case as Myers alleges.

13  Further, Myers does not provide any solution as to how to handle class-wide damages in this

14  case other than to say that damages are secondary to liability and nonetheless, *the Court* can

15  "figure it out later." However, as the Supreme Court held in *Comcast Corp. v. Behrend*, 569 U.S.

16  27, 35 (2013), if a plaintiff does not set forth a model purporting to serve as evidence of class-

17  wide damages attributable to his theory of liability, the plaintiff "cannot possibly establish that

18  damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."

19  Indeed, "at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages

20  case must be consistent with its liability case.'" *Id.* (citation omitted).

21           Here, Myers entirely glosses over the additional, problematic individual issues that will

22  predominate with respect to potential damages among putative class members. Myers' reliance

23  on *Leyva v. Medline Indus., Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) is woefully misplaced. In

24  *Leyva,* a wage and hour class action matter, the Ninth Circuit distinguished the facts of that case

25  from *Comcast* because the defendant-employer had a computerized payroll and time-keeping

26  database that "would enable the court to accurately calculate damages and related penalties for

27  each claim." *Id.* at 514. In other words, calculating damages was manageable on a class-wide

28  basis because there was an existing system for this exact purpose. Such is not the case here.

1  Instead, Myers completely ignores the variances in damages each putative class member

2  allegedly suffered (type of injury, e.g. arrest, search, detainment, citation, fine, emotional

3  distress, etc.) and most importantly, the lack of any mechanism to calculate those damages

4  efficiently for class purposes. Accordingly, not only do individual issues predominate on the

5  liability side, but they similarly predominate on the damages side. Unsurprisingly, Myers offers

6  no method to calculate damages on a class-wide basis. Thus, class-wide treatment of putative

7  class member claims and damages is impossible and Myers' motion should be denied.

8        **3.  A class action is not the superior method to adjudicate the claims.**

9        A court must consider if the class is superior to individual suits. *Amchem, supra*, 521

10  U.S. at 615. Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority

11  analysis that includes "the likely difficulties in managing a class action." Fed. R. Civ. P.

12  23(b)(3). "If each class member has to litigate numerous and substantial separate issues to

13  establish his or her right to recover individually, a class action is not superior." *Zinser*, 253 F.3d

14  at 1192; *see also Otomo v. Nevada Ass'n Servs., Inc.*, No. 2:10-cv-2199-JCM-GWF, 2013 WL

15  1249598, at *9, FN12 (D. Nev. Mar. 25, 2013)(denying class certification when class treatment

16  would be "too cumbersome," the questions... too diverse" and that "everybody would have a

17  different story).

18        Here, a class action would be unmanageable given the predominance of the individual

19  issues necessary to establish: (1) where did the stop occur; (2) was it a traffic stop or a non-traffic

20  stop; (3) what was the reason for the stop; (4) what marshal(s) were involved; (5) was there

21  suspicion of a controlled substance; (6) was the person detained; (7) was the person searched; (8)

22  was the person arrested; (9) was the person issued a citation; (10) was the person "punished" by

23  fine; (11) was the person "punished" by incarceration; (12) if applicable, how long was the

24  person detained or incarcerated; (13) what damages does the person seek/believe they are

25  entitled to; and (14) what proof supports the individual's damages? Thus, determining liability

26  and damages for the class will require individualized inquiries on each of these issues.

27        Furthermore, the adjudication of each putative class member's claims on a class-wide

28  basis would amount to the adjudication of each of their claims on an individual basis, making

1   class action treatment of these claims unmanageable. These claims will not benefit from any

2   economies of scale, so that the alternative—separate actions—will be no more costly to them.

3   *See Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 587 (C.D. Cal. Feb. 26, 2008)(denying class

4   certification where class members would "face the inevitable delay imposed by waiting for the

5   resolution of thousands of individual factual claims in the class action. Class treatment is not a

6   superior means of adjudicating this controversy.") Accordingly, a class action is not the superior

7   method of handling the subject claims.

8               **4.   Rule 23(b)(1) is inapplicable to this matter.**

9        In passing, Myers suggests that "[c]ertification may also be appropriate under Rule

10  23(b)(1)." ECF No. 24 at 17:18-21. In support of Myers' position, Myers conflates the analysis

11  of Rule 23(b)(1)(A) and 23(b)(1)(B). *Id.* However, certification under either standard is

12  inappropriate for this case.

13       If separate lawsuits result in conflicting obligations *for the defendant*, such as being

14  required to act differently toward different class members, certification under Rule 23(b)(1)(A)

15  may be appropriate. *Zinser,* 253 F.3d at 1194. However, as the Ninth Circuit held in *Zinser,*

16  "[c]ertification under Rule 23(b)(1)(A) is… not appropriate in an action for damages." Here, one

17  of Myers proposed classes is literally titled "Damages Class." *See* ECF No. 24 at 4:14-20.

