**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
**ALYSSA N. PIRAINO, ESQ.**
Nevada Bar No. 14601
**BREEDEN & ASSOCIATES, PLLC**
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEREK MYERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; SERGIO GUZMAN, individually; and JASON POTTS, individually,<br><br>Defendants. | CASE NO. 2:25-cv-00562-GMN-DJA<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION [ECF NO. 24]; MEMORANDUM OF POINTS AND AUTHORITIES** |

Plaintiff DEREK MYERS, by and through his attorneys of record, BREEDEN & ASSOCIATES, PLLC, hereby submits this Reply in Support of his Motion for Class Certification [ECF No. 24] against Defendant CITY OF LAS VEGAS.

**I.     INTRODUCTION**

This case challenges a uniform and unlawful policy adopted by the City of Las Vegas through its Department of Public Safety, under which City Marshals routinely perform traffic stops, detentions, arrests, and other law enforcement actions outside the limited jurisdictional boundaries set forth in NRS § 280.125 and Las Vegas Municipal Code § 2.28.080. Plaintiff Derek Myers seeks certification of a class of individuals subjected to such enforcement, not to litigate each individual

encounter, but to obtain class-wide adjudication of whether the City's enforcement practice violates the law and constitutional rights of affected persons.

In opposition, the City attempts to avoid class certification by mischaracterizing the legal issue as a series of individualized factual disputes and by urging the Court to prematurely decide the merits of the jurisdictional challenge. But at this stage, the question is not whether Plaintiff will ultimately prevail—it is whether Plaintiff has demonstrated that the central issue of territorial overreach can be resolved on a class-wide basis. It can.

The proposed class easily satisfies the requirements of Rule 23. The numerosity of individuals affected by the policy is undisputed. The legality of the Marshals' conduct presents a common question that predominates over any individual issues. Plaintiff's claims are typical of the class, and he and his counsel are more than adequate to represent the class interests. Moreover, the City's conduct is uniform and ongoing, making this case especially well-suited for certification under Rule 23(b)(2), Rule 23(b)(3), or, at minimum, Rule 23(c)(4) for class-wide adjudication of liability. The Court should reject the City's invitation to engage in premature merits review and should grant Plaintiff's motion for class certification in full.

## II.    REPLY

### A. Defendants Improperly Argue the Merits and Misstate the Class Certification Standard.

Defendants' opposition rests on a fundamental misunderstanding of the class certification standard. Rather than contesting whether the requirements of Rule 23 are met, the City devotes much of its argument to disputing whether it acted unlawfully—a question that goes to the merits of the case and is not appropriate at the certification stage.

As the Supreme Court made clear in *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered only to the extent... that they are relevant to determining whether the Rule 23 prerequisites... are satisfied." 568 U.S. 455, 466 (2013); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (class certification depends not on whether the plaintiff will prevail

on the merits, but on whether the claims can "generate common answers apt to drive the resolution of the litigation").

Here, the core question—whether the City of Las Vegas had a policy or practice of authorizing its Marshals to conduct law enforcement actions outside the boundaries permitted by NRS § 280.125 and LVMC § 2.28.080—is a common question that applies to all class members and can be answered in a single stroke. That is all Rule 23 requires at this stage. Defendants' reliance on their own interpretation of "control" under NRS § 280.125(3)(b) is an attempt to litigate the jurisdictional question on the merits, rather than addressing whether the claims arising from this uniform practice are susceptible to class-wide resolution. Their argument that City Marshals can operate on "City property," including roads and public areas, is directly refuted by both legal authority and their own prior representations.

As explained in *State v. Reno Traction Co.*, streets and highways are held in trust by municipalities for the public, not "controlled" in the proprietary sense contemplated by NRS § 280.125. 41 Nev. 405, 171 P. 375 (1918). The City's expansive interpretation would render the statutory limitations meaningless and is a dispute more appropriate at the summary judgment stage, not class certification. The City's position goes to whether its policy is lawful—not whether that policy uniformly affected all class members in a common way. Because the legality of that policy is the same for every class member, it presents a common question suitable for class-wide adjudication. Certification is therefore appropriate regardless of how the City intends to defend the policy on the merits.

