JEFFRY M. DOROCAK
City Attorney
Nevada Bar No. 13109
By: NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
By: PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
(702) 229-6629
(702) 386-1749 (fax)
Email: ngarcia@lasvegasnevada.gov
Email: pmata@lasvegasnevada.gov
Attorneys for DEFENDANTS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEREK MYERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; SERGIO GUZMAN, individually; and JASON POTTS, individually,<br><br>Defendants. | CASE NO. 2:25-cv-0562-GMN-DJA |

**DEFENDANTS' MOTION TO COMPEL**

Defendants CITY OF LAS VEGAS, JASON BROOKS, SERGIO GUZMAN, and JASON POTTS ("Defendants"), through their attorneys of record, JEFFRY M. DOROCAK, City Attorney, NECHOLE GARCIA, Chief Deputy City Attorney, and PAUL MATA, Deputy City Attorney, move to compel the Plaintiff to produce communications requested by Defendants in their Requests for Productions. Defendants bring this motion after meeting and conferring with Plaintiff on this matter pursuant to Rule 37, LR 26-6(c) and LR IA 1-3(f). This motion is based upon the pleadings and papers on file herein, the following points and authorities, and any oral argument that the Court may entertain.

**DECLARATION OF COUNSEL**

Nechole Garcia, being duly sworn, states:

1. I am an attorney licensed to practice law in Nevada. I am over the age of 18, have first-hand knowledge regarding the matters discussed in this declaration, and am competent to make this declaration.

2. I represent Defendants City of Las Vegas, Jason Brooks, Sergio Guzman, and Jason Potts in this litigation.

3. On January 5, 2025, at approximately 11:00 a.m., I telephonically met and conferred as required by LR 26-6(c) with Attorney Adam Breeden, who is counsel for Plaintiff.

4. During the meet and confer, I followed up with Mr. Breeden regarding Plaintiff's response to Defendants' Request for Production ("RFP") No. 12, which seeks all communications pertaining to the matter set forth in the Amended Complaint between the Plaintiff and named witness Doug Roberts.

5. In a prior phone conversation and email dated December 1, 2025, which is attached as Exhibit A, Mr. Breeden represented that he had additional communications but was withholding them under the attorney-client, work product and journalist privileges. Ex. A, p. 4-5.

6. During the January 5, 2025 meet and confer, counsel for both parties discussed their positions relative to the communications, with Mr. Breeden asserting that certain communications were privileged and could be withheld, while I asserted that Defendants were entitled to all communications as the disclosure of Roberts as a witness waived any privileges.

7. I informed Mr. Breeden that his prior objections to RFP No. 12 did not include objections based on work product or first amendment grounds. He agreed to update the RFP response to reflect those privileges, as well as provide a privilege log.

8. I informed Mr. Breeden that since the parties disagreed on whether the documents were protected, I would seek court intervention to obtain the documents.

–2–

9. On January 21, 2026 Mr. Breeden produced the updated response to RFP No. 12 which contained objections based on work product and journalist privileges, along with a privilege log.

I declare under the penalty of perjury that the foregoing is true and correct.

DATED: February 25, 2026.

JEFFRY M. DOROCAK<br>
City Attorney<br>
<br>
By:  /s/ Nechole Garcia<br>
NECHOLE GARCIA<br>
Chief Deputy City Attorney<br>
Nevada Bar No. 12746<br>
PAUL MATA<br>
Deputy City Attorney<br>
Nevada Bar No. 14922<br>
495 South Main Street, Sixth Floor<br>
Las Vegas, NV 89101<br>
Attorneys for DEFENDANTS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

This is a civil rights lawsuit brought by Plaintiff Derek Myers ("Plaintiff" or "Myers"), where he alleges Defendants violated his civil rights by arresting him for DUI on January 9, 2025. At the onset of discovery, Plaintiff disclosed Doug Roberts ("Roberts") as an "acquaintance" with discoverable information regarding his interactions with Myers. Myers even produced some of those communications for Defendants. Yet, when Defendants sought the rest of their communications, Myers claimed they were protected by the work product and qualified journalist privileges. In so doing, Myers tries to have it both ways: disclose communications he believes helps his case, while withholding other communications as privileged. However, no privileges apply here. Even assuming arguendo that the work product privilege applied, Myers waived the privilege when he produced some of those communications to Defendants. There is also no journalist privilege because Roberts and Myers have been acting in a personal, and not journalistic capacity. Indeed, Myers cannot credibly contend the communications were confidentially prepared in anticipation of litigation (work product doctrine) while simultaneously claiming the

communications were prepared to disseminate information to the public (journalist privilege). Finally, to the extent Myers claims any attorney-client privilege, Myers expressly waived that privilege by including Roberts, who is a third party, in communications with his counsel. For these reasons, this Court should grant Defendants' motion to compel.[1]

