ADAM J. BREEDEN, ESQ.
Nevada Bar No. 008768
**BREEDEN & ASSOCIATES, PLLC**
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEREK MYERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; SERGIO GUZMAN, individually; and JASON POTTS, individually,<br><br>Defendants. | CASE NO. 2:25-cv-00562-GMN-DJA<br><br>**PLAINTIFF DEREK MYERS' OPPOSITION TO MOTION TO COMPEL** |

Plaintiff Derek Myers, individually and on behalf of all others similarly situated, by and through his counsel, Adam J. Breeden, Esq. of Breeden & Associates, PLLC, submits this opposition to *Defendants' Motion to Compel* (ECF No. 34). For the reasons below, the *Motion to Compel* should be denied.

**I. INTRODUCTION**

On March 27, 2025, Myers, through counsel, filed this matter as a putative class action after he and his counsel determined that the City of Las Vegas, through its Department of Public Safety and City Marshal's office, was serially abusing its limited geographical law enforcement jurisdiction. It appears the City Marshals had detained and arrested likely more than 1,000 persons wrongly outside their jurisdiction, a mass violation of the Fourth Amendment and Nevada state law. The case has garnered numerous local news media stories, and, in another action, this Court has already recognized the limited geographical jurisdiction of the City Marshals. Overall, the case

appears to be a major source of embarrassment for City officials. Yet, instead of admitting to the problem and resolving the case, the City has adopted a rigorous "go down with the ship fighting" attitude and pursues even the weakest of discovery claims to try to defend itself in an indefensible case where it will eventually have to admit that its City Marshals had run amok and were illegally detaining people outside their legal authority.

The present issue is representative of the City's near-frivolous defense strategy. It seeks to uncover communications between Myers, his attorney, and an investigator whom Myers has hired and given power of attorney over himself to investigate his claims and assist his attorney in this litigation. Had this case not garnered so much embarrassing attention for the City of Las Vegas, the City Attorney's office would likely not even assert such a flimsy argument that such materials are discoverable. Yet the issue now faces the Court, and the Court should plainly reject it.

## II. LEGAL STANDARD

"Discovery is supposed to proceed with minimal involvement of the Court." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 301 (D. Nev. 2019) (*quoting F.D.I.C. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986)). "Counsel should strive to be cooperative, practical, and sensible, and should seek judicial intervention only in extraordinary situations that implicate truly significant interests." *Id*. (internal quotations omitted). "[B]road discretion is vested in the trial Court to permit or deny discovery." *Hallett v. Morgan,* 296 F.3d 732, 751 (9th Cir. 2002). The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

When a party fails to provide discovery, and the parties' attempts to resolve the dispute without Court intervention are unsuccessful, the opposing party may seek an order compelling that discovery. Fed. R. Civ. P. 37(a). However, the party moving for an order to compel discovery bears the initial burden of informing the Court: (1) which discovery requests are the subject of the motion to compel; (2) which of the responses are disputed; (3) why they believe the response is deficient; (4) why defendants' objections are not justified; and (5) why the information he seeks through discovery is relevant to the prosecution of this action. *Harris v. Kernan*, No. 2:17-cv-0680-TLN-KJN-P, 2019 U.S. Dist. LEXIS 154425, 2019 WL 4274010, at *1-2 (E.D. Cal. Sept. 10, 2019); *see*

*also Ellis v. Cambra*, No. 1:02-cv-05646-AWI-SMS-PC, 2008 U.S. Dist. LEXIS 109050, 2008 WL 860523, at *4 (E.D. Cal. 2008) ("Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the court why the information sought is relevant and why defendant's objections are not justified.").

Thereafter, the party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied."). The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments. *See, e.g., F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 552 (D. Nev. 2013). Arguments against discovery must be supported by "specific examples and articulated reasoning." *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

### III.   ARGUMENT

#### A.   Mr. Roberts' Involvement with this Litigation

The Defendants' motion concerns communication with an individual named Douglas Roberts. A disclosure or explanation of Mr. Roberts' involvement in this matter is necessary to explain the plaintiff's position. Mr. Roberts can best be described as a journalist and dogged investigator. However, he does serve different roles in this case, as explained below.

