JEFFRY M. DOROCAK
City Attorney
Nevada Bar No. 13109
By: NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
By: PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
(702) 229-6629
(702) 386-1749 (fax)
Email: ngarcia@lasvegasnevada.gov
Email: pmata@lasvegasnevada.gov
Attorneys for DEFENDANTS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEREK MYERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; SERGIO GUZMAN, individually; and JASON POTTS, individually,<br><br>Defendants. | CASE NO. 2:25-cv-0562-GMN-DJA |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL**

Defendants CITY OF LAS VEGAS, JASON BROOKS, SERGIO GUZMAN, and JASON POTTS ("Defendants"), through their attorneys of record, JEFFRY M. DOROCAK, City Attorney, NECHOLE GARCIA, Chief Deputy City Attorney, and PAUL MATA, Deputy City Attorney, file this Reply in Support of Defendants' Motion to Compel. Plaintiff's Opposition failed to establish the existence of any privilege, so this Court should compel disclosure.

This motion is based upon the pleadings and papers on file herein, the following points and authorities, and any oral argument that the Court may entertain.

. . . .

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

Myers Opposition only solidifies that he is taking a sword and shield approach to discovery. First, he discloses the name of a witness, calls him an "acquaintance" and claims that he has discoverable information regarding his communications with Myers. Then, when Defendants seek those communications, Myers withholds them under the premise that the "acquaintance" is actually an investigator working on his case. Now, Myers further tries to shield his communications by claiming for the first time that his counsel has a separate attorney-client relationship with Roberts, as if that makes the communications between himself, Roberts, and Myers privileged. At no point during any of the conversations between counsel was this supposed separate attorney-client relationship mentioned. Myers' shifting positions on Roberts' status in his case are enough to cause whiplash. Either Roberts is an investigator and client, or he is a witness. He cannot be both. Nor can Myers be the arbiter of which communications related to the January 9, 2025 incident can be disclosed or withheld. This Court should not sanction this "heads I win, tails you lose" approach to discovery, and grant Defendants' motion to compel.

II. **ARGUMENT**

Myers argues that it is not improper to have hired a percipient witness as an investigator and consultant on this case, and that it was totally within his rights to do so. That could not be further from the truth. There is a reason why the rules of ethics prohibit an advocate from also serving as a fact witness at trial: because it is unethical. Moreover, there is a reason why courts do not allow parties to selectively claim privileges: because it is fundamentally unfair to the opposing party. Contrary to Myers' assertions, he cannot subsequently retain the services of an individual who is also percipient witness and then expect that individual to testify at trial. Such conduct "muddies the waters," as Myers concedes. Thus, this Court should grant Defendants Motion to Compel.

A. *In camera* **review is unnecessary because Myers failed to establish privilege.**

Myers seeks to have this Court conduct an *in camera* review of all of the supposedly protected documents. However, to be entitled to that in camera review, Myers should have made

some threshold showing that the work product privilege is implicated here. *See Lane v. Department of Interior*, 523 F.3d 1128, 1136 (9th Cir. 2008) ("[i]n camera inspection is 'not a substitute for the government's burden of proof, and should not be resorted to lightly,' due to the *ex parte* nature of the process and the potential burden placed on the court") (internal citations omitted). He has not. Instead, he merely attached a "Research Services Agreement" and a "Power of Attorney" form, neither of which make the communications between Roberts and Myers work product. Nothing in the "Research Services Agreement" makes Roberts an agent of Myers' counsel, so that the privilege would apply. The power of attorney document is particularly ineffective at establishing a work product privilege as Nevada's Supreme Court has held that a power of attorney "is not a vehicle which authorizes an attorney in fact to act as an attorney at law." *Eby v. Johnston Law Office, P.C.*, 138 Nev. 660, 667, 518 P.3d 517, 524 (2022) (internal citation omitted). Indeed, there is no need for this Court to waste judicial resources parsing through emails when Myers has failed to show that the work product privilege even applies. This Court should deny this request and grant Defendants' Motion to Compel.

**B. Any work product is waived because Myers intentionally produced some communications with Roberts**.

Myers argues that he had to disclose Roberts as a witness because he is required by Rule 26 to disclose any possible witness. That is a misreading of the rule. What Rule 26 actually requires is the disclosure of witnesses "that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Thus, it is not that Myers had to disclose every possible witness; really, he only had to disclose witnesses that he seeks to use to support his claims. And Myers' Opposition makes clear that it is his intent – to have Roberts testify in support of his claims. It is also important to note that the supplemental disclosures are dated after Roberts' supposed agreements with Myers, yet that did not stop Myers from characterizing Roberts as merely an "acquaintance" with discoverable information in his disclosures. Myers' disclosure of Roberts as a fact witness he intends to use as trial serves as a waiver of any privilege. Myers also omits that he did not just disclose Roberts' name as a witness. Importantly, he also disclosed some of the communications between Myers and Roberts, including

a phone conversation. This disclosure of some of their conversations further serves as a waiver of the privilege. Myers' bare assertion that it does not waive the privilege does not satisfy his burden to prove the privilege was not in fact waived. *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

Myers also argues that Defendants' motion should be denied because Defendants failed to show a substantial need for the materials pursuant to Rule 26(b)(3). However, that rule only applies when the materials are in fact protected by the work product privilege. That privilege does not exist here, so Defendants do not have to demonstrate a substantial need. Indeed, Defendants are entitled to the information simply because it is relevant and can also serve as impeachment material. Moreover, there is a particularly interesting statement Myers makes in the communication that was disclosed that goes to Myers' motivation for driving recklessly in front of the marshals in the first place. The statement points to other conversations between Myers and Roberts that may shine more light on Myers' motivations. Defendants are entitled to chase that down to see if more such statements have been made.

