JEFFRY M. DOROCAK
City Attorney
Nevada Bar No. 13109
By: NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
By: PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
(702) 229-6629
(702) 386-1749 (fax)
Email: ngarcia@lasvegasnevada.gov
Email: pmata@lasvegasnevada.gov
Attorneys for CITY DEFENDANTS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEREK MYERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; SERGIO GUZMAN, individually; and JASON POTTS, individually,<br><br>Defendants. | CASE NO. 2:25-cv-0562-GMN-DJA |

**DEFENDANTS' MOTION TO DISMISS**

Defendants CITY OF LAS VEGAS, JASON BROOKS, SERGIO GUZMAN, and JASON POTTS, through their attorneys of record, JEFFRY M. DOROCAK, City Attorney, NECHOLE GARCIA, Chief Deputy City Attorney, and PAUL MATA, Deputy City Attorney, move to dismiss the Second Amended Complaint in its entirety pursuant to FED. R. CIV. P. 12(b)(6). Dismissal is warranted because Plaintiff did not state a claim upon which relief can be granted.

This motion is based upon the pleadings and papers on file herein, the following points and authorities, and any oral argument that the Court may entertain.

. . . .

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Derek Myers ("Myers") filed this civil rights action against Defendants City of Las Vegas ("City"), Department of Public Safety Chief Jason Potts ("Chief Potts"), and City marshals Sergio Guzman and Jason Brooks (collectively, the "Defendant officers"). The crux of Myers' case relies solely on a single faulty legal premise: that the City marshals did not have the legal authority to conduct a traffic stop on Myers or arrest him for driving under the influence ("DUI"). Indeed, Plaintiff does not allege a lack of reasonable suspicion or probable cause, nor does he allege excessive force. Instead, he alleges that the Defendant officers had no legal authority because the location of the traffic stop was outside of their primary jurisdiction. From that assertion flows all of Myers' other claims. Contrary to Myers' assertions, the law is clear that as peace officers, the Defendant officers have the legal authority–a duty, in fact–to conduct a traffic stop to prevent Myers from further endangering the public with his reckless driving. Moreover, the Defendant officers had probable cause for the DUI arrest. Because the stop and arrest were lawful, there are no constitutional violations, and Myers' state tort claims fall by the wayside. Thus, this Court should dismiss his Second Amended Complaint in its entirety.

### II. BACKGROUND

Myers' Second Amended Complaint sets forth a recitation of facts, which, even if accepted as true, do not state a plausible claim for relief. The City has a specialized unit of peace officers, known as City marshals. ECF No. 40 at ¶ 18. The marshals are "category I" peace officers which means they "have unrestricted duties." NRS 289.460. The City marshals, including the Defendant officers, work for the City's Department of Public Safety. ECF No. 40 at ¶ 10. Chief Potts is the Director of the Department. *Id.*

On January 9, 2025 at approximately 5:30 p.m., the Defendant officers were traveling northbound on the I-11/US 95 freeway when they observed Myers tailgate their vehicle, pass them on the shoulder, and then speed off down the highway. ECF No. 40 at ¶ 27. The Defendant officers conducted a traffic stop out of a concern for the public's safety. *See id.* During the stop, the Defendant officers developed reasonable suspicion that Plaintiff was driving under the

influence, so they conducted field sobriety tests ("FSTs") on Myers. ECF No. 40 at ¶ 30. Myers exhibited clues of impairment, so the Defendant officers arrested Myers for various traffic violations and DUI. *Id.* Myers was subsequently criminally charged with Reckless Driving and DUI.[1] Those charges are currently pending in Las Vegas Municipal Court.

Myers filed his Complaint on March 21, 2025. ECF No. 1. Prior to service, Myers filed an Amended Complaint. ECF No. 5. The City timely filed a Motion to Dismiss. ECF No. 11. Months later, on March 13, 2026, Myers filed a Second Amended Complaint. ECF No. 40. The gravamen of Myers' Second Amended Complaint is that the Defendant officers lacked legal authority to stop and arrest him because of the location of the incident. ECF No. 40 at ¶¶ 27-29. From that assertion flows all of Plaintiff's claims for relief, namely: 1) Violation of 42 U.S.C. § 1983 against the Defendant officers and Chief Potts; 2) Violation of Nevada Constitution/Constitutional Tort against all Defendants; 3) *Monell* liability against the City; 4) Battery against all Defendants; 5) False imprisonment/False arrest against all Defendants; and 6) Declaratory relief. ECF No. 40 at ¶¶ 42-111. Myers also seeks punitive damages against all Defendants, even though punitive damages are not allowed against the City as a matter of law. ECF No. 40 at ¶¶ 54, 93, 105, Prayer for Relief at ¶ 2. Finally, Plaintiff claims that he is a class representative for "over 1,000" people similarly situated to him. *Id*. at ¶ 34.

Myers' Second Amended Complaint names Chief Potts in most of the claims for relief even though there are no facts demonstrating that he directly supervised the Defendant officers or was present during the incident. *Id*. at ¶¶ 43, 57, 87, 96. Instead, Myers makes the vague assertion that Chief Potts is liable because he oversaw the Department and permitted the marshals "to exceed their territorial jurisdiction." *Id*. at ¶ 26. However, Myers also seeks to hold the City liable under *Monell* for the same alleged conduct, so his claims against Chief Potts should be dismissed as redundant.

---

[1] This Court may take judicial notice that on June 9, 2025, Myers was criminally charged with Driving Under the Influence of a Controlled Substance and Reckless Driving as a result of this incident. *City of Las Vegas v. Dereck Myers,* Case No. 25-001674; *See Mack v. South Bay Beer Distributors, Inc*. 798 F.2d 1279, 1282 (9th Cir. 1986) (court may review matters of public record, including pleadings when considering a motion to dismiss), *overruled on other grounds*.

