**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
**BREEDEN & ASSOCIATES, PLLC**
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DEREK MYERS, on behalf of himself and all others similarly situated,

Plaintiff,

v.

CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; SERGIO GUZMAN, individually; and JASON POTTS, individually,

Defendants.

CASE NO. 2:25-cv-00562-GMN-DJA

**PLAINTIFF MYERS' MOTION FOR CLASS ACTION CERTIFICATION**

Plaintiff DEREK MYERS, on behalf of himself and all others similarly situated, hereby does move the Court to certify this case as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(b)(1) (or alternatively or conjunctively, Rule 23(c)(4)). This motion is based on the accompanying Memorandum of Points and Authorities, the Second Amended -

/ /

/ /

/ /

/ /

/ /

/ /

/ /

Complaint filed on March 13, 2026, the records and pleadings on file in this case, and such further evidence as may be presented at oral argument, if permitted by the Court.

Dated this 20th day of April, 2026.

**BREEDEN & ASSOCIATES, PLLC**

*/s/ Adam J. Breeden*
_____

**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION</u>

### I.    INTRODUCTION

Plaintiff Derek Myers respectfully moves for an order certifying this case as a class action under Rule 23(b)(2) for injunctive relief and Rule 23(b)(3) or, in the alternative, Rule 23(c)(4) for damages, and appointing Plaintiff's counsel, Breeden & Associates, PLLC, as class counsel under Rule 23(g). This Motion is a re-submission of Plaintiff's Motion to Certify Class [ECF No. 24] originally filed on August 18, 2025, which was denied as moot without prejudice with leave to re-file after a *Second Amended Complaint* was filed. See *Order* [ECF No. 43].

This case challenges an ongoing and systemic pattern of alleged Constitutional violations by the City of Las Vegas and its City Marshals, who have been conducting law enforcement activities—including traffic stops, detentions, searches, and arrests—far beyond their limited territorial jurisdiction permitted by Nevada Revised Statutes § 280.125(3) and Las Vegas Municipal Code § 2.28.080. Specifically, these officials have operated on highways and other properties not owned, leased, or controlled by the City of Las Vegas, such as I-11/US Route 95, where Plaintiff Myers was unlawfully stopped and arrested without legal authority on January 9, 2025. Indeed, arrests have been found in the City of Henderson and the City of North Las Vegas, exemplifying the out-of-control law enforcement activities of the Las Vegas City Marshals.

The injunctive relief class seeks to stop the City's unauthorized law enforcement activities across Clark County, which subject unsuspecting motorists and citizens to unconstitutional seizures under color of law. The class includes all individuals who have been, are currently, or may in the future be stopped or detained by marshals acting beyond their legal territorial limits. The legal and factual questions at issue—including the interpretation of the marshals' jurisdictional boundaries under NRS § 280.125 and the City's continued policy or practice of exceeding those limits—are common to all class members and capable of resolution through uniform injunctive relief.

The damages class claims fall under a unified theory: that class members were deprived of their Fourth and Fourteenth Amendment rights, as well as rights under the Nevada Constitution, by City Marshals acting without jurisdiction. These violations resulted in custodial arrests, searches, prolonged detentions, and emotional and economic harm. As the proposed class definition in the Notice of Motion explains, the class includes all persons detained or arrested by City Marshals beyond their lawful territorial scope during the two years preceding the filing of the Complaint.

For evidentiary support, Plaintiff relies on the First Amended Complaint, the Declaration of Adam J. Breeden, Esq., contemporaneous legislative history of AB 164 (1995), and the City's own representations to the Nevada Supreme Court, which concede that its Department of Public Safety is a limited jurisdiction agency with enforcement authority restricted to City property. In addition, Plaintiff will submit evidence of repeated unlawful stops by City Marshals documented through court filings and public records, demonstrating that the practice at issue is not isolated or accidental but rather a sustained course of conduct.