18  Accordingly, without question, Rule 23(b)(1)(A) certification cannot apply to Myers' Damages

19  Class. Myers' proposed "Injunctive Relief Class" fares no better. There can be no blanket

20  directive for the City's Department of Public Safety to uniformly act in a certain way when

21  engaging in detaining, searching, and/or arresting individuals as any number of factual nuances

22  will impact how City marshals handle a situation (e.g. applicability of NRS 171, exigent

23  circumstances, witnessing of a category "A" felony, directive of another law enforcement

24  agency, interlocal agreement, fresh pursuit, etc.)  Accordingly, Rule 23(b)(1)(A) certification of

25  the Injunctive Relief Class is untenable for the same reason class treatment is unworkable.

26       Rule 23(b)(1)(B) certification is also inapplicable to both of Myers' proposed classes.

27  Rule 23(b)(1)(B) generally applies in cases involving limited funds or shared resources, where

28  individual claims could exhaust the available assets, leaving other class members without

1    recourse. *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 864-865 (1999). Such is not the case here and

2    Myers does not suggest this limited circumstance applies. Moreover, Myers' reliance on a

3    District Court case from the District of Columbia is inapposite. The *Chang v. U.S.,* 217 F.R.D.

4    262, 273 (D.D.C. 2003) case was a class action matter based upon the handling of a single

5    protest by D.C. Metropolitan police. Thus, applicability of Rule 23(b)(1)(B) certification outside

6    of an asset-based analysis was appropriate where there was uniform treatment of a large group of

7    individuals participating in a single, specific event. The opposite is true here, where Myers'

8    arrest, and the circumstances of the search, detainment, arrest, citation or fine of putative class

9    members involve multiple nuanced factual scenarios not subject to a single event or class

10   treatment. Thus, certification under Rule 23(b)(1) is inapplicable to this case and this Court

11   should deny certification on this basis as well.

12           **5.  Rule 23(b)(2) is also inapplicable to this case.**

13           Class certification under Rule 23(b)(2) is appropriate "only where the primary relief

14   sought is declaratory or injunctive." *Zinser*, 253 F.3d at 1195. Here, one of the two classes

15   proposed by Myers is a "Damages Class," thus illustrating declaratory relief is not the primary

16   relief sought at least to this class. Moreover, in Myers' First Amended Complaint, Myers' first

17   listed request for relief is for "compensatory damages including nominal damages for violations

18   of civil rights in an unknown amount exceeding $1,000,000 in the aggregate." *See* ECF No. 5 at

19   15:20-21.  Myers' second requested relief is for punitive damages. *Id.* at 15:22. In other words, it

20   is apparent that Myers' action is one primarily seeking monetary relief, not injunctive relief.

21   Further, as argued ad nauseum in this response, there is no blanket injunctive relief that would

22   resolve the issues in this case because how City marshals respond to a potential criminal matter

23   will always be dependent on the specific circumstances of the conduct at issue. Thus

24   certification, even as to the purported Injunctive Relief Class is simply unfeasible. Accordingly,

25   this Court should deny class certification under Rule 23(b)(2) as well.

26           **E.  Myers incorrectly asserts that Rule 23(c)(4) applies.**

27           Myers erroneously argues that this matter should also be certified under Rule 23(c)(4).

28   ECF No. 24 at pp. 14-15. Myers apparently believes that Rule 23(c)(4) is an independent basis

1  for certification, when in reality, the rule merely identifies that certain legal issues within a

2  putative class action matter may be certified when appropriate. The rule does not, however,

3  provide an independent basis for certification.

4      Here, Myers does not identify any independent, additional legal issues to be certified

5  outside of the proposed classes at issue in his motion. In other words, Myers' reliance on Rule

6  23(c)(4) is superfluous and duplicative of the class certification analysis at issue. Because Myers

7  does not and cannot meet the certification requirements of Rule 23(a) or Rule 23(b) of his

8  proposed classes, Rule 23(c)(4) is inapplicable to the legal standard at hand.

9      **IV.    <u>CONCLUSION</u>**

10      Myers fails to provide any evidence to support his motion for class certification, and in so

11  doing fails to meet his burden.  Indeed, Myers cannot show that numerosity, commonality, or

12  typicality exists. Nor can Myers demonstrate that he adequately represents the interests of the

13  class. Moreover, due to the uniqueness of the facts and circumstances surrounding each claim,

14  individual questions predominate. Finally, Rules 23(b)(1), (b)(2), and (c)(4) are inapplicable.

15  Thus, the City respectfully requests that this Court deny Myers' Motion for Class Certification.

16

17      DATED this 28th  day of August, 2025.

18                          JEFFRY M. DOROCAK
                            City Attorney

19

20      By:    */s/ Nechole Garcia*
                            NECHOLE GARCIA
21                          Chief Deputy City Attorney
                            Nevada Bar No. 12746
22                          495 South Main Street, Sixth Floor
                            Las Vegas, NV 89101
23                          Attorneys for DEFENDANTS

24

25

26

27

28