### B. The Proposed Class Satisfies All Rule 23(a) Requirements.

Defendants do not meaningfully dispute that the proposed class meets the prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy. Each requirement is plainly satisfied in this case, which challenges a single municipal practice that uniformly affects all putative class members.

#### 1. The Proposed Class Satisfies the Numerosity Requirement.

The proposed class is sufficiently numerous that joinder of all members is impracticable, satisfying Rule 23(a)(1). While Rule 23 does not impose a bright-line threshold for numerosity,

courts in the Ninth Circuit generally presume that classes with forty or more members meet the requirement. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("Courts find the numerosity requirement satisfied when a class includes at least 40 members.")

Plaintiff has identified multiple sources of publicly available data—arrest reports, citation records, body-worn camera logs, and public complaints—which collectively indicate that Las Vegas City Marshals have conducted enforcement activities on a systemic basis outside their jurisdiction, potentially affecting hundreds of individuals. Though exact figures are not yet fully calculated, Plaintiff's allegations and supporting evidence more than satisfy the threshold for inferring numerosity.

The Ninth Circuit has consistently recognized that plaintiffs need not provide exact numbers to meet Rule 23(a)(1), particularly where the class size is reasonably inferred from available records. See *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 236 (N.D. Cal. 2014) (finding numerosity based on sales volume data and logical inference); *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 837 (9th Cir. 2022) (holding numerosity satisfied where the number of affected students across years was reasonably inferable from school enrollment records and public policy).

In *Doe #1 v. Trump*, the court found Rule 23(a)(1) satisfied based on a class of U.S. citizens and visa applicants challenging a presidential proclamation affecting an estimated number of immigrant sponsors and family members. 335 F.R.D. 416 (D. Or. 2020). The court held that a class exceeding forty members met the standard, particularly given the impracticality of joinder in light of geographic dispersion and similar claims. *Id.* at 429.

Here, the same principles apply. The putative class includes individuals who allege they were subject to enforcement by City Marshals acting outside the confines of their statutory authority under NRS § 280.125 and LVMC § 2.28.080. These individuals are geographically dispersed throughout the Las Vegas Valley and beyond, including tourists, commuters, and residents. They share a uniform injury stemming from a single, allegedly unlawful enforcement practice, which further supports treating them collectively. See *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (holding joinder impracticable where class members suffered harm from same unlawful conduct).

4

Moreover, courts often emphasize that the practicality of joinder—not merely raw numbers—guides the numerosity analysis. In *Jordan v. L.A. County*, the Ninth Circuit found numerosity satisfied not only based on class size but also because of the small size of individual claims and the difficulty of locating potential class members, particularly unnamed or future claimants. 669 F.2d 1311, 1320 (9th Cir. 1982). These same considerations apply here: many proposed class members—such as out-of-state visitors, individuals with limited resources, or those subjected to brief but unlawful stops—are unlikely to pursue individual litigation and may be difficult to identify or contact. Accordingly, the proposed class easily satisfies the numerosity requirement. The record supports a reasonable inference that the class includes well over forty members, many of whom face practical barriers to joinder and whose claims arise from the same systemic conduct by the City.

### 2. The Proposed Class Satisfies the Commonality Requirement.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied where a single common contention exists that is capable of class-wide resolution and where the determination of its truth or falsity will resolve an issue central to all class members' claims. *See Wal-Mart Stores,* 564 U.S. 338, 350 ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.").

Here, the central common question is straightforward: Did the City of Las Vegas maintain a policy or practice under which its City Marshals conducted law enforcement activities outside the territorial jurisdiction authorized by NRS § 280.125 and LVMC § 2.28.080? This question applies equally to all class members and can be answered in a single stroke based on uniform legal standards and common factual evidence. The First Amended Complaint alleges that the City has authorized and maintained a pattern of stops, arrests, and searches by City Marshals outside areas "owned, leased or otherwise under the control" of the City, including stops on Interstate 11/US Route 95, which is indisputably not city-owned.