## II. **BACKGROUND**

On June 26, 2025, Plaintiff produced his Initial List of Disclosures and Witnesses Pursuant to Rule 26(a)(1). Ex. B. There, Myers listed Roberts as a witness. Ex. B at 4:15-18. Under "Description of Testimony," Myers provided, "[t]he witness is an **acquaintance** of Plaintiff Derek Myers and will testify as to his **interactions with Myers** and the marshals/NHP and all other matters of which he has knowledge." *Id.* (emphasis added).[2] Thus, Myers identified Roberts as an acquaintance, not as a representative or a journalist. Moreover, Myers asserted that Roberts has discoverable information pertaining to their interactions. *Id.* Myers also voluntarily produced some of their interactions. Specifically, Myers disclosed a phone call between Roberts and himself that occurred in the moments after Myers was stopped by the marshals on January 9, 2025. Ex. B at 2:13. There, Myers and Roberts discussed the stop and marshal jurisdiction – the matters pertaining to the complaint – in some detail. Myers also disclosed emails from Roberts. *Id.* at 1:27. Thus, Myers made the communications between himself and Roberts relevant and placed them front and center in the case.

Defendants sought to pursue this and other relevant information, so it issued Requests for Production ("RFP") to Myers on August 14, 2025. RFP #12 sought production of "any and all communications between you, Derek Myers, and Doug Roberts pertaining to the matters alleged in this matter's pleadings." Ex. D at 6:19-20. On October 14, 2025. Myers responded by objecting on the basis of the request being overly broad, vague, and unduly burdensome. Ex. D at 6:22-23. Myers also indicated he may not have all communications, as he objected to the requests "to the extent they seek documents not in Plaintiff's possession, custody or control." *Id.* at 6:23-25.

---

[1] The parties subsequently agreed to a discovery stay with the caveat that any discovery already issued could be completed. ECF No. 30. The RFP at issue in this matter was propounded before the stay so it is appropriate to bring a motion to compel.

[2] This description of Roberts remains unchanged in Myers' most recent supplemental disclosure, dated January 21, 2026. Ex. C at 6:6-9.

Objections notwithstanding, Myers directed Defendants to his previously disclosed communications but provided nothing else. *Id.* at 6:25-26. Myers made no privilege-based objections at that time.

### A. Myers subsequently asserts journalist and work product privileges.

Since part of Myers' objection indicated that some of the communications were not in his custody or control, Defendants sought to obtain them through a subpoena duces tecum to Roberts. Ex. E. It was the issuance of that subpoena that prompted Myers, for the first time, to assert work product and journalist privileges.[3] The parties' counsel then engaged in a series of telephone discussions where they discussed, among other things, their relative positions on the communications between Myers and Roberts. The final discussion was on January 5, 2025, where the parties continued to disagree as to whether the documents were protected. Defendants gave Myers an opportunity to update his response to RFP #12 to include the asserted privileges, and informed Myers that they would seek court intervention. Myers updated his response to RFP #12 on January 21, 2026. Ex. G. The updated portion of Myers' objection read:

> This Request also seeks documents and materials prepared in anticipation of litigation and for trial and is therefore protected from disclosure by the work-product doctrine under Fed. R. Civ. P. 26(b)(3). Plaintiff further objects to the extent this Request seeks documents and materials protected by the qualified journalist's privilege, including unpublished newsgathering materials, editorial processes, and information obtained in the course of reporting. Disclosure would intrude upon constitutionally protected newsgathering activities. Such information is also protected from disclosure by NRS 49.275.

Ex. G at 6:25-7:6.

Myers also produced a privilege log itemizing emails between himself, his counsel, Roberts, and other parties. Ex. H. He also produced some social media communications between the parties. Interestingly, Myers also produced two signed agreements that seem to be the basis for his work product objection. The first was a Power of Attorney ("POA") signed by Myers and Roberts. Ex. I. The POA took effect on January 14, 2025, and gave Roberts power to "institute,

---

[3] Roberts hinted at those privileges in his response to the subpoena. Ex. F.