First, Mr. Roberts is clearly a lay witness to Mr. Myers' arrest on January 9, 2025, and the circumstances leading up to it. Mr. Roberts is a journalist and also an acquaintance of Mr. Myers, who is also a journalist. The two have worked together on various news stories and have been acquaintances for several years. On the evening of Mr. Myers's arrest, Mr. Myers had been at a function earlier that day with Mr. Roberts, who can testify that Mr. Myers was not consuming alcohol or other drugs during that time. At the time Mr. Myers was illegally pulled over on the highway by the City Marshals, Mr. Myers was actually following Mr. Roberts to Mr. Roberts' home to pick up a camera and other equipment in preparation to drive to California to cover the California wildfires, which were a major news story at that time. Mr. Roberts was driving ahead of Mr. Myers,

but when Mr. Myers was pulled over, he called Mr. Roberts. Nothing in this call is particularly notable in this case, but the audio of it has been produced. Mr. Roberts then returned to the scene to try to provide some assistance. Mr. Roberts is seen on the City Marshals' body-worn cameras, but his involvement at the scene really does not prove or disprove any salient fact in this case. Mr. Roberts' knowledge as a lay witness begins and ends on January 9, 2025, and much of it is recorded and not highly in dispute.

Second, Mr. Roberts was retained by Mr. Myers as an investigator after he was pulled over. Subsequent to his illegal detention and arrest by the City Marshal's office, Mr. Myers sought to research why they were pulling people over outside of their jurisdiction and to explore a lawsuit against them. He enlisted Mr. Roberts, whom he knew to be an outstanding investigator and who was local to Las Vegas. To do so, Mr. Myers actually signed a power of attorney (*Exhibit 2*) and a research agreement (*Exhibit 3*) with Mr. Roberts so that Mr. Roberts would be compensated to research the activities of the Las Vegas City Marshals and assist retained counsel in prosecuting a lawsuit against them. The power of attorney was executed on January 14, 2025, and the research agreement was signed on May 27, 2025, but then acknowledged as retroactive to work done since January 9, 2025. The power of attorney states Mr. Roberts is Mr. Myers' Attorney-in-fact with powers to "institute, maintain, defend…any and all actions, suits…" and to sign Mr. Myers' name on "public records requests and subpoenas…" (*Exhibit 2* at ROBERTS 000016-17) The researcher agreement literally describes Mr. Roberts' duties as "preparing detailed reports or presentations of research findings as requested by Client or Client's legal counsel" and "Collaborating with Client's legal team to identify additional research needs and prioritize tasks." (*Exhibit 3* at ROBERTS 000021) To put that date in context, Mr. Myers formally retained his current counsel, Mr. Breeden, on February 26, 2025, although Mr. Myers had consulted some attorneys prior to Mr. Breeden as well, meaning that the research agreement was entered into after the retention of legal counsel. In this capacity as a legal researcher hired to assist Mr. Breeden, there were a few email exchanges among Mr. Myers, his attorney, and Mr. Roberts regarding the case. These are the communications that are involved in the present Motion to Compel, and they are not attached due to the privilege claim, but have been designated as MYERS 2101 through 2290. The detailed privilege log is

attached as *Exhibit 1* to this Opposition. In other words, the communications sought in the *Motion to Compel* are communications between legal counsel (Mr. Breeden), the client (Mr. Myers), and a legal researcher (Mr. Roberts) retained specifically to investigate claims and assist legal counsel. Perhaps the Court thinks that this muddies the waters somewhat, and ideally, perhaps someone for the researcher could have been chosen who was not an actual eyewitness to some of the events in this case. Nevertheless, this is what occurred, and it is not improper, and it does not make privileged or work-product communication any less privileged or less subject to the work-product exemption and attorney-client privilege. Both the client (Mr. Myers) and the attorney (Mr. Breeden) have every right to engage the services of other persons to investigate and prosecute their civil claims.