Finally, Myers argues that any waiver is not intentional, so it does not exist pursuant to Fed. R. Evid. 502. However, the intent mentioned in this rule is not just whether a party intends to waive the privilege. Intent can also be established when a party intentionally produced a privilege document it believes supports its position. *Ringelberg v. Vanguard Integrity Professionals – Nevada, Inc.*, 2018 WL 555694, at *4 (D. Nev. Jan. 24, 2018) (citing Advisory Committee Notes to Rule 502(a) revised, 11/28/07) ("A party may not intentionally put privilege or protected information into litigation in a selective, misleading, or unfair manner"). Indeed, the Advisory Committee notes to Rule 502 make clear that the rule "does not alter the substantive law regarding when a party's strategic use in litigation of otherwise privileged information obliges the party to waive privilege regarding other information on the same subject matter, so the information being used can be fairly considered in context." *Id.*

In *Century Aluminum Co. v. AGCS Marine Ins. Co*, the court found that the intentional disclosure of a privileged document constituted an intentional waiver. 285 F.R.D. 468, 471-2 (N.D. Cal. 2012); *Carmody v. Board of Trustees of University of Illinois*, 893 F.3d 397, 406 (7th Cir.

2018). Many other courts likewise have found intentional production of a privileged document to constitute a waiver of the privilege. *Ringelberg,* 2018 WL 555694, *at 4; *Zeiter v. Walmart, Inc.*, 2024 WL 1907385, at *3 (D. Nev. Apr. 29, 2024); *Jordan v. United States*, 552 F. Supp. 3d 575, 579 (S.D. W. Va. 2021); *Courtade v. United States*, 243 F. Supp. 3d 699, 704 (E.D. Va. 2017). Indeed, the question here is not whether Myers intentionally waived the privilege; it is whether they intentionally produced communications between himself and Roberts that are supposedly privileged to help his case. Here, Myers intentionally produced communications between himself and Roberts where they discuss the traffic stop and filing a lawsuit against Defendants. According to Myers, those types of communications are supposedly protected. Yet, it is clear from the Initial and Supplemental Disclosures that Myers intentionally produced that information. Thus, he waived any supposed privilege.

### C. Myers failed to establish that the attorney-client privilege extends to Roberts.

Myers argues that Roberts' presence in the email communications between himself and Roberts does not automatically amount to a waiver of the attorney-client privilege. He cites to examples of paralegals, experts, and consultants all being encompassed in the privilege. However, he fails to establish that Roberts fits into any of these criteria. He provides no proof that Roberts is somehow an agent of his counsel, as a paralegal would be. Nor has he established that Roberts is some sort of consultant or an expert. In fact, his argument that Roberts is akin to a consultant and expert is particularly farfetched, since consultants and experts are not also disclosed as fact witnesses. Myers also points to no case law where a "consultant" who is also disclosed as a fact witness is covered under the umbrella of the attorney-client privilege. That is because such a duality is not proper. *See* NRPC 3.7.

### D. Myers failed to oppose Defendants' motion as to the journalist privilege.

Other than a passing reference to the privilege in a footnote, Myers does not oppose Defendants' argument that the qualified journalist privilege does not apply to Myers or Roberts. This failure renders his claim of journalist privilege abandoned. *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006). Therefore, this Court should not consider the journalist privilege as to Roberts and Myers.

**E. Myers confirms he is taking the sword and shield approach.**

Myers denies that he is attempting to use the attorney-client and work product privileges as a sword and shield but then suggests an approach that does exactly that. He suggests that Roberts be available to testify about things that help Myers prove his case, such as whether Myers was drinking prior to the incident. However, he posits that Roberts should not be questioned about other interactions that may hurt his case, such as any discussions that bring Roberts' credibility or Myers' motivations into doubt. Such an approach hamstrings Defendants ability to defend its case, which is exactly what the sword and shield doctrine is designed to avoid. *Lambright v. Ryan*, 698 F.3d 808, 823 (9th Cir. 2012). Myers should not be permitted to wield privileges as a sword and shield. Thus, Defendants' Motion to Compel should be granted.

**III. CONCLUSION**

Myers fails to establish that the work product and attorney-client privileges apply. Thus, an *in camera* review of the communications at issue is an unnecessary waste of judicial resources. Moreover, even if the work product privilege does apply, Myers waived it by intentionally producing communications he believes are beneficial to his case. Myers produced no evidence that Roberts is somehow either an agent of Myers' counsel or a consultant or expert that would be covered under the blanket of the attorney-client privilege. Finally, Myers also abandoned the journalist privilege claim by failing to oppose Defendants' arguments regarding that claim. Therefore, Defendants respectfully request that this Court grant their Motion to Compel.

DATED this 16th day of March, 2026.

JEFFRY M. DOROCAK
City Attorney

By: /s/ *Nechole Garcia*
NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
Attorneys for DEFENDANTS