Myers' Second Amended Complaint does not plead sufficient facts to state a plausible claim of relief because the Defendant officers had legal authority to stop and arrest him. Thus, there were no constitutional violations or tortious conduct. Moreover, the City incurred no liability under *Monell*. Additionally, Myers' claims regarding Chief Potts are duplicative and devoid of any facts establishing personal liability. Therefore, Myers' Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6).

### III.   LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the allegations in . . . .

a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). However, documents subject to judicial notice may be considered on a motion to dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Federal Savings and Loan Association v. Solimino*, 501 U.S. 104 (1991). The Court may review matters that are in the public record, including pleadings, orders and other papers filed in court. *See id.*

## IV.   ARGUMENT

Myers' entire cause of action is premised on the faulty contention that the Defendant officers acted without legal authority. Indeed, Plaintiff's entire case rises and falls on this assertion. If the Defendant officers acted with legal authority, then there were no Fourth, Fifth or Fourteenth amendment violations, no *Monell* liability, no Nevada Constitution violations, and there is no battery or false imprisonment claim. The Second Amended Complaint is replete with incorrect legal assertions about jurisdiction and authority, but those do not enjoy the same presumption of truth as facts. *Iqbal*, 556 U.S. at 678-679. The Defendant officers had legal authority under the United States Constitution, the Nevada Constitution, and state law for the stop and arrest. Thus, Myers cannot state a claim for relief and his case should be dismissed in its entirety.

### A. Plaintiff failed to state a plausible claim for relief because, as a matter of law, the Defendant officers had legal authority under Nevada law.

Plaintiff vaguely alleges that his stop and arrest were "illegal" because the Defendant officers were outside of their territorial jurisdiction. ECF No. 40 at ¶ 30. NRS 280.125 provides that the territorial jurisdiction for marshals is limited to "[t]he enforcement of state laws and city and county ordinances on real property owned, leased, or otherwise under the control of the participating political subdivision." NRS 280.125(3)(b).[2] However, this statute must be read in

---

[2] The City also enacted several ordinances to enable City marshals to carry out their duties, including traffic

conjunction with the other portions of NRS 280.125, along with other Nevada statutes and constitutional doctrines granting authority to peace officers in a variety of circumstances.

City marshals such as the Defendant officers are peace officers pursuant under Nevada law. NRS 289.150(2). Nevada law contemplates three categories of peace officers. NRS 289.460-480. Category II and III peace officers have restricted duties. NRS 289.470-480. In contrast, Category I officers have unrestricted duties. NRS 289.460. City marshals are Category I peace officers, so they have unrestricted duties. NRS 171 sets forth the authority that peace officers have in certain instances. Specifically, NRS 171.124(1)(a) provides that:

> Except as otherwise provided in subsection 3 and NRS 33.070 and 33.320, **a peace officer** or an officer of the Drug Enforcement Administration designated by the Attorney General of the United States for that purpose may make an arrest in obedience to a warrant delivered to him or her, or **may without a warrant, arrest a person**:
>
> (a) **For a public offense committed or attempted in the officer's presence**. [Emphasis added.]

Thus, peace officers have legal authority to make an arrest for public offenses committed in their presence. City marshals have this authority, since they are peace officers. NRS 171.124 contains no territorial jurisdictional limit. Rather, it only requires that: 1) the person effectuating the arrest is a peace officer, and 2) the suspect committed a public offense in the officer's presence. Here, Myers alleges he was stopped for the "alleged minor traffic violation of speeding and following too closely." ECF No. 5 at ¶ 27. These are public offenses that violate Nevada law. NRS 484B.600– NRS 484B.633; NRS 484B.127. Myers presents no facts to establish that he was not in the Defendant officers' presence when he committed these infractions. To the contrary, the plausible conclusion drawn from the facts is that Myers committed these public offenses in the Defendant officers' presence. Thus, the officers had legal authority to stop and arrest him pursuant to NRS 171.124.

Myers' claims also fail to consider NRS 280.125 in its entirety. NRS 280.125(3)(a) does not contain the same territorial limitation as in subsection (3)(b). There, it permits City marshals to issue citations "in accordance with the provisions of NRS 171.17751." NRS 280.125(3)(a).

---

enforcement. LVMC § 2.28.080; LVMC § 11.04.030; LVMC § 11.04.040.

NRS 171.17751 permits marshals to "prepare sign and serve written citations on persons accused of violating a county or city ordinance." *Id*. There is no territorial limitation in NRS 171.17751 either; marshals can serve citations for city violations, point blank and period.  Here, Myers concedes that he was "allegedly" speeding and following too closely. ECF No. 40 at ¶ 27. Those are violations of city ordinances.  LVMC §10.02.010;  LVMC §11.12.080.  Accordingly, the Defendant officers also had legal authority pursuant to NRS 177.17751 to stop Myers.

### B.  Myers failed to state a plausible Fourth Amendment violation because, as a matter of law, the stop and arrest was lawful pursuant to Supreme Court precedent.