The narrow and well-defined class at issue in this case presents none of the chaotic, fact-intensive variation found in protest-based civil rights litigation like *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249 (9th Cir. 2024). Here, each class member shares the same essential injury—being subjected to law enforcement authority by actors who lacked jurisdiction to act at all. Unlike in *BLM LA*, where classes spanned multiple dates, locations, legal theories, and enforcement contexts, this case involves a singular legal defect applied uniformly across all class members: the territorial overreach of the City of Las Vegas Marshals. Accordingly, Plaintiff respectfully submits that this matter is well-suited for class treatment under Rules 23(b)(2) and

23(b)(3), and that certification will serve the interests of judicial economy, consistency of result, and the protection of constitutional rights for the class as a whole.

## II.    PROPOSED CLASSES

### 1.  Injunctive Relief Class (Rule 23(b)(2))

The proposed **Injunctive Relief Class** is defined as:

All persons who have in the past been detained, are currently at risk of being detained, or are in the future detained, searched, arrested, or cited by City of Las Vegas Marshals outside of areas "owned, leased or otherwise under the control" of the City of Las Vegas, in violation of NRS § 280.125 and Las Vegas Municipal Code § 2.28.080.

This class seeks to enjoin the City of Las Vegas and its agents from conducting law enforcement operations beyond their legally defined jurisdiction, including traffic stops, searches, arrests, and citations on highways or other property not under the City's control. The class includes both past and potential future victims of this jurisdictional overreach, consistent with the permissibility of prospective relief classes. *See Yaffe v. Powers*, 454 F.2d 1362 (1st Cir. 1972); *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776 (9th Cir. 1986); *Nozzi v. Hous. Auth. of City of L.A.*, 2016 WL 2647677 (C.D. Cal. May 6, 2016).

### 2.  Damages Class (Rule 23(b)(3))

Plaintiff also seeks certification of a Damages Class under Rule 23(b)(3), defined as:

All persons who, within two years prior to the filing of the complaint, were detained, searched, arrested, or punished by fine or incarceration due to law enforcement actions undertaken by City of Las Vegas Marshals outside the territorial jurisdictional limits of real property "owned, leased or otherwise under the control" of the City of Las Vegas, in violation of NRS § 280.125 and Las Vegas Municipal Code § 2.28.080.

The proposed Class Representative for this class is Plaintiff Derek Myers, who was stopped and arrested by City Marshals Jason Brooks and Sergio Guzman on January 9, 2025, while driving on I-11/US Route 95—an area clearly outside of the marshals' territorial jurisdiction. Proposed Class Counsel is Adam J. Breeden, Esq. of Breeden & Associates, PLLC.

## III.    GENERAL CLASS CONSIDERATIONS

Civil rights cases concerning the rights of many members of the public are particularly

appropriate for class action certification under Fed. R. Civ. P. 23, because such cases often involve systemic issues that affect a broad group of individuals. The Ninth Circuit has plainly stated that "[a]lthough we have certified many different kinds of Rule 23(b)(2) classes, the primary role of this provision has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) *citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." (citations omitted)); *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("Rule 23(b)(2) was adopted in order to permit the prosecution of civil rights actions."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994) ("The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights." (citations omitted)). As Wright and Miller have explained:

> [S]ubdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that civil-rights suits for injunctive or declaratory relief can be brought as class actions…[T]he class suit is a uniquely appropriate procedure in civil-rights cases, which generally involve an allegation of discrimination against a group as well as the violation of rights of particular individuals. By their very nature, civil-rights class actions almost invariably involve a plaintiff class, although they may also be brought against a defendant class…

Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1776 (3d ed.). Class certification in civil rights cases affecting the public are not only permitted, they are preferred and a primary reason to the amendments to Fed. R. Civ. P. 23.

## A. PLAINTIFF MEETS THE DEFINITENESS REQUIREMENT

The proposed class definitions in this case satisfy the definiteness requirement of Rule 23. Both the Jurisdictional Enforcement Class (for damages) and the Injunctive Relief Class are defined using objective criteria—namely, whether an individual was subjected to law enforcement activity (such as a stop, search, or arrest) by City of Las Vegas Marshals acting outside their lawful territorial jurisdiction as defined by NRS § 280.125 and LVMC § 2.28.080. This definition does not require

5

any inquiry into the merits of individual claims or the nature of the relief sought, and it is not vague or indeterminate.