Courts have repeatedly found that commonality exists when a single municipal or institutional policy or practice exposes all class members to a shared risk of harm, even if the precise consequences vary. In *Parsons v. Ryan*, the Ninth Circuit upheld certification of a class of Arizona inmates challenging systemic Eighth Amendment violations arising from statewide health care and isolation practices. 754 F.3d 657 (9th Cir. 2014). The court found that each member of the class was subject to the same core policies and conditions, and therefore shared "numerous common contentions whose truth or falsity can be determined in one stroke." *Id.* at 678. It held that the challenged practices—such as chronic understaffing and inadequate medical and psychiatric monitoring—were the "glue" holding the class claims together because the validity of the policies could be resolved as to all inmates collectively. *Id.* (citing *Wal-Mart Stores*, 564 U.S. 338, 2551).

Similarly, in *Owino v. CoreCivic, Inc.*, a class of immigration detainees challenged a common practice of forced labor under a corporate labor policy. 60 F.4th 437 (9th Cir. 2022). The court held that the central legal issue—whether the policy violated federal law—was a common question capable of generating a class-wide answer. *Id.* at 445–46. The same logic applies here: the legality of the City's jurisdictional overreach is a uniform legal question that drives the outcome for all class members.

In *Jimenez v. Allstate Insurance Co.*, the Ninth Circuit upheld commonality where the plaintiffs alleged that an unofficial, company-wide policy led to unpaid overtime. 765 F.3d 1161 (9th Cir. 2014). The court emphasized that the three common questions—whether Allstate discouraged reporting overtime, knew it was occurring, and failed to compensate for it—were central to liability and could be answered classwide. *Id.* at 1165–66; *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (commonality found where all class members were subject to detention policies under the same statute, even if factual circumstances varied). That is the case here. Each proposed class member's claim turns on the same legal contention: whether the City Marshals had authority to detain, stop, or arrest individuals at locations outside city-controlled property. The First Amended Complaint and supporting filings include maps of enforcement actions in Henderson, North Las Vegas, and highways far from any city asset, showing a systematic course of conduct applicable to all class members.

*Kristensen v. Credit Payment Servs., Inc.* also supports this principle. 12 F. Supp. 3d 1292 (D. Nev. 2014). Although the court discussed common questions in the context of Rule 23(b)(3) predominance, it recognized that several core liability questions—such as whether defendants used an ATDS and whether they obtained consent—were common and capable of classwide resolution. *Id.* at 1306–07. In this case, the relevant legal framework—NRS § 280.125 and LVMC § 2.28.080—applies identically to all class members and provides a uniform statutory limit on the Marshals' authority. Thus, the Court's interpretation of these legal provisions will resolve the threshold liability issue for the entire class. Accordingly, because this case turns on whether the City had a uniform policy or practice of acting beyond its jurisdictional limits, and whether that practice was unlawful under Nevada law and the Constitution, the commonality requirement is not only met, but central to the entire litigation.

### 3. The Proposed Class Satisfies the Typicality Requirement.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality inquiry focuses on whether the named plaintiff's claims arise from the same event, pattern, practice, or course of conduct that gives rise to the claims of the class, and whether those claims are based on the same legal theory. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (claims are typical when they are "reasonably co-extensive with those of absent class members; they need not be substantially identical"), overruled on other grounds by *Wal-Mart Stores*, 564 U.S. 338.

Here, Plaintiff Derek Myers alleges that he was unlawfully stopped, detained, searched, and arrested by Las Vegas City Marshals while driving on I-11/US Route 95, a public highway not owned, leased, or controlled by the City of Las Vegas. This alleged enforcement activity—outside the statutory limits of NRS § 280.125 and LVMC § 2.28.080—is the exact same type of conduct forming the basis of the proposed class action.
Plaintiff's claims are therefore typical in both fact and law:

- The legal theory underlying all class members' claims is identical: they were subjected to law enforcement by marshals acting ultra vires, i.e., without lawful territorial authority.