–5–

maintain, defend, compromise, arbitrate or otherwise dispose of, any and all actions, suits, attachments or other legal proceedings for or against" Myers. Ex. I at p. 1. It also gave Roberts power of attorney for public records requests until August 1, 2025. *Id.* at p. 2. The second legal document Myers produced was a "Research Services Agreement" between Myers and Roberts dated March 27, 2025. Ex. J. That agreement authorized Roberts, among other things, to conduct public records requests, perform video documentation, investigate and provide background information related to Myers' suit against Defendants. *Id.*

Thus, during the course of discovery, Myers has provided contradictory messages about the nature of his relationship with Roberts. In his disclosures, he identifies Roberts as merely an acquaintance who will testify about their interactions. Myers even produced communications where he and Roberts discuss the January 9, 2025 incident. However, once Defendants sought all communications between Myers and Roberts, Myers claimed that they are shielded by the work product and qualified journalist privileges. As will be discussed below, Myers cannot have it both ways; he cannot use his communications with Roberts as both a sword and a shield.

### III.  LEGAL STANDARD

Federal Rule 26 permits a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). The relevancy standard under this rule is broadly construed. *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-00772-GMN-NJK, 2016 WL 3353935, at *3 (D. Nev. June 10, 2016) (quoting *Mirco Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325-26 (Fed. Cir. 1990)). Indeed, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). When a party refuses to produce relevant, non-privileged discovery, then the opposing party may move for an order compelling discovery. FED. R. CIV. P. 37(a). That motion must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). The local rules for the District of Nevada also require that parties meaningfully meet and confer before filing the motion. LR 26-6(c); LR IA-3(f).

A court has broad discretion when deciding a motion to compel. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

## IV. ARGUMENT

At the outset of discovery Myers disclosed Roberts as a witness and disclosed some of their communications. However, he later Myers asserted that the work product and journalist privileges make his communications with Roberts confidential. Those privileges do not apply here. The work product privilege does not exist because Roberts is not Myers' attorney nor his representative. Moreover, while Myers and Roberts may both be journalists by profession, neither are associated with this case in a journalistic capacity. Ultimately, Myers selective assertion of these privileges amounts to an attempt to use them as both a sword and a shield. Such use is impermissible. Therefore, this Court should grant Defendants' motion to compel.

### A. There is no work product privilege.

Rule 26(b)(3) protects "the mental impressions, conclusions, opinions, or legal theories **of a party's attorney or other representative** concerning the litigation." FED. R. CIV. P. 26(b)(3)(B) (emphasis added). Moreover, "to qualify for protection against discovery under Rule 26(b)(3), documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation and or for trial,' and (2) they must be 'prepared by or for [the] party [seeking the protection] or by or for that ... party's **representative**." *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (emphasis added). Courts have interpreted "attorney or other representative" to mean either the party's attorney or a person working for the attorney who assists in compiling materials in anticipation of litigation. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (holding that the work product doctrine protects materials "prepared by agents for the attorney as well as those prepared by the attorney himself.")

Here, Roberts is not and has not ever been identified as a representative of Myers, or an agent of Myers' counsel. In fact, in his initial and supplemental disclosures, Roberts was identified as <u>merely an acquaintance</u> of Myers who will testify as to his interactions with Myers. The entire purpose of providing initial disclosures is to identify individuals with "discoverable information ... that the disclosing party may use to support its claims or defenses." *See* FED. R. CIV. P.

26(a)(1)(A)(i). Thus, the act of listing Roberts as a witness was a concession that Roberts is not Myers' representative and that their interactions are discoverable and not privileged. At no point has Myers ever amended his disclosure to reflect that Roberts represents him in some way. Nor has Myers represented that the communications between himself and Roberts were at the behest or direction of his counsel; in other words, that Roberts is an agent of his counsel. Indeed, Myers has produced nothing indicating that Roberts is his representative in this litigation.

Defendants anticipate that Myers will point to the POA giving Roberts authority to handle claims on his behalf as proof of Myers' "representation." However, this document does not make Roberts a representative of Myers within the meaning of Rule 26(b)(3). Even though the POA calls Roberts his "attorney-in-fact," Roberts is not a licensed attorney representing Myers in this case, nor has Myers produced any evidence that Roberts is working at the behest of his licensed counsel. Moreover, nowhere in the POA is Roberts designated as an agent of Myers' counsel. Finally, the Research Agreement between Myers and Roberts does not shield their communications either. The Research Agreement merely allows Myers to conduct research on behalf of Myers; it does not permit Roberts to represent Myers in this litigation.