Third, for full disclosure, Mr. Myers' counsel, Mr. Breeden, also has a separate attorney-client relationship with Mr. Roberts. None of the disclosed communications with Mr. Roberts and Mr. Breeden involved in this motion concern this representation. However, Mr. Breeden was separately retained by Mr. Roberts sometime in January 2026 to represent him in a First Amendment case where he alleges the City of Henderson and Las Vegas Metropolitan police officers wrongfully stopped him from filming and reporting on a local SWAT standoff. In fact, a lawsuit was recently filed by Mr. Breeden's office for Mr. Roberts over the incident, *Roberts v. City of Henderson et al.*, Eighth Judicial District Nevada, case number A-26-940710-C. Mr. Breeden has not added any of his communications with Mr. Roberts regarding the separate legal matter to the privilege log in this case. Said communications would clearly be covered by an attorney-client privilege and are not relevant to Mr. Myers' lawsuit against the City of Henderson, regardless.

### B. <u>Myers is Willing to Provide an In Camera Review of the Documents for the Court</u>

Because this discovery dispute turns on whether certain documents, designated as MYERS 2101 through 2290, are protected by privilege and/or work product exemption, the Court should have a reliable method to test the claim without compelling disclosure to the opposing party before the privilege determination is made. In camera review serves that function; it permits the Court to determine whether the attorney-client privilege applies to the disputed documents, while maintaining confidentiality from the opposing side during the adjudication of the privilege claim. *United States v. Zolin*, 842 F.2d 1135 (9th Cir. 1988) ("In the Ninth Circuit, the rules of evidence

with respect to privileges do allow for in camera review: a court undertakes in camera review of documents to decide whether the attorney-client privilege even exists with respect to those documents.") *citing In Re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982). The act of submitting the documents to the Court for that limited purpose does not waive or terminate the privilege. *United States v. Zolin*, 491 U.S. 554, 109 S. Ct. 2619 (1989). Courts have recognized that in camera review protects the confidentiality of attorney-client communications and shields attorney work product, particularly counsel's private thoughts, from intrusion by opposing parties and their counsel. *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909 F.2d 372 (9th Cir. 1990). Thus, where the Court is asked to decide whether the documents are privileged or protected work product, in camera review is a procedure that advances (rather than undermines) the very interests the doctrines are designed to protect. *Id.*

In more layman's terms, it is difficult for the Court to assess the nature of the privileges asserted without reviewing the documents. Myers is willing to provide the documents in camera for a fair adjudication of this motion. Should the Court request the same, it need only ask.

**C. The Motion to Compel should be Denied on its Merits as the Material is Work Product**

The work product doctrine exists to protect litigation preparation from adversarial intrusion, including the development of the opponent's legal theories and strategy. Because the doctrine protects materials prepared by a party or the party's representative in anticipation of litigation, it logically encompasses litigation-support work performed at the direction of the client or counsel through non-lawyer assistants such as researchers or paralegals. *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486 (9th Cir. 1989). One purpose of the rule is to prevent one's adversary from unfairly benefiting from the work of their opponent. *See, e.g., Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 538 (N.D.Ca. 1987) (principal function of work-product rule is to force each side to do its own work). *See also* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2021 (1970).

To the extent the researcher's or paralegal's work reflects counsel's mental impressions, conclusions, opinions, or legal theories, Rule 26 requires protection against disclosure even if some

production or partial disclosure is ordered. One might be able to infer strategies or concerns of one's opponent merely by learning what they are investigating. An argument that only documents physically authored by an attorney qualify for work product is inconsistent with the doctrine's focus on materials prepared by a party *or its representative* and with the rule's emphasis on protecting attorney mental impressions. *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486 (explaining the purpose of the work product exemption). If non-lawyer assistants were categorically excluded from the work product doctrine, parties could obtain counsel's strategy indirectly by demanding the very research, summaries, and compilations that embody counsel's theories-precisely what Rule 26 requires courts to protect against disclosure.