As stated above, the Defendant officers had lawful authority under Nevada law to stop Myers because they are peace officers, and he committed a public offense in their presence.  NRS 171.124. Because Myers' claim of illegality fails, so does his assertion that the conduct violated the Fourth Amendment.  Indeed, the U.S. Supreme Court has long recognized that an arrest for an offense committed in the officer's presence does not run afoul of the Fourth Amendment. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The U.S. Supreme Court has maintained that stance even when an officer exceeded the parameters set forth in state law. In *Virginia v. Moore*, 553 U.S. 164, 167 (2008), officers arrested an individual for driving on a suspended license, even though the state statute only permitted the issuance of a summons. Because the offense was committed in the officer's presence, the Court held that the arrest was reasonable under the Fourth Amendment despite the restrictions in state law. *Id*. at 176. The Court stated that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, **state restrictions do not alter the Fourth Amendment's protections.**"[3] *Id*. (emphasis added).

---

[3] The Ninth Circuit has consistently followed *Moore* in similar circumstances. *See Saunders v. Silva*, 473 F. App'x 769, 770 (9th Cir. 2012) ("To constitute a Fourth Amendment violation, an arrest by a state officer must be unreasonable under the United States Constitution, rather than simply not in compliance with state laws."); *Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010) (state restrictions on arrest do not alter the Fourth Amendment's protections because under federal law, warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution.); *Martinez-Medina v. Holder*, 673 F.3d 1029, 1037 (9th Cir. 2011) (even if a reasonable state officer should have known he lacked authority under his own state's law to apprehend a suspect, "that cannot serve as the basis for finding an egregious Fourth Amendment violation."); *United States v.*

The *Moore* case makes clear that even if the Defendant officers exceeded the parameters set in Nevada law, that alone does not amount to a Fourth Amendment violation. Indeed, as long as the offense occurred in front of the officer, then the arrest is reasonable under the Fourth Amendment. Again, the facts set forth in the Second Amended Complaint lead to the conclusion that Myers was driving erratically and recklessly in the Defendant officers' presence, as Myers failed to articulate any facts to the contrary. Myers failed to state a plausible Fourth Amendment violation because he fails to demonstrate that the Defendant officers committed any other violation than allegedly violating a state restriction.

Plaintiff's erratic driving behavior also created a public safety hazard that falls into the "exigent circumstances" exception. The Fourth Amendment also permits warrantless stops and arrests when "exigent circumstances" exist. *U.S. v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984) (overruled on other grounds). Exigent circumstances are those that would cause a reasonable person to believe a stop was "necessary to prevent physical harm to the officers or other persons." *Id*. The facts presented by Myers meet that exception. According to his Second Amended Complaint, Myers was speeding and following too closely on the I-11/US-95 highway during rush hour traffic. ECF No. 40 at ¶ 27. This driving conduct created a clear safety hazard to the Defendant officers and other drivers on the highway. Thus, the Defendant officers were justified in stopping Myers to prevent physical harm to themselves and others. Moreover, Myers concedes his arrest occurred after being administered an FST, indicating impairment. *Id*. at ¶ 30. An intoxicated person driving erratically on the freeway during rush hour most certainly creates an exigency justifying his arrest.

    1. <u>Myers failed to articulate facts establishing a lack of reasonable suspicion or probable cause.</u>

Myers alleges no facts establishing that the Defendant officers failed to meet the threshold legal requirements–reasonable suspicion and probable cause–that exist under the Fourth Amendment and Nevada law. The Fourth Amendment requires that peace officers have reasonable

---

*Steinman*, 130 F.4th 693, 713 (9th Cir. 2025) ("if conduct . . . is not violative of the Fourth Amendment in one state, it is not violative of the Fourth Amendment in another state.)

suspicion, which is "a particularized and objective basis for suspecting the particular person stopped of criminal activity," in order to conduct a brief investigative stop. *Navarette v. California*, 572 U.S. 393, 396 (2014).  Nevada law has the same standard. NRS 171.123(1) permits "[a]ny peace officer" to "detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime or civil infraction." The only constraint on the stop is as to time: the temporary detention may not last longer than 60 minutes, or under federal law, longer than it takes for the officer to pursue his investigation in a diligent manner. NRS 171.123(4); *U.S. v. Sharpe*, 470 U.S. 675, 686 (1985). Myers articulates no facts demonstrating that the Defendant officers lacked reasonable suspicion for the stop, that the stop lasted longer than 60 minutes, or that the Defendant officers did not pursue their investigation diligently. Indeed, the facts articulated in the Second Amended Complaint regarding his conduct do just the opposite. Observing Myers speeding and following too closely during rush hour surely constitutes an objective and reasonable basis for the stop. The facts also indicate the Defendant officers diligently pursued the investigation by conducting FSTs. ECF No. 40 at ¶ 30.

Myers also fails to set forth facts demonstrating a lack of probable cause for his DUI arrest. NRS 171.1231 provides that "[a]t any time after the onset of the detention pursuant to NRS 171.123, the person so detained shall be arrested if probable cause for the arrest appears." The probable cause standard also exists for an arrest to be reasonable under the Fourth Amendment. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("[a] warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause."). Thus, an arrest is lawful under both Nevada law and the U.S. Constitution if probable cause exists.  Here, Myers provided no facts establishing a lack of probable cause, such as facts establishing that he passed the FSTs or had no controlled substances in his system. In fact, Myers tacitly admits that at least one of the FSTs indicated impairment that led to his arrest. ECF No. 40 at ¶ 30.

Rather than providing any facts that there was a lack of reasonable suspicion or probable cause for his stop, Myers simply makes the conclusory legal statement that his arrest and detention

were "illegal." However, Myers' only claim to "illegality" is that the officers exceeded state statutory parameters, which alone does not amount to a Fourth Amendment violation. The facts as set forth by Myers also fall squarely into the exigent circumstances exception to the Fourth Amendment. Finally, Myers failed to demonstrate a lack of reasonable suspicion for the stop or probable cause for the arrest.  Myers failed to establish a plausible Fourth Amendment violation so his constitutional and *Monell* claims should be dismissed.