Membership in the class can be determined through available public records, such as citations, arrest logs, incident reports, and testimony—and through civil discovery, particularly given that the stops took place in areas the City of Las Vegas does not own, lease, or control, like Interstate 11/US Route 95, where Plaintiff Derek Myers was unlawfully detained. To the extent necessary, class members can also self-identify based on their personal experiences of unlawful detention by city marshals. Courts in this Circuit have held that self-identifying classes are permissible and do not render a class definition indefinite. See *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125–33 (9th Cir. 2017); *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017).

The Ninth Circuit has explicitly rejected any administrative feasibility requirement for class certification. Thus, Defendants cannot defeat certification by speculating about potential recordkeeping burdens or alleging difficulty in identifying every individual subjected to unlawful enforcement activity.

### B.  PRESUMPTIONS APPLICABLE TO CERTIFICATION

When evaluating a motion for class certification, the Court must apply the "rigorous analysis" required by *Wal-Mart Stores, Inc. v. Dukes*, which includes probing behind the pleadings where appropriate. However, this analysis is not a merits determination. *Wal-Mart Stores, Inc. v. Dukes* 564 U.S. 338, 352 (2011); see also, *Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, 2012 WL 6591610, at *4 (S.D. Cal. Dec. 18, 2012)*.

Class certification is an inherently procedural question; therefore, any doubt should be resolved in favor of allowing the class to proceed, especially where the definitions are clear and the Court retains the ability to revisit or modify them later. See *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("if there is to be an error made, let it be in favor and not against the maintenance of the class"). If the Court finds any proposed definition overly broad or in need of refinement, it is empowered—and indeed encouraged—by Ninth Circuit precedent to modify the definition rather than deny certification outright. See *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 633–34 (9th

Cir. 2020); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (instructing courts to tailor class definitions to avoid predominance issues); see also *Newberg on Class Actions* § 7:27 (5th ed.).

Plaintiff's proposed class definitions are grounded in statutory language, territorial maps, and agency policies, making them especially conducive to objective and reliable certification. No speculative or shifting standard is required to determine who falls within the class. The uniform legal defect—the City Marshals' enforcement actions outside their lawful jurisdiction—is the glue that binds class members together, making this case particularly well-suited for class treatment.

**IV.   THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(A), AND THE RULE 23(B)(2) AND 23(B)(3) PREDOMINANCE REQUIREMENT**

Federal class actions must meet the prerequisites of Rule 23(a), to wit: *Numerosity:* The class must be so numerous that joinder of all members individually is "impracticable." Rule 23(a)(1); *Commonality:* There must be questions of law or fact common to the class. Rule 23(a)(2); *Typicality*: The claims or defenses of the class representative must be typical of the claims or defenses of the class. Rule 23(a)(3); and *Adequacy of representation:* The person representing the class must be able to fairly and adequately to protect the interests of all members of the class. Rule 23(a)(4). Because Plaintiffs seek certification of both injunctive relief and damages classes, the Rule 23(b)(3) requirement that common issues predominate is addressed below in conjunction with Rule 23(a) commonality.

**A.  Numerosity**

The proposed classes easily satisfy Rule 23(a)(1)'s numerosity requirement. The Jurisdictional Enforcement Class (damages) and Injunctive Relief Class likely include at least several hundred, if not over one thousand, individuals who, within two years of the filing of the Complaint, were detained, searched, arrested, or cited by City of Las Vegas Marshals outside their lawful jurisdiction, such as on Interstate 11/US Route 95. Below is a graphic prepared using public records which shows known arrests and citations made by City Marshals since January of 2024.

There are many that are plainly outside the marshals' jurisdiction, such as those in North Las Vegas and Henderson, but there are also hundreds that appear to be completely unrelated to any city parks or city buildings.

Given the scope of the unlawful practice alleged—routine enforcement by marshals in areas clearly outside their statutory authority—and the volume of traffic on highways intersecting the Las Vegas area, joinder of all affected individuals is plainly impracticable. *See Newberg on Class Actions* § 3:12 (5th ed.) ("a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone"); *Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (citing cases finding numerosity with fewer than 100 members).