- The harm alleged—loss of liberty, emotional distress, unlawful detention, and Fourth Amendment violations—is the same across all class members.
- The municipal actor responsible (City of Las Vegas Department of Public Safety, by and through its City Marshals) is the same for each class member.

As explained in the First Amended Complaint, Myers was stopped and arrested by Marshals Brooks and Guzman on January 9, 2025, while driving in an area well beyond the City's legal jurisdiction. He was searched, subjected to a roadside sobriety test, arrested, and held in custody for 17 hours without any charges ever being filed. These facts track precisely with the claims of other class members, all of whom challenge the same unlawful enforcement structure.

The Ninth Circuit has explained that typicality is satisfied where the named plaintiffs and class members suffer similar injuries arising from the same course of conduct, and where the claims are not subject to unique defenses. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). While the court in *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011), ultimately remanded the case due to inadequate analysis of unique defenses, it reiterated that the touchstone of typicality is whether "other members have the same or similar injury" and whether the claims arise from common conduct. *Id.* at 984 (quoting *Hanon*, 976 F.2d at 508).

Moreover, factual differences among class members—such as the location of a stop, the identity of the Marshal, or the duration of detention—do not defeat typicality where the claims arise from a shared course of unlawful conduct. In *Just Film, Inc. v. Buono*, the Ninth Circuit held that typicality was satisfied where the named plaintiff's claim was "reasonably coextensive" with those of the class because all were allegedly harmed by "the same overall course of misconduct." 847 F.3d 1108, 1116–17 (9th Cir. 2017). Similarly, in *Rodriguez*, the court held that typicality was met where class members raised similar constitutional claims stemming from a uniform policy, even if they were detained under different statutes or at different stages of removal proceedings. 591 F.3d 1105, 1124–25.

Indeed, in *Doe #1 v. Trump*, the court certified a class of U.S. citizens and lawful immigrants challenging a presidential proclamation restricting family-based visas. Although the plaintiffs were affected in different procedural ways, the court found typicality was satisfied because all claims

arose from a shared legal challenge to the same policy. 335 F.R.D. 416, 428–29. The same principle applies here, where the class is united by a single enforcement policy allegedly applied beyond the City's territorial jurisdiction. Defendants may argue that Plaintiff Myers' circumstances are unique or that he suffered no injury, but these arguments go to the merits, not certification. As the Ninth Circuit has explained, under Rule 23's "permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d 1011, 1020.

Even if some class members were stopped but not arrested, or were released without prosecution, such distinctions do not alter the typicality analysis, because all class members assert that the City Marshals lacked jurisdiction to act in the first place. See *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) (typicality satisfied despite variation in individual damages, because all plaintiffs asserted a uniform fraudulent practice). Lastly, Plaintiff's standing is not in doubt. His harm—being stopped, searched, arrested, and held without charges—is the very injury at the heart of the Fourth Amendment and is directly traceable to the challenged conduct.

### 4. The Proposed Class is Adequately Represented.

Rule 23(a)(4) requires that the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied where the plaintiff's interests are not antagonistic to the class and where counsel is qualified and competent to represent the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d 1011, 1020, overruled on other grounds by *Wal-Mart*, 564 U.S. 338. Both prongs are met here.

#### i. Plaintiff Myers Shares the Same Legal Interests as the Class and Will Vigorously Represent Them.

Plaintiff Derek Myers was subjected to the same enforcement practice that forms the gravamen of the class claims: he was stopped, detained, searched, and arrested by City Marshals in an area outside their lawful jurisdiction under NRS § 280.125 and LVMC § 2.28.080. His claims rest on the same legal theories as those of the class—namely, that Las Vegas Marshals routinely exceeded their statutory territorial authority and unlawfully detained individuals in violation of Nevada law and the Fourth Amendment.