### 1. Myers cannot use the work product privilege as both a sword and shield.

The position Myers asserts to withhold communications – that Roberts is his representative, and their communications are work product – directly contradicts Myers' disclosure of Roberts as an acquaintance in possession of discoverable information. Moreover, Myers has already released certain relevant communications between himself and Roberts. Specifically, Myers produced telephone communications with Roberts where they discuss the events set forth in the complaint in detail. Thus, it is clear that Myers seeks to use certain communications as a sword in his case, while conveniently shielding other information under the cloak of the work product doctrine. However, use of the work product doctrine as a sword and shield is prohibited due to the lack of fairness it presents to the opposing party. *Lambright v. Ryan*, 698 F.3d 808, 823 (9th Cir. 2012) (citing *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.")

Nevada courts have also recognized that it violates the principles of fundamental fairness when a party uses the work product privilege as a sword and shield, because it "deprive[s] the opposing party the opportunity to test the legitimacy of that claim." *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp.2d 1084, 1092 (D. Nev. 2003). Here, permitting Myers to selectively withhold communications with Roberts unfairly prejudices Defendants, as it makes Myers the arbiter of what information can be disclosed and what can be withheld. Nothing prevents Myers from releasing communications he believes is beneficial while withholding information he perceives as detrimental. Indeed, "parties should not be able to selectively disclose privileged communications they consider helpful while claiming privilege on damaging communications relating to the same subject." *Id.* at 1093. Defendants cannot adequately defend this case when they are prevented from getting communications or other evidence from a disclosed witness.

Finally, it is also noteworthy that the Nevada Rules of Professional Conduct prohibit a lawyer from "acting as an advocate at a trial in which the lawyer is likely to be a necessary witness." NRPC Rule 3.7(a). The purpose of this rule is to prevent the lawyer from confusing and prejudicing the jury by appearing as both witness and advocate. *DiMartino v. Eighth Judicial Dist. Court ex rel. County of Clark*, 119 Nev. 119, 122, 66 P.3d 945, 947 (2003). Indeed, this rule protects the integrity of the judicial proceeding because the lawyer may not "argue his own veracity to a court or other body." *Id.* While Roberts is not a lawyer, Myers nonetheless attempts to have him categorized as some sort of advocate to avoid disclosing certain communications. It would be prejudicial and confuse the jury to allow Roberts to serve as a witness at trial while also acting as an advocate for Myers. Since Roberts was first identified as a witness, he should be precluded from being categorized as an advocate that can withhold communications due to a nonexistent privilege.

### 2. Myers waived any work product privilege.

Even if a work product privilege exists here, Myers waived it with his disclosures. Indeed, the work product privilege is a qualified privilege that may be waived. *United States v. Sanmina Corp*, 968 F.3d 1107, 1119 (9th Cir. 2020). A party "can waive work-product protection to the extent that he reveals or places the work product at issue during the course of litigation." *Id.* The

doctrine of waiver is rooted in the principle of fundamental fairness. *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996). "Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Id*. The act of disclosing privileged communications is what waives the privilege, regardless of the intent of the holder. *Id*. at 341.

Myers' disclosure of Roberts as a witness who would testify about their interactions also served as a waiver of privilege as to their communications. In *United States v. Nobles*, the Court held that a criminal defendant's decision to present his defense investigator as a witness waived work product privilege over the investigator's report "with respect to matters covered in his testimony." 422 U.S. at 239. Likewise, here, Myers' decision to disclose Roberts as a witness who could testify about their interactions served as a waiver of work product as it pertains to their communications. Production of privileged materials during discovery also serves as a waiver of the right to claim the privilege as to communications about the matter actually disclosed. *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). In *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010), a party's production of an attorney's notes to support his opposition to a motion constituted a waiver of work product privilege over the subject matter of the notes disclosed. Myers' disclosure of communications between himself and Roberts similarly waived any work product privilege as to their communications. Thus, Defendants' motion to compel should be granted.

### B. Myers cannot invoke the qualified journalist privilege.

The federal journalist privilege applies when "facts acquired by a journalist in the course of gathering the news become the target of discovery." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). A person may invoke the journalist's privilege when he: 1) "had 'the intent to use material –sought, gathered or received– to disseminate information to the public, and [2)] [whether] such intent existed at the inception of the newsgathering process.'" *Id*. at 1293 (citing *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2nd Cir. 1987).