Lastly, on this issue, the Defendants have not even briefed or made an argument regarding a showing of necessity or substantial need, or why the correspondence contains information the Defendants cannot obtain elsewhere. *See* Fed. R. Civ. P. 26(b). The City of Las Vegas Defendants have not demonstrated a substantial need for the materials or that they cannot obtain their substantial equivalent by other means without undue hardship. The work product protection should be maintained to preserve the integrity of trial preparation and protect mental impressions, conclusions, opinions, and legal theories. Instead of serving these goals, the City of Las Vegas Defendants' motion should be squarely described as it is: a fishing expedition to try to see what Mr. Myers and his counsel were discussing with their researcher, specifically retained for litigation. Therefore, the Court should deny these efforts and the *Motion to Compel*.

### D. No Waiver of any Privilege or Work Product Exemption was Made

One of the more interesting arguments made by the City of Las Vegas Defendants is that somehow Myers and his counsel waived any work product objection they may have had to these documents by disclosing Roberts as a potential witness and describing him as an acquaintance. However, this conflates counsel's duty to disclose witnesses under Fed. R. Civ. P. 26(a) with the reservation of privileges. Fed. R. Civ. P. 26(a) requires the plaintiff to disclose all potential witnesses in his case, even if some or all of the information is privileged or work product. Mr. Roberts was clearly a lay witness to the events on January 9, 2025, and he was actually present at the scene as recorded on body-worn camera. It seems unfair to penalize the plaintiff for accurately disclosing

7

Mr. Roberts as such a witness and finding that this is somehow a waiver. This clearly is not a waiver. For example, the City of Las Vegas Defendants have disclosed its own city marshals as potential witnesses in this action. Does this mean the attorney-client privilege is waived as to those witnesses? Of course not. The City of Las Vegas Defendants' arguments should not be well taken on this waiver argument.

What the City of Las Vegas Defendants are trying to do is argue that because Mr. Roberts is a lay witness to the events of January 9, 2025, any *later* research he did in anticipation of litigation, as directed by Mr. Myers or his legal counsel, is now suddenly discoverable. However, the City of Las Vegas Defendants cite no law to that effect.

Instead, the law regarding the waiver of the work product exemption is as follows: Under Fed. Rule of Evidence 502(a), a waiver of work product protection extends to undisclosed communications or information *only* if three conditions are met: the waiver is intentional; the disclosed and undisclosed communications concern the same subject matter; and they ought in fairness to be considered together. Fed. Rule Evid 502. The intentionality requirement is a threshold element that must be satisfied before any waiver can be found. The intentionality requirement protects parties from inadvertent or unintentional disclosures that might otherwise result in a broad waiver. Neither Myers nor his counsel knowingly and intentionally waived work product protection over the communications with Roberts. Indeed, the opposite happened—counsel put them all on a privilege log and refused to produce them. Without a showing of intentional waiver, the *Motion to Compel* must fail as a matter of law. The undisclosed materials at issue were prepared in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3) protects such materials from discovery absent substantial need and undue hardship. USCS Fed Rules Civ Proc R 26.

The City of Las Vegas Defendants also argue that any attorney-client privilege is waived because the disputed communications included the researcher, Mr. Roberts, as well as Myers and his counsel. However, it over-simplifies the attorney-client privilege to say that no third parties can be copied on attorney-client correspondence without destroying the privilege. Instead, the attorney-client privilege in the Ninth Circuit extends to communications involving paralegals, researchers, experts, and other third parties involved in preparing a case, provided that the communications are

made for the purpose of obtaining legal advice and are necessary for effective legal consultation. E.g., *United States v. Sanmina Corp. & Subsidiaries*, 968 F.3d 1107 (2020) (privilege may extend to communications with third parties acting as agents of the client, such as experts or consultants); *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice"); *Todd v. STAAR Surgical Co.*, 2015 U.S. Dist. LEXIS 189237 (C.D. Cal. 2015) ("In addition to communications directly between client and counsel, the attorney-client privilege may extend to communications with a third party where that third party has been retained as an agent for the purposes of assisting a lawyer in providing legal advice to a client.). Therefore, there is no waiver due to the inclusion of a third party in the correspondence.[1]