### C.  Myers' Fourteenth Amendment Claim should be dismissed as a matter of law.

Myers alleges that his stop and arrest not only violated the Fourth Amendment, but also violated the Fourteenth Amendment's prohibition against depriving an individual of liberty without due process. ECF No. 40 at ¶ 46. However, the law is clear that claims of an unlawful arrest and detention by law enforcement should be brought only under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Indeed, the Court has held "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* (emphasis in original). Myers' allegations of unlawful detention and arrest plainly fall within these parameters. Thus, his 42 U.S.C. § 1983 claim may only be analyzed under the Fourth Amendment, and Myers' Fourteenth Amendment claim should be dismissed.

### D.  There is no civil liability for *Miranda* violations as a matter of law.

Myers Second Amended Complaint alleges a new theory that Defendants violated Myers' Fourth, and Fifth and Fourteenth Amendment rights by failing to "timely and properly read Myers his *Miranda* rights." ECF No. 29-1 at ¶ 49.  However, this theory is not legally cognizable as *Miranda* violations cannot be grounds for a § 1983 action. Indeed, the United States Supreme Court has explicitly held that *Miranda* violations are not actionable under § 1983. *Id.*; *Fortson v. Los Angeles City Attorney's Office*, 852 F.3d 1190, 1194-95 (9th Cir. 2017) ("the Supreme Court has held that failure to give *Miranda* warnings does not create liability in a civil rights action.") Thus, Myers cannot plausibly claim a *Miranda* violation under § 1983 as a matter of law.

. . . .

Myers uses similar language in the second claim for relief, where he alleges a Nevada constitutional tort. ECF No. 40 at ¶ 64. As this Court is aware, the Nevada Supreme Court held that a private right of action exists for Nevada constitutional search and seizure violations. *Mack v. Williams*, 138 Nev. 854, 867, 522 P.3d 434, 447-48 (2022). The court did not, however, provide that a private right of action exists for violations of Nevada's constitutional protection against self-incrimination. Nothing in *Mack*, or any other Nevada case, expands the ability to bring a private cause of action under the Nevada Constitution for a *Miranda* violation. Thus, Myers' state constitutional claim also fails as a matter of law.

### E. Myers' *Monell* claim should be dismissed.

Myers claims a *Monell* violation against the City in the form of:  1) the City's alleged policy, practice or custom of City marshals operating outside of their jurisdiction to conduct traffic stops which amounts to an indifference to constitutional rights; and 2) ratification of the City's alleged policy, practice or custom by Chief Potts. ECF No. 40 at ¶¶ 76-77, 80-81. Yet rather than include any factual allegations to support Myers' assertions, Myers has merely recited the elements of a *Monell* claim which is insufficient to overcome a motion to dismiss. *See Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

The pleading standard for *Monell* claims is the same for all claims. Myers should not be allowed to plead conclusory *Monell* claims to bypass the pleading stage and go on an improper fishing expedition for *Monell* discovery. *Starr,* 652 F.3d at 1216 ("the factual allegations that are taken as true [in *Monell* claims] must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.") Accordingly, "[a]llegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id*.

Local governments can be sued directly under § 1983 only if they maintain a policy or custom that results in a violation of the plaintiff's constitutional rights. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690–91 (1978). To impose *Monell* entity liability under § 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff

possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997). The Ninth Circuit has explained how a policy may be established:

> There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)); *accord, e.g., Parker v. City of Pittsburg*, No. 17-cv-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017) (applying standard on a motion to dismiss).

As established in Sections B and C, above, because Myers does not state plausible claims for any underlying Fourth, Fifth or Fourteenth Amendment violations, he was not deprived of any constitutional right and the *Monell* analysis can and should end there. Moreover, because Myers' Second Amended Complaint does not set forth a policy, custom or practice of the City to subject it to *Monell* liability, nor does Myers articulate ratification of a purported policy by someone with final policy-making authority, Myers' *Monell* claim fails as a matter of law.

    1.  <u>Myers fails to identify a longstanding practice or custom.</u>

To plead a *Monell* claim, the policy, practice or custom must consist of more than random acts or isolated events. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1989), *overruled on other grounds by Bull v. City and Cty. of San Francisco,* 595 F.3d 964 (9th Cir. 2010)). The custom must be so persistent and widespread that it constitutes a "permanent and well settled city policy." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011)). "Isolated or sporadic incidents," by contrast, will not support *Monell* liability against a municipality. *Id*.

. . . .

Here, Myers has failed to articulate a specific policy that could possibly subject the City to *Monell* liability. Rather than identify any actual policy, Myers merely concludes that the City has a policy "of city marshals operating outside of their limited territorial jurisdiction and permitting city marshals to conduct traffic stops, searches and arrests on non-city property, including I-11/US Route 95 and other state or federal highways, despite their lack of jurisdiction." ECF No. 40 at ¶ 77. The only example Myers provides to support this alleged policy is the isolated instance where the Defendant officers stopped him on January 9, 2025. *Id.* ¶¶ 27-28. Myers provides zero allegation of any actual policy, or any other specific incidents that could in any way indicate this single instance is reflective of a City-mandated policy.