Further, many affected individuals may not be aware that their detention or citation was unlawful or may lack the financial means or legal resources to bring individual suits. This also supports certification. See *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545 (N.D. Cal. 2018) (numerosity satisfied in part because "many class members may not even be aware of their claims").

**B. Typicality**

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976

F.2d 497, 508 (9th Cir. 1992). Claims are typical "if they are reasonably coextensive with those of absent class members," but they need not be "substantially identical." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003), quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Plaintiff Derek Myers' claims are typical of the proposed class. Myers was stopped, searched, and arrested by City of Las Vegas Marshals on a federal highway outside of the City Marshal's territorial jurisdiction, in direct violation of NRS § 280.125(3) and LVMC § 2.28.080. He was subjected to unlawful enforcement activity by marshals who lacked authority to act at that location, detained for approximately 17 hours, and suffered personal, emotional, and financial harm as a result. Indeed, the City is presently criminally prosecuting him over the stop.

His claims are based on the same course of conduct affecting all class members—namely, the City's policy or custom of permitting City Marshals to engage in law enforcement activity beyond the statutory limits of their territorial jurisdiction. Like other class members, Plaintiff Myers was harmed by this ongoing and systemic practice, which is central to the claims for both injunctive relief and damages.

The gravamen of this lawsuit is Defendants' uniform overreach of territorial jurisdiction, rather than the particular facts of any single arrest, making Myers' injuries reasonably coextensive with those of absent class members. Thus, his claims are more than sufficient to satisfy Rule 23(a)(3). *See also Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (typicality satisfied where plaintiffs' claims arose from a policy or practice applied similarly to all class members).

### C. Adequacy of Representation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Courts analyze this requirement by determining whether: (1) the class representative has interests that are aligned with, and not antagonistic to, those of the class; and (2) class counsel is qualified and competent to prosecute the case on behalf of the class. See *Lenvill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Staton*, 327 F.3d 938, 957.

/ / /

/ / /

**1.    The Class Representative's Interests Are Not Antagonistic to the Class.**

Plaintiff Derek Myers shares the same legal and factual interest as all members of the proposed Jurisdictional Enforcement Class and Injunctive Relief Class. Like all class members, Myers was subjected to an unlawful traffic stop, search, and arrest by City of Las Vegas Marshals operating outside the scope of their lawful authority under NRS § 280.125(3) and LVMC § 2.28.080. His injuries, including unlawful detention and constitutional violations, arise from the same citywide pattern and practice challenged in this case.

Mr. Myers has no known conflicts of interest with the proposed class and fully understands the responsibilities of serving as a class representative. He is committed to representing the interests of the class and has demonstrated a willingness to prosecute this case on behalf of all similarly situated individuals.

**2.    Class Counsel is Qualified and Competent.**

Plaintiff is represented by Adam J. Breeden, Esq. of Breeden & Associates, PLLC, a Nevada-based law firm with extensive experience litigating civil rights, police misconduct, and constitutional tort matters. Mr. Breeden has successfully represented plaintiffs in complex litigation in both state and federal courts and has demonstrated a deep understanding of civil rights enforcement and municipal liability under *Monell*. See, *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Mr. Breeden's qualifications include twenty one years of active civil litigation practice in Nevada, and his firm is well-positioned to prosecute this case efficiently through discovery, dispositive motions, trial, and any necessary appeals. Mr. Breeden operates a civil rights practice and regularly litigates in federal court. He graduated summa cum laude from The Ohio State University, studied legal theory abroad at Oxford University, England, attended a top tier law school where he was awarded a full scholarship and externed for a US District Court Judge.  He has won awards for my commitment to pro bono (free) legal services to our Community (Family Law, Veterans and Homeless assistance), served on the State Bar of Nevada's Fee Dispute Committee, authored a published law review article on the Fourth Amendment and has been a courtroom litigator his entire career. He has presented oral argument before the Nevada Supreme Court as well,

10

including more than on reported decision.  Overall, he has been licensed to practice law in four different states and eleven different federal courts and handled matters in Nevada's First, Second, Third, Fifth, Sixth and Eighth Judicial Courts as well as the Nevada Court of Appeals, Nevada Supreme Court, Nevada District Attorney Support Division, Nevada Department of Motor Vehicles and Nevada Worker's Compensation system. Plaintiff's counsel has already demonstrated competence by conducting the statutory and legislative analysis relevant to the City Marshals' jurisdiction, investigating the pattern of illegal stops, and drafting the First Amended Complaint and this class certification motion. Together, Plaintiff and his counsel meet the requirements of Rule 23(a)(4) and are adequate to represent the interests of the class.