1  Defendants argue that Myers is inadequate based on statements made on social media—
2 specifically, tweets describing a "war" with the City and using confrontational language following
3 the filing of a separate First Amendment lawsuit against Chief Potts. *See* ECF No. 26 at 11–12 &
4 Ex. B. But personal frustration with public officials or strong opinions expressed online do not
5 render a representative inadequate unless they create an actual conflict of interest with the class.
6 While the Seventh Circuit in *Wagner v. NutraSweet Co.*, reversed a class certification denial, it did
7 so based on a misapplication of the typicality standard—emphasizing that Rule 23 inquiries should
8 focus on the defendant's conduct rather than particularized defenses. 95 F.3d 527 (7th Cir. 1996).
9 Here, there is no evidence that Plaintiff's online commentary would prejudice the class or
10 compromise his ability to fairly represent others similarly situated.

11  Here, no such conflict exists. Myers seeks relief based on the same alleged violation as other
12 class members—namely, unlawful enforcement actions by City Marshals outside their territorial
13 jurisdiction. His assertive litigation posture does not create a disqualifying conflict with the class.
14 Rule 23(a)(4) does not require neutrality or detachment; it requires aligned interests and the ability
15 to prosecute the case vigorously. As the Ninth Circuit explained in *Rodriguez*, adequacy turns on
16 whether there is a "sharing of interests between representatives and absentees" and "an absence of
17 antagonism." 591 F.3d 1105, 1125 (quoting *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)).
18 Here, Defendants' adequacy challenge relies solely on conjecture about tone and parallel
19 litigation—neither of which establishes a conflict of interest or impairs Plaintiff's ability to represent
20 the class.

21  Defendants also suggest that Myers is inadequate because he experienced a more severe
22 outcome than some class members—namely, that he was arrested while others were only cited or
23 briefly detained. But adequacy under Rule 23(a)(4) does not require class members to have suffered
24 identical harms. What matters is whether their claims arise from the same underlying policy or legal
25 violation and whether the representative will fairly and vigorously pursue the class's interest. As the
26 Ninth Circuit explained in *Hanlon*, adequacy is satisfied where named plaintiffs and class members
27 are not in conflict, and the representatives are positioned to "prosecute the action vigorously on
28

behalf of the class." 150 F.3d 1011, 1020 (9th Cir. 1998). Minor differences in injury severity do not defeat adequacy where the factual predicate and legal theory are shared.

To the extent Defendants suggest that Plaintiff's separate suit impairs his adequacy, that argument fails. Courts have long rejected efforts to disqualify class representatives based on speculative concerns or collateral factors, especially where the representative has a demonstrated interest in vindicating the same rights. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372–74 (1966) (reversing dismissal of derivative action where plaintiff relied on counsel's investigation and was unsophisticated). Defendants' attacks on Myers' adequacy—based on rhetoric, motivation, or personal resolve—amount to speculative conjecture, not evidence of a genuine conflict with the class. Courts routinely reject attempts to disqualify class representatives based on generalized challenges to credibility, motives, or temperament. See *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (mere desire to litigate vigorously or opposition to a defendant does not defeat adequacy).

                ii.       **Plaintiff's Counsel Is Highly Qualified and Committed to the Class**

Plaintiff is represented by Breeden & Associates, PLLC, a firm with substantial experience in constitutional and complex civil litigation. Lead counsel, Adam J. Breeden, has successfully litigated cases involving municipal entities, law enforcement liability, and civil rights under 42 U.S.C. § 1983. The firm's filings reflect a deep understanding of the legal and factual issues in this case, as well as the procedural standards governing class certification under Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4).