Myers cannot establish that his intent to use communications with Roberts was to disseminate it to the public. He is the Plaintiff in a case where he alleges that his civil rights were violated by his arrest for a DUI; he is not acting as a journalist who is being asked to reveal sources for a story. Just because Myers is a journalist by profession does not mean he can use that privilege as a shield in discovery. Likewise, Roberts is also purportedly a journalist by profession. However, in this case, he has been identified as an acquaintance who has discoverable information regarding his interactions with Myers, not a journalist pursuing a story. Moreover, Myers' assertion of the work product privilege undermines his journalist privilege claim: the withheld communications cannot both be confidentially prepared in anticipation of trial and gathered with the intent to be publicly disseminated.

Myers also asserted the journalist privilege set forth in NRS 49.275. This statute prohibits requiring journalists to disclose information sources "obtained or prepared by such person in such person's **professional capacity** in gathering, receiving or processing information for communication to the public." NRS 49.275 (emphasis added). As a threshold matter, it is noteworthy that the privilege only protects journalists gathering information in their professional capacity. Indeed, "Nevada's news shield statute provides no protection for information gathered in other capacities." *Diaz v. Eighth Judicial Dist. Court ex rel. County of Clark*, 116 Nev. 88, 101, 993 P.2d 50, 59 (2000). Neither Myers nor Roberts can credibly assert they are acting in a journalistic capacity here. Myers is a litigant attempting to establish that Defendants wrongfully arrested him, while Roberts has been identified as an acquaintance with discoverable facts pertaining to their interactions and the events of January 9, 2025. Moreover, the documents disclosed by Myers – the POA and Research Agreement - do nothing to advance his claim of journalist privilege. In neither of those documents do Myers or Roberts purport to be gathering information for a story. Rather, they are gathering information to help Myers prevail on his case.

Finally, as with the work product privilege, Myers cannot use the journalist privilege as both a sword and a shield. He cannot disclose some information he deems beneficial to his case, while cloaking what he feels is detrimental under a journalist privilege. Doing so is fundamentally

. . . .

unfair to Defendants, as it impermissibly puts Myers in the driver's seat in determining what information to disclose or withhold.

### C. Myers waived attorney-client privilege.

Myers may also attempt to assert the attorney-client privilege, since several of the withheld emails are between himself, Doug Roberts, and his attorney. Ex. H. However, the act of including Doug Roberts, a third party, in their email communications constitutes an express waiver of the attorney-client privilege. An express waiver occurs when a party "discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *United States v. Sanmina Corporation*, 968 F.3d at 1117 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)). Indeed, once the communications have been voluntarily disclosed to a third party, "the privilege is gone and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries." *Bittaker*, 331 F.3d at 719. Even under the most generous view of his role, it is clear Roberts is not working as Myers' attorney nor as an agent of his attorney. Rather, according to Myers, Roberts is merely an acquaintance who will testify as to their interactions. Thus, he is a third party not bound by the attorney-client privilege. The act of disclosing information in those emails to Myers is an express waiver of the privilege. Defendants are entitled to the email communications between Myers and his counsel where Roberts was included. Defendants' motion to compel should be granted.

## V. CONCLUSION

Myers disclosed Roberts as an acquaintance with discoverable information as to their interactions. He also disclosed some of their interactions. It was only after Defendants sought the rest of the communications that Myers claimed work product and journalist privileges. However, those privileges do not apply here. Roberts is not a representative for purposes of the work product doctrine nor is he acting as a journalist. Myers should not be permitted to use those privileges as a sword and a shield by selectively disclosing some communications while withholding others.

. . . .

. . . .

. . . .

Accordingly, Defendants respectfully request that this Court grant their Motion to Compel.

DATED this 25th day of February, 2026.

                                       JEFFRY M. DOROCAK
                                       City Attorney

                                       By:     /s/ *Nechole Garcia*
                                                      NECHOLE GARCIA
                                                      Chief Deputy City Attorney
                                                      Nevada Bar No. 12746
                                                      PAUL MATA
                                                      Deputy City Attorney
                                                      Nevada Bar No. 14922
                                                      495 South Main Street, Sixth Floor
                                                      Las Vegas, NV 89101
                                                      Attorneys for DEFENDANTS