### E. There is no "Sword and Shield" analogy here

Lastly, in numerous places in their Motion to Compel, the City of Las Vegas Defendants make lofty appeals to fairness, suggesting that Mr. Myers is attempting to "have it both ways" or use the communications "as both a sword and shield." While these claims may make for good drama, Myers has done nothing improper. The City of Las Vegas Defendants are free to depose Mr. Roberts as a lay witness for the salient facts he has from what he observed on January 9, 2025. He will likely be called to testify that he was with Myers earlier in the evening, that Myers was not intoxicated when pulled over, and that he went to the scene of the arrest to try to explain this to officers, to no avail. Myers makes no argument that the City of Las Vegas Defendants cannot inquire into the factual knowledge Mr. Roberts has.

---

[1] A few of the correspondences are also copied to Darcy Spears. Darcy Spears is KTNV Channel 13 (ABC affiliate) Chief Investigative Reporter. She has won 24 Emmys, 11 regional and two national Edward R. Murrow awards, Associated Press, National Press Club and Genesis awards for her journalism. Requests for disclosure of communications between members of the press should be rejected under the First Amendment and NRS § 41.275 ("No reporter, former reporter or editorial employee of any newspaper, periodical or press association or employee of any radio or television station may be required to disclose any published or unpublished information obtained or prepared by such person in such person's professional capacity in gathering, receiving or processing information for communication to the public…"). Both Mr. Myers, Mr. Roberts and Ms. Spears are members of the press and journalists.

What the City of Las Vegas Defendants *cannot* do is claim that because Mr. Roberts witnessed some of the actual events, he cannot serve as a litigation researcher for Mr. Myers or his counsel without turning over all of that later research and communications. Both clients and attorneys can retain assistants or researchers to assist in researching and developing claims. The City of Las Vegas Defendants are not nobly trying to get fair discovery; instead, they are trying to steal their adversary's work, and the Court should not allow this.

**IV. CONCLUSION**

In closing, the City of Las Vegas Defendants' motion should be called what it is: A fishing expedition to try to get their adversary's communications pertaining to research and preparation of their case. A party and its legal counsel have every right to retain a paralegal or researcher to assist them in locating evidence and preparing their case. There has been no knowing waiver of any privilege or work product exemption regarding the disputed communications, and the *Motion to Compel* should be denied.

Dated this 11th day of March, 2026.

BREEDEN & ASSOCIATES, PLLC

*/s/ Adam J. Breeden*

**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

**INDEX OF EXHIBITS**

| # | Description |
|---|---|
| 1. | Privilege Log |
| 2. | Power of Attorney |
| 3. | Research Agreement |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of March, 2026, I served a copy of the foregoing legal document **PLAINTIFF DEREK MYERS' OPPOSITION TO MOTION TO COMPEL** via the method indicated below:

|  | Through the Court's ECF/CM system on all registered users |
|---|---|
| X | Pursuant to FRCP 5, by placing a copy in the US mail, postage pre-paid to the following counsel of record or parties in proper person:<br><br>NECHOLE GARCIA, ESQ.<br>PAUL MATA, ESQ<br>495 S. Main Street, Sixth Floor<br>Las Vegas, NV 89101<br>*Attorneys for Defendants* |
|  | Via receipt of copy (proof of service to follow) |

An Attorney or Employee of the following firm:

*/s/ Kirsten Brown*
**BREEDEN & ASSOCIATES, PLLC**