Yet, failing to identify an actual City policy and instead relying upon a single incident to allege a *Monell* policy, custom or practice is insufficient as a matter of law to maintain a *Monell* claim. *See, e.g., Guarino v. Las Vegas Metro. Police Dep't*, No. 2:13-cv-02135-GMN-NJK, 2014 WL 12791070, at *4 (D. Nev. July 21, 2014) (wherein this Court held that a single instance of an alleged detention of the plaintiff was "too nebulous to serve as evidence of a municipal policy under *Monell*."); *Montoya v. Smith*, No. 2:16-cv-00032-JAD-VCF, 2016 WL 3511185, at *5 (D. Nev. June 27, 2016) (Under *Monell*, a single instance of misconduct does not establish a municipal custom, and a conclusory allegation of "numerous instances" of other similar conduct "lacks the factual content that *Iqbal* requires.") Accordingly, Myers' failure to sufficiently plead a custom or policy to support a *Monell* claim warrants dismissal.

2.   Myers' *Monell* ratification claim fails.

In the alternative to a longstanding practice, Myers pleads that "and/or an official with final policymaking authority has ratified these decisions by subordinates." ECF No. 40 at ¶ 79. Myers further alleges that the conduct by City marshals "such as defendants Brooks and Guzman" was "endorsed, ratified or even mandated or encouraged by Defendant POTTS in his position as Chief of the Department." *Id.* at ¶ 81.

To plead a *Monell* claim through ratification, a plaintiff must allege that the authorized policymaker(s) approved a subordinate's decision and the basis for it. *Patino v. Las Vegas Metro. Police Dep't*, 207 F. Supp. 3d 1158, 1167 (D. Nev. 2016), *aff'd*, 706 F. App'x 427 (9th Cir. 2017)

(citing *Lytle v. Carl,* 382 F.3d 978, 987 (9th Cir. 2004). Specifically, "[t]he policymaker must have knowledge of the constitutional violation and actually approve of it." *Id*. The ratification doctrine also requires that a subordinate's actions be cast in the form of a policy statement and **expressly** approved by the supervising policymaker. *Wells v. City of Las Vegas*, No. 2:21-cv-1346-JCM-EJY, 2024 WL 2028007, at \*15 (D. Nev. May 7, 2024) (citing *St. Louis v. Praprotnik*, 485 U.S. 112 (1988)).

Here, Myers' ratification claim fails because Myers does not allege that defendant Potts is an official with final policymaking authority. Yet even if Potts is presumed to be such an official, Myers does not allege: 1) that Potts had knowledge of the alleged misconduct of the Defendant officers, or alleged misconduct of any other marshal; 2) that Potts was present when the single incident at issue occurred; or 3) that Potts expressly approved of the relevant actions of the Defendant officers, or any other marshal for that matter. Instead, Myers relies upon a loose recitation of *Monell* elements to claim that Potts "encouraged" an unspecified policy or custom of the City. ECF No. 40 at ¶ 81. Such allegations do not sufficiently plead ratification to support a *Monell* claim and therefore, dismissal is required.

    3.   <u>Myers does not sufficiently plead the final two elements of *Monell.*</u>

Consistent with Myers' mere recitation of the elements of *Monell,* Myers alleges that the City's purported policy or custom amounts to "deliberate indifference" to constitutional rights and "was the moving force behind the constitutional violations of its individual city marshals." ECF No. 40 at ¶¶ 80-81. To support his deliberate indifference allegation, Myers asserts a single conclusion that that the City "has failed to train or supervise its marshals" properly. *Id.* at ¶ 82.

A municipality's culpability for a deprivation of rights "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To satisfy § 1983, a municipality's "failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id*.

. . . .

Yet deliberate indifference is a stringent standard of fault, requiring "that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997). Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, "the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick,* 563 U.S. at 61.

In no shape or form has Myers sufficiently pled any facts to support his deliberate indifference allegation other than to throw in the phrase itself and the phrase "failure to train." Specifically, Myers does not allege a City policymaker was on actual or constructive notice of any deficiency in the City's training of its marshals with respect to alleged constitutional violations, or that a City actor affirmatively disregarded a known consequence of any alleged deficient training of marshals. Again, conclusory statements and/or recitation of elements of a claim cannot withstand a motion to dismiss. Because Plaintiff has not shown the final two elements of a *Monell* claim: that a purported policy "amounts to deliberate indifference" of his rights and that a policy is the "moving force" behind an alleged constitutional violation, Plaintiff's *Monell* claim must be dismissed. *Guarino,* 2014 WL 12791070, at *4.

### F.  Myers' claims against Chief Potts should be dismissed.

Myers Amended Complaint provides scant facts regarding Chief Potts. In most of the Amended Complaint, Myers simply lumps Chief Potts' name in with the other Defendants rather than articulating any facts establishing a plausible claim of his individual liability. Myers does not allege that Chief Potts was present during the incident between the Defendant officers and Myers, or that Chief Potts ever interacted with Myers. Instead, Myers attempts to establish liability with the vague contention that Chief Potts oversaw the City marshals and allowed them to exceed their jurisdiction. ECF No. 40 at ¶ 26.

As a general rule, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d. Cir. 1988). Under 42 U.S.C. § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). A supervisor may

only be held liable if there exists either: 1) his personal involvement in the constitutional deprivation; or 2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

The Ninth Circuit defined the contours of individual liability when it stated that a plaintiff cannot hold an officer liable because of his membership in a group without showing individual participation in the unlawful conduct. *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). In other words, group liability requires that a plaintiff first establish the "integral participation" of the officers in the alleged constitutional violation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Here, Myers fails to allege any facts establishing Chief Potts' "integral participation" in the incident. Moreover, Myers does not allege that Chief Potts directly supervised the Defendant officers or that he directed them to engage in the alleged violation. Myers also fails to set forth any facts showing that Chief Potts implemented a policy directing the Defendant officers to act beyond their territorial jurisdiction. At best, Plaintiff makes the vague assertion that Potts was aware of a general practice, but such a conclusory statement is insufficient to state a plausible claim for relief. Indeed, there are no facts establishing that Chief Potts played an integral role in Myers' detention and arrest, nor are there any facts establishing a causal link between Chief Potts and the incident. Thus, Myers' claims against Chief Potts should be dismissed.