### D.  Common Questions Exist and Predominate.

Rule 23(a)(2) requires the existence of questions of law or fact common to the class, while Rule 23(b)(3)—applicable to the proposed damages class—further requires that these common questions predominate over any individual ones. In contrast, Rule 23(b)(2), which governs the injunctive relief class, only requires that the defendant has acted or refused to act on grounds that apply generally to the class.

As the Ninth Circuit has made clear, it is not necessary that all factual or legal questions be common to the class to satisfy Rule 23(a)(2). *See Hanlon*, 150 F.3d 1011, 1019. Shared legal issues arising from a common nucleus of facts or even divergent factual predicates supporting the same legal claim are sufficient. *See id*. Rule 23(a)(2) is satisfied when "examination of all the class members' claims will produce a common answer to the crucial question." *Wal-Mart Stores, Inc.*, 564 U.S. 338, 352. Only to the extent necessary to determine the applicability of Rule 23 do courts examine underlying merits. *See id*. at 351–52; *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

The principal questions at issue here are whether the City of Las Vegas Marshals exceeded their territorial jurisdictional authority under Nevada Revised Statutes § 280.125(3) and Las Vegas Municipal Code § 2.28.080; whether the City of Las Vegas has an official policy, practice, or custom of permitting its city marshals to conduct law enforcement activity outside their statutory territorial jurisdiction; whether that conduct violates the Fourth and Fourteenth Amendments to the United

States Constitution and Article I, Sections 8 and 18 of the Nevada Constitution; whether the Defendants' conduct was the proximate cause of injury to Plaintiff and class members; and whether the City of Las Vegas failed to train or supervise its marshals adequately with deliberate indifference to the rights of those affected.

These questions apply equally to all members of the class and are subject to resolution through common evidence, including jurisdictional statutes, legislative history, public maps identifying property under the City's control, body-worn camera footage, and written and oral statements made by City officials acknowledging the marshals' limited enforcement authority. Each class member was subjected to enforcement action in a location—such as Interstate 11/US Route 95—where city marshals have no lawful authority to act.

Rule 23(b)(3) predominance is met where common questions "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:49 (5th ed. 2012)). That standard is satisfied here. Although individual class members may have experienced slightly different facts—such as the length of detention, the circumstances of their detention or the subjective nature of emotional distress—all claims turn on the legal question of whether the City of Las Vegas Marshals acted without legal territorial jurisdiction and whether the City is liable for such systemic violations under *Monell*.

The predominant issue—the territorial illegality of law enforcement actions by City Marshals—is dispositive for liability and does not depend on individualized inquiries. Indeed, the violation itself stems not from discretionary officer behavior but from a structural and recurring municipal practice carried out in direct contradiction of applicable state law. The Marshals' conduct was neither isolated nor exceptional; rather, it was a city-sanctioned pattern that is alleged to have affected hundreds or even thousands of people in the same way.

This uniformity supports a finding of municipal liability based on custom and practice. As the Fifth Circuit explained in *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985), "repeated acts of abuse on a single night, by several officers in several episodes, tend[] to prove a disposition to disregard human life and safety so prevalent as to be police policy or custom." The

Ninth Circuit has repeatedly cited *Grandstaff* with approval. *See McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986); *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991*); Henry v. Cty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997).

In addition to widespread and repeated misconduct, deliberate indifference may be established through the City's failure to train or supervise its marshals regarding jurisdictional limitations. The need for such training was not only obvious but statutory. Failure to provide it supports *Monell* liability. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). As in *Healey v. Louisville Metro Gov't*, where the court certified an over-detention class based on both policy failures and an egregious failure to train, the allegations here demonstrate a deliberate indifference to clear statutory mandates. No. 3:17-cv-00071-RGJ-RSE, 2021 WL 149859, at *24–25 (W.D. Ky. Jan. 15, 2021).