Although Defendants argue that Plaintiff's counsel lacks prior class action experience, Rule 23 does not require class counsel to have previously certified a class. The relevant inquiry is whether counsel is qualified and able to vigorously prosecute the case. The Ninth Circuit has recognized that adequacy is satisfied where counsel is competent, committed, and possesses the legal knowledge necessary to represent the class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (adequacy requires that representatives be able to prosecute "vigorously through qualified counsel" and that no conflicts exist with the class); *Rodriguez*, 591 F.3d 1105, 1125 (same).

Here, counsel has conducted legal and factual investigation, produced public records-based exhibits, filed comprehensive pleadings, and demonstrated familiarity with constitutional and statutory limits on municipal enforcement. That is more than sufficient to meet Rule 23(a)(4). Accordingly, Plaintiff Derek Myers has the same legal interests as the proposed class, and his alleged rhetorical fervor or concurrent litigation does not create any actual conflict of interest. His counsel is qualified and committed to vigorously representing the class. The adequacy requirement is satisfied.

### C. Class-wide Relief is Appropriate Under Rule 23(b)(2), Rule 23(b)(3), and Rule 23(c)(4).

This action is well-suited for class certification under multiple provisions of Rule 23. Plaintiff seeks both injunctive relief to halt ongoing unlawful enforcement practices and damages for past violations. Certification is proper under Rule 23(b)(2) for injunctive and declaratory relief, under Rule 23(b)(3) for damages, and under Rule 23(c)(4) for issue-specific class treatment even if the Court finds variation in damages.

#### 1. Rule 23(b)(2): The City's Enforcement Policy Warrants Class-wide Injunctive Relief

Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class," thereby making injunctive or declaratory relief appropriate for the whole class. Fed. R. Civ. P. 23(b)(2).

This is precisely the situation here. The City of Las Vegas, through its Department of Public Safety, has implemented a uniform policy or practice of permitting its Marshals to conduct law enforcement operations outside the geographical limits authorized by NRS § 280.125 and LVMC § 2.28.080. The record reflects multiple incidents—documented through arrest maps, footage, and first-hand accounts—of traffic stops, detentions, and arrests conducted by Marshals in areas such as U.S. Route 95, Henderson, and North Las Vegas, all outside city-controlled property.

The Ninth Circuit has recognized that Rule 23(b)(2) certification is appropriate where plaintiffs challenge a systemic policy or practice that applies uniformly to the class. In *Rodriguez*, the court held that Rule 23(b)(2) is satisfied where "class members seek uniform relief from a

practice applicable to all of them," even if the injury experienced by each member may differ. 591 F.3d 1105, 1125. Likewise, in *Parsons*, the court affirmed certification of a Rule 23(b)(2) class where all inmates were exposed to a risk of serious harm stemming from the same statewide correctional policies, explaining that "[t]he primary role of this provision has always been the certification of civil rights class actions." 754 F.3d 657, 686.

The City's opposition fails to meaningfully dispute the existence of this uniform enforcement policy. Instead, it attempts to divert the inquiry to individual circumstances and merits issues, which are irrelevant under Rule 23(b)(2). The focus is not on individual outcomes, but on whether the relief sought—injunctive and declaratory relief—will benefit the entire class by terminating an unlawful practice. It will.

### 2. Rule 23(b)(3): Common Questions of Legality and Policy Predominate Over Individual Issues

In the alternative, class certification is appropriate under Rule 23(b)(3), which requires that (1) common questions predominate over individual ones, and (2) a class action is superior to other available methods for adjudicating the controversy.

The central legal issue—whether the City's policy of permitting its Marshals to enforce laws outside their jurisdiction violates Nevada law and the U.S. Constitution—is a common question predominant to all class members. This common question is susceptible to class-wide proof through official policies, city admission in other cases, arrest/citation maps, and body-worn camera footage.