1. Myers' claims against Potts should be dismissed as redundant.

Myers' premise for liability against Chief Potts is the same basis for his *Monell* claim against the City. Indeed, Myers contends that Chief Potts is liable because he "permitted the City marshals to exceed the territorial restrictions of their law enforcement jurisdiction." ECF No. 40 at ¶ 26. Myers likewise contends that the City is liable because it permits "city marshals to conduct traffic stops, searches and arrests" outside their jurisdiction. *Id*. at ¶ 77.

However, "[a] suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). The real party in such suits is the entity and it is the entity that will be responsible for any damages. *Ward v. City of Sparks,* No. 3:09-CV-0007-RCJ-VPC, 2011 WL 587153, at *4 (D. Nev. Jan. 12, 2011). Where both the public entity and a municipal officer are named in a lawsuit, a court may dismiss the individual named in his official capacity as a redundant defendant. *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Department*, 533 F.3d 780, 799 (9th Cir. 2008). Myers has named both Chief Potts and the City as Defendants and asserted that both are liable because of oversight of the Defendant officers. The claims against Chief Potts are duplicative against those against the City, and as such should be dismissed.

### G.  The Defendant Officers are shielded by qualified immunity.

The claims against the Defendant officers should be dismissed because they are shielded by qualified immunity. *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (dismissal of complaint due to qualified immunity appropriate). A plaintiff may not recover damages against an official in a 42 U.S.C. § 1983 action if qualified or "good faith" immunity applies to the official's actions. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Indeed, officers are entitled to qualified immunity under section 1983 unless: 1) they violated a federal statutory or constitutional right, and 2) the unlawfulness of their conduct was clearly established at the time. *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Id*. at 63 (internal citations omitted). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id*. (internal citations omitted).

Myers failed to articulate facts establishing that Defendants violated his Fourth Amendment rights. Indeed, all Myers points to is a parameter set forth in state law. However, state law parameters are insufficient to establish a Fourth Amendment violation when the officer arrests the individual for an offense committed in his presence. *Virginia v. Moore*, 553 U.S. at 167. Additionally, Myers failed to plead sufficient facts demonstrating that the Defendant's conduct

was <u>clearly</u> established as unlawful. At best, Plaintiff's allegation that the Defendant officers' conduct was extraterritorial is debatable, especially in light of the plethora of Nevada statutes granting peace officers authority to make arrests in certain circumstances. Yet federal case law supports the reasonableness of the Defendant officers' conduct under the Fourth Amendment. Indeed, Myers committed the offense in the Defendant officers' presence, created an exigency due to his erratic driving, and exhibited clues of impairment. Myers failed to plead facts sufficient to overcome the Defendant officer's qualified immunity.[4] Thus, the Amended Complaint should be dismissed.

**H. Myers failed to plead plausible battery and false imprisonment claims.**

As with all his other claims, Myers' battery and false imprisonment/false arrest claims rely on the tenuous premise that the Defendant officer's actions were unlawful. However, his claims fail for several reasons. First, Myers pled no facts establishing that his arrest and detention were unlawful. Second, Myers failed to plead facts sufficient to make a battery claim against law enforcement. Third, Plaintiff failed to articulate any facts making Chief Potts liable for these torts. Finally, Plaintiff did not plead facts establishing liability for the City. For these reasons, Plaintiff's Battery and False Imprisonment/False Arrest claims should be dismissed.

　　1.　<u>The battery and false imprisonment/false arrest claims should be dismissed because the Defendant officers' actions were lawful.</u>

Plaintiff alleges battery as to all Defendants. ECF No. 40 at ¶ 87. To establish battery, a plaintiff must demonstrate an "intentional and offensive touching of a person who has not consented to the touching." *Humbolt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 132 Nev. 544, 549, 376 P.3d 167, 171 (2016). However, under Nevada law, a police officer is privileged to use the amount of force that is reasonably necessary. *Plank v. Las Vegas Metropolitan Police Dep't*, 2016 WL 1048892, at *9 (D. Nev. Mar. 14, 2016) (citing *Yada v. Simpson*, 112 Nev. 254, 256-7, 913 P.2d

---

[4] If anything, Myers selectively quoting some of the legislative history for NRS 280.125 further establishes that unlawfulness is not "clearly established." Courts typically only examine legislative history if the statutory language is ambiguous and susceptible to more than one meaning. *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868, 871 (9th Cir. 1981) ("When the meaning of statutory language is unclear, one must look to the legislative history."); *Del Papa v. Board of Regents of University and Community College System of Nevada*, 114 Nev. 388, 393-94, 956 P.2d 770, 774 (1998).

1261, 1262-63 (1996) (superseded on other grounds)).   In the context of a lawful arrest, a plaintiff has only suffered a battery if the use of force was more than is reasonably necessary. *Id*. Moreover, the standard for battery by a police officer under federal is the same as under a 42 U.S.C. § 1983 claim. *Id*.; *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) ("The standard for common-law assault and battery by a police officer … mirrors the federal civil rights law standard."). Here, the Second Amended Complaint is devoid of any facts that establish that the Defendant officers used excessive force.