Finally, the allegations and supporting evidence establish *Monell* liability through ratification. The City of Las Vegas delegated final policymaking authority over its Department of Public Safety to Chief Jason Potts. As pleaded, Chief Potts supervised the marshal unit and permitted it to repeatedly engage in enforcement outside of its jurisdiction despite clear statutory and constitutional limits. Ratification occurs where a final policymaker knowingly approves unconstitutional conduct. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Larez*, 946 F.2d at 646–47. Failure to discipline or intervene in response to known constitutional violations, particularly where they are systemic and ongoing, is sufficient to support *Monell* liability. *See Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001); *Fuller v. City of Oakland*, 47 F.3d 1522, 1535 (9th Cir. 1995); *McRorie*, 795 F.2d at 784.

Courts routinely certify both injunctive and damages classes in § 1983 cases challenging mass violations of constitutional rights under policies or customs of enforcement. *See*, e.g., *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles* (MIWON), 246 F.R.D. 621, 629–30 (C.D. Cal. 2007); *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 491 (C.D. Cal. 2013); *Chua v. City of Los Angeles*, No. CV 14-01433-DSF (JEMx), 2017 WL 10776036, at *13 (C.D. Cal. May 25, 2017). Accordingly, whether the City of Las Vegas Marshals acted unlawfully outside of their jurisdiction and whether the City may be held liable under *Monell* based on custom, failure to train,

13

or ratification are all central issues that predominate in this litigation. Because those questions can be resolved class-wide, and because they will drive the outcome of the case, certification under Rule 23(b)(3) is appropriate.

### E.  Individualized Damages Do Not Defeat Predominance

The presence of individualized damages calculations does not preclude class certification under Rule 23(b)(3) where, as here, liability depends on common questions of law and fact. So long as Plaintiffs' "damages stemmed from the defendant's actions that created the legal liability," certification remains proper. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (distinguishing *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013)). The Ninth Circuit has consistently affirmed that individual damages do not defeat predominance. See *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015); *Jimenez*, 765 F.3d 1161, 1168; *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154–55 (9th Cir. 2016).

Here, the core liability question is whether the City of Las Vegas Marshals acted outside their territorial jurisdiction as defined by Nev. Rev. Stat. § 280.125(3) and Las Vegas Mun. Code § 2.28.080, and whether the City of Las Vegas is liable under *Monell,* for maintaining a policy, custom, or practice of permitting such unlawful enforcement activity. If this central issue is resolved in favor of the class, the same finding will apply to all class members.

While the precise emotional, financial, or reputational harm suffered by individual class members may differ, each class member was subjected to the same kind of unlawful government conduct: stop, search, arrest, and/or detention by marshals who lacked jurisdiction to act. These injuries arose directly from the same unlawful course of conduct and thus flow from a common source of liability. Whether a particular plaintiff was detained for 3 hours or 17 hours, or experienced greater psychological harm, does not undermine the predominance of the shared liability questions. Accordingly, any individualized issues related solely to damages are ancillary to the dominant, class-wide issues that will determine Defendants' liability. Rule 23(b)(3) certification remains appropriate.

### F.  Liability is Appropriately Certified Under Rule 23(c)(4)

Federal Rule of Civil Procedure 23(c)(4) provides that "when appropriate, an action may be

brought or maintained as a class action with respect to particular issues." Courts routinely certify issue classes under this provision where class treatment is proper as to liability, even if damages or other elements require individualized proceedings. *See Tyson Foods, Inc.*, 577 U.S. 442, 453 (Rule 23(b)(3) certification is proper so long as "one or more of the central issues in the action are common to the class and can be said to predominate" (internal quotation marks omitted)); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (authorizing district courts to certify only the common issues under Rule 23(c)(4), even where certification of the entire action would be improper); *see also* Charles Alan Wright et al., *Federal Practice and Procedure* § 1778 (3d ed.) ("Certification of one or more issues is proper under Rule 23(c)(4) even though important matters will have to be tried separately.").