Commonality and predominance are satisfied where, as here, a single municipal policy or enforcement practice forms the basis for the class claims. In *Just Film, Inc*, the Ninth Circuit affirmed certification under Rule 23(b)(3), holding that even where some individualized damages issues exist, common questions may predominate if they concern a shared course of misconduct and can be resolved with common proof. 847 F.3d 1108, 1122. The City's suggestion that different class members may have been arrested, cited, or released does not defeat predominance. Courts routinely find predominance even where damages vary or individual questions exist, so long as the legal theory of liability is common. *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016); *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

Further, the class action mechanism is superior to hundreds or thousands of individualized lawsuits challenging the same unlawful enforcement policy. Individual actions would be inefficient, risk inconsistent outcomes, and may be cost-prohibitive for many class members whose injuries—while constitutionally significant—may not justify separate litigation. As the Ninth Circuit has explained, the superiority inquiry under Rule 23(b)(3) considers whether a class action offers the most efficient and fair method of resolving a dispute given the nature of the claims and the interests of the parties. See *Fed. R. Civ. P. 23(b)(3); Hanlon*, 150 F.3d 1011, 1023 (9th Cir. 1998) ("The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case."), overruled on other grounds by *Wal-Mart Stores,* 564 U.S. 338.

Moreover, most class members—many of whom may have faced fines, brief detentions, or citations—are unlikely to pursue individual claims due to the modest damages involved and the burdens of litigation. Rule 23(b)(3) is designed precisely for such circumstances, where common legal and factual questions can be resolved efficiently on a class-wide basis. As the court explained in *Patel v. TransUnion LLC*, a class action was superior where the defendant's uniform practices affected thousands of consumers and where statutory remedies alone were insufficient to ensure broad enforcement. 308 F.R.D. 292, 310 (N.D. Cal. 2015).

### 3. Rule 23(c)(4): Issue Certification Is Appropriate Even if Damages Vary

If the Court is concerned about variation in damages or individual issues of causation, Rule 23(c)(4) provides an alternative path. That rule allows courts to certify specific issues for class treatment, including liability-only classes, even if damages must be assessed individually.

Here, the threshold liability question—whether the City acted unlawfully by permitting enforcement beyond statutory boundaries—can and should be resolved on a classwide basis. Even if damages or proximate cause must later be assessed individually, that does not preclude class treatment of the legal questions underlying liability. Rule 23(c)(4) allows certification of particular issues when appropriate. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues"). However, the Ninth Circuit

cautioned that courts must consider whether issue certification will materially advance the litigation and whether it satisfies Rule 23(b)(3)'s predominance and superiority requirements. *Id.* Plaintiff submits that this case meets that standard: resolving whether the City's conduct violated clearly defined statutory boundaries will significantly streamline the litigation and promote judicial efficiency. Accordingly, Plaintiff's request for certification under Rule 23(b)(2), 23(b)(3), and/or 23(c)(4) is squarely supported by precedent, the record, and the uniform nature of the challenged policy. The Court should certify the proposed class and subclass accordingly.

### D. The Proposed Class is Objectively Ascertainable and Clearly Defined.

Although Rule 23(a) does not explicitly require "ascertainability," courts in the Ninth Circuit require that a proposed class be sufficiently definite so that it is administratively feasible to determine who is a class member. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124–26 (9th Cir. 2017). However, *Briseno* expressly held that the Ninth Circuit does not require a heightened showing of administrative feasibility as a prerequisite to certification under Rule 23(b)(3). *Id.* at 1133.

The Jurisdictional Enforcement Classes proposed by Plaintiff satisfy the ascertainability standard under Rule 23. Both the Injunctive Relief Class and Damages Class are defined using objective, external criteria based on whether the individual was subjected to law enforcement actions by City of Las Vegas Marshals outside the territorial jurisdictional limits of property "owned, leased or otherwise under the control" of the City, as defined by NRS § 280.125 and LVMC § 2.28.080. The Damages Class is temporally bounded—limited to persons affected within two years prior to the complaint—while the Injunctive Class includes past, current, and prospective victims of unlawful extrajurisdictional enforcement. Neither definition requires inquiry into the merits, and membership can be determined through arrest logs, citations, body camera footage, or self-identification corroborated by location and timing.