Myers not only failed to establish that the Defendant officers used excessive force, but he also failed to demonstrate the contact was unlawful. Indeed, Plaintiff cannot allege the officers acted illegally, as Nevada law grants legal authority for the stop and arrest. NRS 171.124; NRS 171.17751. Moreover, the U.S. Supreme Court has plainly held that arrests made by officers for offenses that occur in their presence are reasonable under the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). That decree holds even when state law provides greater restrictions on the officer's authority. *Virginia v. Moore*, 553 U.S. at 167. Myers alleges no facts establishing that his conduct did not occur in the officers' presence, or that there was no reasonable suspicion or probable cause for the search. Plaintiff cannot establish a plausible claim for battery because he cannot establish that the Defendant officers' contact was unlawful. Thus, Myers' battery claim should be dismissed in its entirety.

Myers likewise alleges false imprisonment/false arrest as to all Defendants based on common law and NRS 200.460. ECF No. 40 at ¶ 96. However, a false imprisonment claim also requires that the contact was unlawful: "[f]alse imprisonment is an unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority." NRS 200.460(1). *Yada*, 112 Nev. at 256, 913 P.2d at 1262 (superseded by statute on other grounds).   Plaintiff cannot state a claim for False Imprisonment because the Defendant officers had the legal authority for the stop and arrest under both state and federal law. Thus, Myers' False Imprisonment/False Arrest claim should be dismissed as to all Defendants.

. . . .

. . . .

2. Myers failed to plead facts making Chief Potts liable for battery and false imprisonment/false arrest.

Myers fails to set forth any facts demonstrating that Chief Potts was personally involved in his detention and arrest. Indeed, Myers' only basis for liability for Chief Potts is that he "ratified or had a policy of allowing traffic stops." ECF No. 40 at ¶¶ 90, 102. However, using the same standard as the 42 U.S.C. § 1983 claim, Chief Potts can only be liable in his official capacity if plaintiff can establish: 1) Chief Potts' personal involvement in the constitutional deprivation, or 2) a sufficient causal connection between wrongful conduct and the deprivation. Myers cannot establish liability for Chief Potts because he was not even present at the scene. Further Myers' vague allegation that Chief Potts is liable because he generally permitted the city marshals to conduct traffic stops is also insufficient to support the state tort claims against him. Myers establishes no causal connection between a supposed general policy of allowing traffic stops and his detention and arrest on the highway.

Myers' tort claims against Chief Potts are also redundant to his claims against the City. Indeed, there are no claims that Chief Potts personally participated in the incident. Myers seeks to hold Chief Potts liable for the torts merely because he oversaw the Department of Public Safety. Likewise, Myers seeks to render the City liable just because it employs the Defendant officers. As discussed above, this Court may dismiss redundant claims. *Center for Bio-Ethical Reform, Inc.*, 533 F.3d at 799. For all these reasons, the battery and false imprisonment claims should be dismissed as to Chief Potts.

3. Plaintiff failed to plead plausible claims of assault and false imprisonment/false arrest against the City.

Both assault and battery and false imprisonment/false arrest are intentional torts. The Nevada Supreme Court has held that "[w]here . . . the willful tort is committed in the course of the very task assigned to the employee, liability may be extended to the employer." *Prell Hotel Corp. v. Antonacci*, 86 Nev. 390, 391, 469 P.2d 399, 400 (1970). The Legislature expanded upon that principle in NRS 41.745. There, it provides that to hold an employer liable for the intentional act of an employee, a plaintiff must not only establish that the act was committed within the scope of employment, but also that the conduct was "reasonably foreseeable under the facts and

circumstances of the case considering the nature and scope of his or her employment." NRS 41.745(1)(c). Whether an act is reasonably foreseeable depends on whether "a person of ordinary intelligence and prudence could have reasonably anticipated the conduct and the probability of injury." *Wood v. Safeway, Inc.*, 121 Nev. 724, 739, 121 P.3d 1026, 1036 (2005); NRS 41.745(1).

Putting aside the fact that the underlying stop was constitutionally valid, Myers also failed to plead any facts establishing a plausible claim of battery against the City. Plaintiff makes the conclusory claim that the City is liable simply because it is the "principal or employer of BROOKS, GUZMAN and POTTS at the time." ECF No. 40 at ¶ 91. He provides no facts establishing that the Defendant officers' conduct was within the scope of their employment with the City. Plaintiff also failed to allege any facts establishing that the alleged conduct was reasonably foreseeable by the City. Likewise, Myers articulated no facts to establish a false imprisonment/false arrest charge against the City. Myers failed to set forth facts establishing that that the Defendant officers' conduct was within the scope of their employment or that it was reasonably foreseeable. Thus, Myers' battery and false imprisonment claims should be dismissed as to the City.

4. Discretionary immunity also precludes Myers' battery and false imprisonment/false arrest claims.

Nevada's discretionary immunity statute, NRS 41.032, "precludes claims against state officers based on acts or omissions relating to a 'discretionary function,' even if that discretion is abused." *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1133 (9th Cir. 2017). Under Nevada law, state actors are entitled to discretionary-function immunity if their decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168 (9th Cir. 2014) (quoting *Martinez v. Maruszczak,* 123 Nev. 433, 436-37, 168 P.3d 720 (2007)). "But decisions made in bad faith, such as 'abusive' conduct resulting from 'hostility' or 'willful or deliberate disregard' for a citizen's rights, aren't protected under the immunity statute even if they arise out of a discretionary function." *Jones*, 873 F.3d at 1133.

. . . .