This case presents precisely the type of situation where liability may appropriately be certified on a class-wide basis under Rule 23(c)(4), regardless of whether individualized damages will later be addressed through separate proceedings. The legal question of whether the City of Las Vegas Marshals repeatedly and systematically conducted law enforcement activities outside their lawful territorial jurisdiction under Nev. Rev. Stat. § 280.125(3) and Las Vegas Mun. Code § 2.28.080 is a central, class-wide issue. Whether the City is liable under *Monell*, based on its policy, practice, failure to train, or ratification of such conduct, is likewise a question common to the entire class. 436 U.S. 658.

Class-wide adjudication of these liability issues will resolve the core constitutional and statutory questions for all class members in a single proceeding, streamlining the litigation and promoting judicial efficiency. Moreover, even if the Court determines that individualized damages calculations would preclude certification of the full action under Rule 23(b)(3), it should still certify a class for liability-only purposes under Rule 23(c)(4). *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 640 (N.D. Cal. 2015) (certifying class for common liability issues while leaving damages for individualized determinations); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006) (Rule 23(c)(4) certification appropriate "when common questions predominate only as to 'particular issues'"); *Amador v. Baca*, No. CV 10-01649-SVW (JEMx), 2014 WL 10044904, at *9 (C.D. Cal. Dec. 18, 2014) (observing that the Ninth Circuit "has energetically

endorsed the concept" of issue certification). This case presents common issues of law and fact appropriate for resolution on a class-wide basis under Rule 23(c)(4), including the central question of municipal liability for systemic constitutional violations. Certifying these questions for class-wide adjudication will materially advance the litigation and is fully consistent with Rule 23 and applicable Ninth Circuit precedent.

## V.    THE CASE MEETS THE OTHER REQUIREMENTS OF RULE 23(B).

### A.  Superiority And Manageability Are Met

Rule 23(b)(3) requires that class adjudication be superior to other available methods for fairly and efficiently adjudicating the controversy. Relevant considerations include the interest of individual members in controlling the litigation, the extent and nature of any already pending litigation concerning the controversy, and the likely difficulties of managing a class action.

In Plaintiff's case, these factors weigh strongly in favor of class certification. The vast majority of proposed class members were subject to brief but constitutionally significant law enforcement actions by City of Las Vegas Marshals—stops, searches, detentions, and arrests—carried out outside of the marshals' territorial jurisdiction in violation of Nev. Rev. Stat. § 280.125(3) and Las Vegas Mun. Code § 2.28.080. While Plaintiff Myers endured a prolonged detention, most class members are expected to have suffered harms that, though real and legally actionable, are likely too modest to justify the expense of individual litigation. This is precisely the type of case for which class treatment is favored. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (noting that a core policy of Rule 23(b)(3) is to aggregate claims too small to litigate individually). Very few attorneys would accept an individual claim arising from a short unlawful stop or brief pre-charge detention when the potential damages are limited to that single plaintiff alone. Yet, these claims raise vital constitutional questions of importance in the aggregate. The class action mechanism ensures that such claims may be adjudicated in a meaningful way, and individuals who do not wish to participate may opt out.

There are no known overlapping class actions, and only a handful of individual cases, if any, raising the same jurisdictional defect alleged here. The claims are readily manageable. The City's legal authority is defined by statute, and its liability under *Monell*, turns on evidence of custom,

policy, ratification, and failure to train—all of which are susceptible to common proof. *See* Section III.D, supra. Courts have certified comparable Section 1983 protest and detention cases. *See*, e.g., *MIWON*, 246 F.R.D. 621, 636. To the extent that individualized damages must be determined post-liability, that can be achieved through bifurcation or other pragmatic case management methods. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows … imaginative solutions," such as bifurcation, use of special masters, or decertification for damages-phase proceedings).

### B. Class Wide General And Statutory Damages Are Determinable And, In Any Event, The Issue Can Be Deferred

Class wide general damages are appropriate here. Every class member detained, arrested, or searched by City Marshals outside the statutory jurisdiction was subjected to an unlawful deprivation of liberty. Courts have long held that where a constitutional violation occurs and there is "some injury to the plaintiff," the plaintiff is entitled to compensatory damages as a matter of law. *Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. 2004); see also *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (general damages for Fourth Amendment violations are available "even without proof of injury"). Moreover, even if members of the class lack special damages all successful civil rights plaintiffs are entitled to at least nominal damages. *See Schneider v. County of San Diego*, 285 F.3d 784, 795 (9th Cir. 2002) (Nominal damages are "a purely symbolic vindication of [a] constitutional right," and are awarded regardless of whether "the constitutional violation causes any actual damage.") (quotation marks and citation omitted).