Each of these criteria—law enforcement contact, involvement of the City Marshal, location of the incident, and the relevant timeframe—can be determined through government records, including: CAD logs, arrest reports, and body-worn camera metadata; Booking and citation records

from Las Vegas Department of Public Safety; publicly available maps and patrol logs demonstrating Marshal activity outside their authorized jurisdiction.

This evidence directly rebuts Defendants' assertion that the class cannot be reliably identified. Courts have routinely certified classes based on law enforcement records involving illegal stops or detention practices. *See Rodriguez*, 591 F.3d 1105, 1122 (approving class defined by individuals subject to ICE detention under a statutory provision); *Owino*, 60 F.4th 437, 445 (upholding class defined by whether inmates were forced to labor under a common corporate policy, as shown in facility records).

Defendants argue that some putative class members may have been lawfully stopped or arrested, while others may have been unlawfully detained, and that this undermines the class definition. But this argument conflates the merits with ascertainability. The question at the class certification stage is not whether a given individual ultimately has a winning claim, but whether the person falls within a class defined by objective criteria related to the challenged policy or conduct. As the Ninth Circuit explained in *Blackie*, individualized questions about liability or damages do not defeat certification where common questions predominate and the class definition rests on the defendant's uniform course of conduct. 524 F.2d 891, 905. The court emphasized that such questions can be addressed through common proof or later resolved through subclassing or individualized proceedings without undermining the viability of the class. *Id.* The class definition here is precisely aligned with the unlawful conduct Plaintiff seeks to challenge: enforcement activity outside the territorial bounds established by NRS § 280.125 and LVMC § 2.28.080. Whether such enforcement was technically lawful in any individual case is a merits question, not a definitional one.

Moreover, courts routinely certify classes even where some members may later be excluded based on individualized facts uncovered in discovery. *See In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 546 (N.D. Cal. 2018) (permitting post-certification methods for refining the class using self-identification and discovery tools). To the extent the Court has concerns about specificity, Plaintiff is prepared to refine or clarify the class definition to ensure it aligns with judicial expectations. *See Gonzalez v. U.S. Immigr. & Customs Enf't*, 325 F.R.D. 616, 625 (C.D. Cal. 2018)

(noting courts may modify or narrow class definitions at the certification stage).

The class is clearly and objectively defined, and its members can be identified using public records and official data. Ascertainability presents no barrier to certification. Defendants' arguments go to the merits or minor administrative concerns, neither of which justifies denial of certification at this stage.

### III.  Conclusion

Plaintiff has satisfied all requirements of Rule 23, and this case is ideally suited for class certification. The City's uniform policy of extra jurisdictional enforcement raises common legal questions that predominate and are appropriate for class-wide resolution. Plaintiff respectfully requests that the Court certify the proposed class, appoint him as class representative, and appoint Breeden & Associates, PLLC as class counsel.

DATED this 4th day of September, 2025.

**BREEDEN & ASSOCIATES, PLLC**

*/s/ Alyssa N. Piraino, Esq.*

**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
**ALYSSA N. PIRAINO, ESQ**.
Nevada Bar No. 14601
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of September, 2025, I served a copy of the foregoing legal document **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION [ECF NO. 24]; MEMORANDUM OF POINTS AND AUTHORITIES** via the method indicated below:

| | |
|---|---|
| X | Through the Court's ECF/CM system on all registered users |
| | Pursuant to FRCP 5, by placing a copy in the US mail, postage pre-paid to the following counsel of record or parties in proper person:<br><br>NECHOLE GARCIA, ESQ.<br>PAUL MATA, ESQ<br>495 S. Main Street, Sixth Floor<br>Las Vegas, NV 89101<br>*Attorneys for Defendants* |
| | Via receipt of copy (proof of service to follow) |

An Attorney or Employee of the following firm:

*/s/ Kirsten Brown*
**BREEDEN & ASSOCIATES, PLLC**