In his Amended Complaint, Myers only cites to the conduct of the Defendant officers in "physically contacting him," and detaining and arresting him as the underlying basis for his battery and false arrest claims. ECF No. 40 at ¶¶ 30, 88, 97-98. Plaintiff pleads that the Defendant officers were acting within their official employment as marshals for the City when they engaged in the purported conduct at issue. *Id.* at ¶¶ 10, 91, 103.  Myers concedes that the Defendant officers stopped him for the "moving traffic violation of speeding and following too closely." *Id.* at ¶ 27. Myers does not make any allegation that the Defendant officers pulled him over or arrested him in bad faith; instead, Myers' sole position is that the Defendant officers did not have the jurisdiction to pull him over in the first place, search his vehicle or arrest him. *Id.* at ¶ 30.

Taking Myers' allegations as true for the purpose of this motion, the marshals' actions fell well within the discretionary function as it has been applied by Nevada's courts. *See Sandoval*, 756 F.3d at 1169 (applying discretionary immunity to most police actions during an interaction with three suspects); *see also Gonzalez v. Las Vegas Metro. Police Dep't,* 129 Nev. 1118, 2013 WL 7158250 (2013) (applying discretionary immunity to police actions in detaining and arresting a suspect). Specifically, the decision to stop Myers for speeding and tailgating, and arrest him, are precisely the types of decisions subject to discretionary immunity based on individual judgment and public policy considerations including public safety. *See Bruins v. Osborn*, No. 2:15-cv-00324-APG-VCF, 2016 WL 697109, at *9 (D. Nev. Feb. 19, 2016) (decisions by officer to pull over plaintiff's car and ultimately arrest plaintiff is entitled to discretionary immunity "because these decisions are discretionary and based on policy considerations of enforcing the criminal laws."); *Napouk v. Las Vegas Metro. Police Dep't,* 123 F.4th 906, 924 (9th Cir. 2024) (plaintiff could not maintain battery claim against officer where discretionary immunity applied).

Again, Myers does not allege that the conduct of the Defendant officers, or anyone from the City for that matter, was done in bad faith. While there are limitations on discretionary-act immunity for actions taken in bad faith and acts taken in violation of the Constitution, Myers has not alleged any facts to support such a finding here. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007) ("where an officer's actions are 'attributable to bad faith, immunity does not apply whether an act is discretionary or not'").

Because the Defendant officers are entitled to discretionary immunity as to Myers' battery and false imprisonment/false arrest claims, as a matter of law, the City cannot be held liable for their lawful actions. Moreover, because Myers does not allege that Potts participated in the actual conduct underlying these claims as established above, Myers has failed to sufficiently allege these claims as to Potts. Thus, Myers cannot maintain claims for battery or false imprisonment/false arrest as to any of the defendants; therefore, these claims are ripe for dismissal.

Ultimately, Myers' state tort claims should be dismissed in their entirety because he failed to articulate facts establishing that the Defendant officers' actions were unlawful. Moreover, the Amended Complaint is devoid of any facts establishing liability for Chief Potts as a non-participant who did not even directly supervise the Defendant officers. Finally, the Complaint fails to articulate sufficient facts making the City liable. Thus, Myers' battery and false imprisonment/false arrest claims should be dismissed.

### I. Myers cannot recover punitive damages against the City.

Myers seeks an award of punitive damages against the City for his state tort claims of Assault and Battery and False Imprisonment/False Arrest. ECF No. 40 at ¶¶ 93, 105. Myers also generally seeks punitive damages from the City in his Prayer for Relief. *Id*. at Prayer for Relief, ¶ 2. However, punitive damages are not available against the City because municipalities are immune from punitive damages for claims brought under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271 (1981). Thus, Plaintiff cannot recover punitive damages against the City for its *Monell* claims. Further, as a political subdivision of the State of Nevada, the City is exempt from punitive damages for state tort claims. NRS 41.035(1); *Eggleston v. Stuart*, 137 Nev. 506, 514, 495 P.3d 482, 491 (2021). Thus, Myers cannot recover punitive damages against the City for his battery and false imprisonment/false arrest claims. Myers' claims for punitive damages against the City should be dismissed as a matter of law.

### J. Dismissal of Myers' individual claims will preclude class allegations.

In addition to his individual claims, Myers' Second Amended Complaint includes allegations on behalf of a putative class of others similarly situated. ECF No. 40 at ¶¶ 32-41. However, if this Court is inclined to dismiss Myers' individual claims, as the Defendants urge the

Court to do, this Court should find that the entire case, including class allegations, should be dismissed as well because Myers will lack standing to raise any claims as a class representative, making the pre-certification class claims moot. *See, e.g., Teodoro v. Allstate Fire & Cas. Ins. Co.*, No. 217-cv-02135-APG-VCF, 2018 WL 1786818, at *4 (D. Nev. Apr. 13, 2018) (addressing, and dismissing, class allegations at the motion to dismiss stage); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007) (where a named plaintiff is no longer a viable class representative, the remaining class members are only potentially entitled to relief if the class has been certified, which is not the case here).

## V.   CONCLUSION

Myers' Second Amended Complaint relies on the incorrect assertion that the Defendant officers lacked legal authority to detain and arrest him. However, both Nevada law and U.S. Supreme Court precedent provide the legal authority for the Defendant officers' actions. Thus, Myers cannot plausibly state a claim under the Fourth Amendment or Nevada Constitution, or establish *Monell* liability against the City. Miranda violations are not eligible for civil liability, so that claim also fails as a matter of law. Additionally, Myers cannot state a claim for battery and false imprisonment/false arrest because a requisite element of those claims is that the conduct was unlawful. Thus, the City respectfully requests that this Court grant its Motion to Dismiss.

DATED this 25th day of March, 2026.

JEFFRY M. DOROCAK
City Attorney

By:   /s/ *Nechole Garcia*
NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
Attorneys for CITY DEFENDANTS