For example, in similar protest-related mass detention cases, courts have awarded general or presumed damages for loss of liberty and dignitary harm. *See*, e.g., *Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015); *In re Nassau Cnty. Strip Search Cases*, 742 F. Supp. 2d 331, 331; *Augustin v. Jablonsky*, 819 F. Supp. 2d 153, 156 (E.D.N.Y. 2011); *Barnes v. Dist. of Columbia*, 278 F.R.D. 14, 21 (D.D.C. 2011); *Aichele*, 314 F.R.D. 478, 496; *Dellums v. Powell*, 566 F.2d 167, 175–77 (D.C. Cir. 1977). Here, Plaintiff seeks general damages for class members who were unlawfully detained or arrested outside the marshals' jurisdiction. To the extent that individual damages may be required for particularly serious or extended deprivations, the Court may defer that determination until after liability is adjudicated. *See Carnegie*, 376 F.3d at 661.

17

### C.  Rule 23(B)(2)'s Requirements Are Also Met

Certification under Rule 23(b)(2) is independently appropriate. That provision allows for class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Here, the City of Las Vegas and its Department of Public Safety have adopted and implemented a policy or practice of permitting marshals to engage in traffic and criminal enforcement activity outside the territorial limits authorized by statute. This conduct applies to all proposed class members equally.

An injunction or declaratory judgment clarifying the limits of the marshals' legal authority and prohibiting unlawful enforcement activity outside those bounds is necessary to redress the claims of the entire class. *See Wal-Mart Stores, Inc.*, 564 U.S. 338, 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.") (internal quotations omitted).

### D.  Alternatively, Rule 23(B)(1)'s Requirements Are Met.

Certification may also be appropriate under Rule 23(b)(1), which permits certification when prosecuting separate actions would risk "inconsistent or varying adjudications with respect to individual class members" or would "substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). That risk is present here: adjudications in favor of or against certain individuals may produce conflicting conclusions regarding the legality of the City Marshals' jurisdiction and enforcement authority. Courts have certified protest-based civil rights cases under Rule 23(b)(1) in similar circumstances. *See Chang v. United States*, 217 F.R.D. 262, 273 n.5 (D.D.C. 2003) (certifying under Rule 23(b)(1) based on risk of inconsistent results and impaired future claims).

### VI.    CONCLUSION

As explained herein, this civil rights case is prime for a class action. The case meets the numerosity, commonality, typicality and adequacy of representation class action requirements. Indeed, this case is particularly suited for class action treatment given that a single issue of law predominates and there are many people who may have had their civil rights violated but

18

individually would lack resources to bring claims. For the reasons stated above, the Court should certify the proposed class, and approve the proposed class representatives and class counsel.

Dated this 20th day of April, 2026.

BREEDEN & ASSOCIATES, PLLC

/s/ Adam J. Breeden

ADAM J. BREEDEN, ESQ.
Nevada Bar No. 008768
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of April, 2026, I served a copy of the foregoing legal document **PLAINTIFF MYERS' MOTION FOR CLASS ACTION CERTIFICATION** via the method indicated below:

| | |
|---|---|
| X | Through the Court's ECF/CM system on all registered users |
| | Pursuant to FRCP 5, by placing a copy in the US mail, postage pre-paid to the following counsel of record or parties in proper person: <br><br> NECHOLE GARCIA, ESQ. <br> PAUL MATA, ESQ <br> 495 S. Main Street, Sixth Floor <br> Las Vegas, NV 89101 <br> *Attorneys for Defendants* |
| | Via receipt of copy (proof of service to follow) |

An Attorney or Employee of the following firm:

*/s/ Kirsten Brown*
_____

**BREEDEN & ASSOCIATES, PLLC**