**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
**BREEDEN & ASSOCIATES, PLLC**
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DEREK MYERS, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; SERGIO GUZMAN, individually; and JASON POTTS, individually, <br><br> Defendants. | CASE NO. 2:25-cv-00562-GMN-DJA <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Derek Myers, individually and on behalf of all others similarly situated, by and through his counsel, Adam J. Breeden, Esq. of Breeden & Associates, PLLC, submits this opposition to *Defendants' Motion to Dismiss* (ECF No. 42) the *Second Amended Complaint* (ECF No. 40) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the *Motion to Dismiss* should be denied.

## I. INTRODUCTION

Plaintiff Myers has filed a putative class action complaint based on a simple premise, i.e., that the City of Las Vegas marshals are routinely and knowingly conducting law enforcement outside the territorial scope of their limited jurisdiction. In response, the Defendants raise several arguments and immunities which should be rejected by the Court.

## II.    LEGAL STANDARD

A motion filed under Fed. R. Civ. P. 12(b)(6) tests whether a complaint states a plausible

claim for relief. *Iqbal*, 556 U.S. at 678. The Court must accept all well-pled factual allegations as true, ignoring Defendants' self-serving legal conclusions. *Id*. at 678-79. Dismissal is warranted only if the complaint fails to allege facts that, if true, entitle Plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III.    LAW AND ARGUMENT

Thus far even without formal discovery in this case the Plaintiff has uncovered (1) a prior Nevada Supreme Court brief where the City admitted to the limited territorial jurisdiction of the City marshals, (2) an admission as to limited territorial jurisdiction from the General Counsel of the marshal's union, and (3) clear remarks in legislative history as to limited territorial jurisdiction, and an admission by the Chief during an interview. After the filing of this Complaint, the City Marshals have gone into full panic mode. On information and belief, the City Marshals (4) quickly but unsuccessfully tried to get their jurisdiction increased by statute in a rushed bill in the Nevada legislature that was defeated, Nev. SB 449 (2025), and (5) tried to get deputized by federal law enforcement which was also rejected. Plaintiff has also (6) located at least two traffic stops conducted by the *Las Vegas* City Marshals in the *city of Henderson*, Nevada, and (7) the American Civil Liberties Union (ACLU) of Nevada has filed another lawsuit (now recently settled by the City of Las Vegas) in this District raising nearly identical claims, *Covington v. City of Las Vegas*, 2:25-cv-00737-JAD-BNW. In short, this case raises serious claims as to systemic abuse of law enforcement through the Las Vegas City marshals office and should not be dismissed.

### A.  Plaintiff Plausibly Alleges That Defendants Defied Nevada's Clear Jurisdictional Limits.

Defendants' assertion that City marshals had lawful authority to stop and arrest Plaintiff on I-11/US Route 95 is not only incorrect—it is a direct affront to the limits established under Nevada law. The Second Amended Complaint ("FAC") alleges that this highway is not owned, leased, or otherwise under the control of the City of Las Vegas, which is dispositive. Under Nevada law, the authority of City marshals is explicitly limited to certain territory. NRS § 280.125(3)(b) provides that the jurisdiction of City marshals is limited to:

> "The enforcement of state laws and city and county ordinances ***on real property owned, leased or otherwise under the control of the participating political***

*subdivision.*" (emphasis added)

This limitation is mirrored in the Las Vegas Municipal Code (essentially the enabling ordinance for the City Marshals), which likewise states:

> "The authority and jurisdiction of the City Marshal is limited to: … [t]he enforcement of State laws and City and County ordinances *on real property owned, leased or otherwise under the control of the City of Las Vegas*." (emphasis added)

Defendants' extraterritorial traffic enforcement on a U.S. highway far outside city property cannot be squared with either source of legal authority. The statute's text is plain. City Marshals are a limited jurisdiction agency whose duties are necessarily limited to the protection of City property, for example, patrol of City parks, security at City buildings, and staffing of the City jail. Faced with these clear territorial limits, the Defendants instead resort to NRS § 171.124, a general statute that permits any "peace officer" to arrest without a warrant for an offense committed in the officer's presence. However, this is a textbook example of a general provision that cannot override a more specific, conflicting statute. As the Nevada Supreme Court has held: "When the specific statute conflicts with a general statute, the specific statute will take precedence." *S. Nev.. Homebuilders Ass'n v. Clark Cnty.*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005). NRS § 280.125(3)(b) is such a specific limitation—tailored exclusively to marshals. By contrast, NRS § 171.124 addresses general arrest powers applicable to all peace officers. However, when the City Marshals are involved, the specific territorial jurisdictional limit must control.

Defendants also invoke NRS § 171.17751, which authorizes certain officers to prepare and serve citations. But this statute only governs *how* citations may be issued—not *where* they may be issued. It does not displace the territorial boundary set forth in NRS § 280.125(3)(b). Accepting Defendants' interpretation would nullify the statute's jurisdictional language and render it meaningless—a result the courts cannot and should not countenance.

Nor can Defendants circumvent these limits by claiming that marshals are "Category I" peace officers under NRS § 289.460. That classification governs *training and certification* standards—not territorial jurisdiction of marshals. Nothing in NRS Chapter 289 confers territorial authority to any officer; instead, that is left to the domain of Chapter 280. Indeed, NRS § 289.150(2)

merely confirms that City Marshals are among those who *may* be vested with peace officer powers. It does not grant those powers unconditionally or define their territorial reach at all. The suggestion that Category I (training) status creates statewide (territorial) enforcement authority is not only unsupported—it is fundamentally at odds with the entire framework of the law. If marshals could enforce laws and make arrests anywhere in the state simply by virtue of their training certification, the territorial limits in NRS § 280.125(3)(b) and LVMC § 2.28.080 would be nullities. They are not. The Nevada Legislature explicitly imposed geographic restrictions on marshals to prevent exactly this kind of roving, untethered enforcement authority.

The Court need not adopt Plaintiff's reading of these statutes to reject the Defendants' interpretation—it need only apply the statutes as written. This Court should hold, consistent with governing statutory law and basic interpretive canons, that Defendants' actions were unauthorized and unconstitutional and their *Motion to Dismiss* should be denied.

### B. Plaintiff Has Stated a Plausible Fourth Amendment Claim Because the Arrest Was Conducted Without Lawful Authority and Violated Clearly Established Constitutional Limits.

Defendants argue that Plaintiff's Fourth Amendment claim fails because the arrest was supported by probable cause and conducted in their presence. They rely on *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), and *Virginia v. Moore*, 553 U.S. 164 (2008), to claim that an arrest for a misdemeanor traffic offense—even one conducted in violation of state law—is nonetheless reasonable under the Fourth Amendment. But this misstates Plaintiff's core claim and overlooks binding distinctions in the law, particularly misinterpreting *Virginia v. Moore*.

The issue here is not whether City marshals observed a traffic infraction in their presence. It is whether they had legal authority (jurisdiction) to enforce any law in that location. The territorial jurisdiction of Las Vegas City marshals is expressly limited to "real property owned, leased, or otherwise under the control of the [City]." *See Nev. Rev. Stat.* § 280.125(3)(b).

Defendants' reliance on NRS § 171.124 and generalized peace officer status under NRS § 289.460 is misplaced. Nevada law does not grant marshals statewide authority merely because they are certified as Category I peace officers. *Moore* and *Atwater* do not hold otherwise. In *Moore*, the Supreme Court permitted a warrantless arrest for a misdemeanor committed in the officer's presence

4

even when state law called for a citation, because the officer had jurisdiction to act under state law and was executing a valid arrest under the Fourth Amendment. *See* 553 U.S. at 176. But here, Myers alleges that the City marshals were not lawful actors under Nevada law in this context. They were operating outside their permitted jurisdiction, not merely in violation of a procedural arrest rule. That distinction is controlling.

While it is true that under *Virginia v. Moore*, 553 U.S. 164 (2008), the Fourth Amendment does not encompass *every* state law procedural requirement, it surely bars extraterritorial arrests as unreasonable. The 10th Circuit Court of Appeals has expressly held this. *Ross v. Neff*, 905 F.2d 1349, 1353-1354 (10th Cir. 1990) ("We have implied that an arrest made outside of the arresting officer's jurisdiction violates the Fourth Amendment to the Constitution and is therefore actionable pursuant to 42 U.S.C. § 1983 under the appropriate circumstances…We now so hold expressly."). *See United States v. Henderson*, 906 F.3d 1109, 1117 (9th Cir. 2018) (magistrate judge's issuance of warrant to be executed outside the geographic bounds of the judge's district violated the Fourth Amendment). This is because the Fourth Amendment's "reasonableness" requirement is determined by the common law at the time of the adoption of the Fourth Amendment. The common law of the founding era deemed searches and seizures unreasonable when police officers acted outside the bounds of their jurisdiction. When the Fourth Amendment was adopted, the common law drew clear distinctions based on whether an officer was acting within or outside the scope of his authority. When attempting to execute a warrant, for example, an officer could execute the warrant only "so far as the jurisdiction of the magistrate and himself extends." *Henderson*, 906 F.3d at 1116 (quoting 4 William Blackstone, Commentaries). Furthermore, "[a]t common law, an officer [could not] arrest a person outside of his precinct, even though the offense was committed within it." 2 David S. Garland & Licius P. McGehee, The American and English Encyclopaedia of Law 863 (2d ed. 1896).

Reasonable suspicion or probable cause is not a hall pass for officers to wrongly detain persons despite lacking any jurisdiction. In *Puliafico v. Cnty. of San Bernardino*, the court found that an officer's de facto arrest was unconstitutional where the officer lacked probable cause and statutory authority to detain or arrest the plaintiff. *Puliafico v. Cnty. of San Bernardino*, 42 F. Supp. 2d 1000, 1012–13 (C.D. Cal. 1999) ("Where officers lacked a lawful basis for the initial stop and

continued detention, the arrest was invalid under the Fourth Amendment."). Similarly, in *Ortega-Melendres v. Arpaio*, officers who initiated stops under the guise of enforcing immigration violations without actual enforcement authority were found to have violated the Fourth Amendment, even when they claimed reasonable suspicion. *Ortega-Melendres v. Arpaio,* 836 F. Supp. 2d 959, 979–80 (D. Ariz. 2011) ("Actual knowledge that a person is unlawfully present is not sufficient to form reasonable suspicion that they have violated a criminal statute.").

Defendants next invoke the "exigent circumstances" exception to the warrant requirement. However, that doctrine is extremely limited. It assumes the officers had jurisdiction—which is lacking here—and is applicable only when officers face an imminent threat to life, risk of serious injury, or imminent destruction of evidence. *See United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir. 1984), overruled on other grounds by *Estate of Merchant v. Inyo Cnty.*, 993 F.3d 741 (9th Cir. 2021). Similarly, the Defendants are incorrect when they suggest that under federal law any stop of less than 60 minutes is per se reasonable in time. This is neither the federal nor Nevada standard. *Rodriguez v. United States*, 575 U.S. 348, 355, 135 S.Ct. 1609, 1615, 191 L. Ed. 2d 492 (2015) (violation of Fourth Amendment to prolong traffic stop 7-8 minutes to allow a drug sniff by a dog without reasonable suspicion); *State v. Beckman*, 129 Nev. 481, 489, 305 P.3d 912, 918 (2013) (nine-minute delay of traffic speeding stop so a drug sniffing dog could arrive was unreasonable). Myers alleges—as his negative blood testing later showed—that there was no reasonable suspicion for his traffic stop to be prolonged to investigate any other offenses. If proven, this would establish a federal and state Constitutional violation.

### C.  Myers' Fourteenth Amendment Claim should not be dismissed.

Defendants next argue that Plaintiff's Fourteenth Amendment claim must be dismissed, citing *Graham v. Connor* for the proposition that all unlawful arrest and detention claims must be brought solely under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989). However, claims of wrongful arrest or excessive force against state actors are necessarily brought under the Fourteenth Amendment, because it is the Fourteenth Amendment which incorporates the Fourth Amendment's protections and applies them to state actors. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961) ("[T]he Fourth Amendment's right of privacy has been declared enforceable against the

States through the Due Process Clause of the Fourteenth Amendment."). Thus, as a technical matter, all § 1983 claims for unlawful arrest by state law enforcement officers are grounded in the Fourteenth Amendment because it is that amendment which incorporates the Fourth Amendment.

Moreover, Plaintiff has separately and specifically pleaded substantive and procedural due process violations arising under the Fourteenth Amendment. *See Second Am. Compl.* ¶ 46. These claims are not duplicative of Plaintiff's Fourth Amendment claim, nor are they based on the degree of force used. Instead, they arise from the fact that Las Vegas City Marshals—who lacked any statutory authority to operate outside of City-owned property—arrested Plaintiff well outside their territorial jurisdiction in direct violation of *Nev. Rev. Stat.* § 280.125(3)(b) and *Las Vegas, Nev., Mun. Code* § 2.28.080(B). This conduct supports a due process claim because it reflects an arrest made not merely unlawfully, but by an official with no power to act in that geographic area.

As the United States District Court for Arizona observed in a factually analogous case, the Fourth and Fourteenth Amendments can work in tandem where a plaintiff alleges both an unlawful seizure and that such seizures were based on policies or practices of unauthorized law enforcement action. *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959 (Dist. Ariz. 2011) (putative civil rights class action alleging Fourth and Fourteenth Amendment violations based on racial profiling in immigration stops by police). The due process component addresses the deprivation of liberty by government agents who, like the City marshals here, act beyond the scope of their delegated power, potentially without any constitutional justification at all.

In this case, Plaintiff alleges that the City of Las Vegas knowingly allowed its marshals to perform arrests outside their limited territorial authority, and that this policy caused a deprivation of liberty without any lawful basis. Plaintiff's allegations concern a lack of lawful authority to arrest altogether, not simply the manner in which a lawful arrest was executed. Such allegations implicate both procedural and substantive due process rights. *See Puliafico*, 42 F. Supp. 2d 1000, 1012–13 (sustaining due process and Fourth Amendment claims where officers detained an individual without probable cause or jurisdictional authority). Accordingly, the Court should decline to dismiss Plaintiff's Fourteenth Amendment claim, especially at this early stage of the proceedings.

///

### D. Plaintiff's *Miranda*-based Fourth Amendment Claims

The Second Amended Complaint alleges civil liability for the violation of Myers' *Miranda* rights. The Defendants accurately state that under current law, a violation of a person's *Miranda* rights cannot form the basis of a 42 U.S.C. § 1983 action. However, Plaintiff pleaded this (1) for purposes of pursuing it on appeal and (2) to argue that the Nevada Supreme Court would likely rule that under Nevada state law such a cause of action exists. If a *Miranda* violation is not a Fourth Amendment violation…what is *Miranda* based on? However, Myers agrees that current case law on this issue requires the Court to dismiss this federal cause of action. Myers only alleges it to preserve the issue for appeal to request reversal of existing precedent.

### E. Plaintiff Plausibly Alleges a *Monell* Claim Against the City.

A municipality may be held liable under 42 U.S.C. § 1983 when a plaintiff's constitutional rights are violated as a result of the government's official policy, longstanding custom, failure to train or supervise, or ratification by a final policymaker. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978). A municipal policy may be shown through formal policy, a longstanding practice or custom that constitutes the standard operating procedure of the entity, a final policymaker's decision or ratification, or inadequate training or supervision that amounts to deliberate indifference. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005); *Christie v. Iopa*, 176 F.3d 1231, 1235–39 (9th Cir. 1999); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To survive a motion to dismiss, a plaintiff needs only to allege facts that plausibly suggest such a policy or custom exists and was the moving force behind the violation. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

#### 1. Plaintiff Alleges a Widespread and Persistent Custom, Practice or Policy of Extraterritorial Enforcement.

Defendants argue that Plaintiff's *Monell* claim should be dismissed because he has not identified a longstanding practice or custom and instead relies on a single incident. This is incorrect. Plaintiff has alleged specific facts demonstrating that the City of Las Vegas Department of Public Safety has a de facto policy and custom of allowing City marshals to conduct traffic enforcement actions outside the limited territorial jurisdiction defined by state law. *See Nev. Rev. Stat. §*

280.125(3)(b); *Las Vegas, Nev., Mun. Code* § 2.28.080(B). The *Second Amended Complaint* does not rest solely on Plaintiff's stop on January 9, 2025—it alleges a "policy, practice, and/or custom" of extra-jurisdictional enforcement affecting over 1,000 individuals, carried out by marshals who regularly operate on federal and state highways without legal authority. *See Second Amended Complaint* ¶¶ 3, 16–26, 77. This is precisely the type of "persistent and widespread practice" that the Ninth Circuit has found actionable under *Monell*. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (custom must be of sufficient "duration, frequency, and consistency" to become policy).

Plaintiff's allegations also go beyond bare conclusions. He identifies multiple officers, references specific statutes and ordinances limiting marshal authority, and quotes the City's own admissions from prior litigation where the City acknowledged its marshals were limited to city-owned property. *See Second Amended Complaint* ¶¶ 21–24. These well-pleaded factual allegations plausibly support the inference of a widespread custom under *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. 662, 678; *Twombly*, 550 U.S. 544, 555.

This case is distinguishable from *Ramirez v. Las Vegas Metro. Police Dep't*, 22 F. App'x 828 (9th Cir. 2001), and *Guarino v. Las Vegas Metro. Police Dep't*, No. 2:13-cv-02135-GMN-NJK, 2014 WL 12791070, at *4 (D. Nev. July 21, 2014), where plaintiffs relied only on a single incident. In the present case, Plaintiff alleges that extraterritorial jurisdictional enforcement by marshals is an ongoing and officially condoned practice going as high as the Chief Marshal, Defendant Potts, not merely a one-time aberration by officers. Moreover, as the Ninth Circuit emphasized in *Gordon v. County of Orange*, 6 F.4th 961 (9th Cir. 2021), plaintiffs may establish a custom even in the absence of written policy if they allege facts showing that unconstitutional practices were "so widespread as to have the force of law." *Id.* at 973–74. The *Second Amended Complaint* clearly meets that standard.

Plaintiff's allegations, taken as true, show more than an isolated incident. They plausibly allege a systemic pattern of unconstitutional behavior carried out by City marshals, facilitated by the City's Department of Public Safety, and condoned by Chief Potts. That is more than sufficient to proceed past the pleading stage. *See Christie*, 176 F.3d at 1235–36 (ratification of subordinate conduct by a policymaker supports *Monell* liability); *Timmons v. Zolman*, No. 2:17-cv-00360-MMD-NJK, 2019 WL 13250977, at *2 (D. Nev. Apr. 9, 2019) (denying dismissal where plaintiff

plausibly alleged municipal customs related to legal mail violations). The FAC exposes the City's deliberate policy of allowing marshals to flout jurisdictional limits, a practice the City knows violates state law but persists unto the detriment of thousands.

### 2. Plaintiff Has Plausibly Alleged *Monell* Liability Through Ratification by Chief Potts.

In addition to a "policy, practice or custom" theory under *Monell*, Plaintiff has also pleaded a ratification *Monell* theory as well. Ordinarily, ratification is a question for the jury. *See Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). To establish *Monell* liability through ratification, a plaintiff must allege that an official with final policymaking authority "ratified a subordinate's unconstitutional decision or action and the basis for it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). The ratification must reflect a "conscious, affirmative choice" to approve the unlawful conduct. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), overruled on other grounds by *Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016). Plaintiff has met this burden by alleging that Chief Potts and the Department of Public Safety authorized and permitted enforcement by marshals on highways not under City control.

The *Second Amended Complaint* alleges that Chief Potts, as head of the Department of Public Safety, "endorsed, ratified, or even mandated or encouraged" the practice of Las Vegas City marshals conducting law enforcement operations outside their territorial jurisdiction. *Second Amended Complaint* ¶ 81. Plaintiff's allegations make clear that this is not about isolated misconduct—it is about a rogue operation with top-down endorsement and approval. *See Christie*, 176 F.3d 1231, 1239 ("To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it.").

Further, as the court recently reaffirmed in *Wells v. City of Las Vegas*, summary judgment is inappropriate where the record supports an inference that a policymaker made a "deliberate choice" to permit unlawful enforcement. *See Wells v. City of Las Vegas*, No. 2:21-CV-1346-JCM (EJY), 2024 WL 2028007, at *14–15 (D. Nev. May 7, 2024). At the pleading stage, the bar is even lower and the Motion to Dismiss should be denied.

### 3. Plaintiff Has Sufficiently Alleged Deliberate Indifference and

**Causation Under *Monell*.**

Defendants argue that Plaintiff fails to allege that the City's policies or customs amount to deliberate indifference or were the moving force behind the constitutional violations alleged. However, this is not a case of conclusory pleading or speculation. The *Second Amended Complaint* alleges a well-established municipal failure to train and supervise marshals regarding the jurisdictional limits clearly imposed by *Nev. Rev. Stat.* § 280.125(3)(b) and *Las Vegas, Nev., Mun. Code* § 2.28.080(B). *See Second Amended Complaint* ¶¶ 3, 16–24, 77–85. These allegations more than meet the requirements to survive a motion to dismiss.

A municipality is liable under § 1983 where its failure to train or supervise its employees amounts to deliberate indifference to the rights of persons with whom those employees come into contact. *Harris*, 489 U.S. 378, 388. "Deliberate indifference" is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of their action. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Yet, courts routinely find this standard met where, as here, a municipality has notice of ongoing constitutional violations and refuses to correct them.

The *Second Amended Complaint* alleges that the City of Las Vegas was on clear notice— via statutory language, its own litigation admissions, and internal policies—that marshals lack jurisdiction outside city-controlled property, and yet the City continued to allow and encourage those officers to detain individuals on state and federal highways. *See Second Amended Complaint* ¶¶ 21–24, 84–85. The City's failure to train or supervise its marshals to respect these limits, in defiance of clear legislative boundaries, constitutes a policy of deliberate indifference. As the *Second Amended Complaint* makes clear, "the City's persistence in this practice, knowing it cannot override NRS § 280.125(3)(b), meets the 'stringent' deliberate indifference standard." *Connick*, 563 U.S. at 61.

Defendants suggest that Plaintiff merely recites *Monell* elements. That claim is a desperate deflection from the City's own reckless disregard for the law. Plaintiff alleges specific factual circumstances linking the City's policy and training failures to constitutional harm. The *Second Amended Complaint* also satisfies the "moving force" requirement. It alleges that the City's policy of permitting marshals to act outside of jurisdiction "was the moving force behind Plaintiff's and

the class's injuries," directly causing their unconstitutional detentions. *See Second Amended Complaint* ¶ 80. This allegation is not speculative—it logically and directly flows from the admitted policy and the specific arrest of Plaintiff.

Defendants' attempt to analogize this case to the unpublished decision in *Ramirez v. Las Vegas Metro. Police Dep't*, 22 Fed. Appx. 828 (9th Cir. 2001) (unpublished) also fails. Unlike the single-instance claims in *Ramirez*, Plaintiff here pleads a broader policy and widespread misconduct believed to affect more than 1,000 individuals. Plaintiff's *Second Amended Complaint* is the antithesis of a single-instance *Monell* claim. Nor is this a case like *Miller v. Nye Cnty.*, 488 F. Supp. 3d 973 (D. Nev. 2020), where the plaintiff failed to allege either pattern or predictability. In contrast, this case has both: a history of extraterritorial enforcement and clear legal standards prohibiting that conduct. Accordingly, the *Second Amended Complaint* contains detailed allegations demonstrating that the City knew of jurisdictional limits, continued to allow marshals to violate them, failed to train or supervise those officers, and caused the constitutional injuries suffered by Plaintiff and the class. That is deliberate indifference. That is causation—and that is sufficient under *Monell*.

### F. Myers' Claims against Chief Potts should not be Dismissed.

Defendants' attempt to dismiss claims against Chief Potts as redundant or unsupported is a misguided attempt to shield a key architect of the City's lawless policy. *See* Mot. at 15-17. Indeed, Chief Potts was added as a named Defendant in this case when, after the original complaint was filed and garnered news media attention, a whistleblower former marshal came forward and explained that Potts was personally aware of this legal issue but continued to authorize and encourage this enforcement. The law is clear: supervisors or final policy makers can be held liable under § 1983 not only for their own direct actions, but for their ratification of unconstitutional policies and their failure to act in the face of known violations.

#### 1. Potts' Culpability Is Clear.

The *Second Amended Complaint* plainly alleges that Potts, as Chief of the Department of Public Safety, oversaw, endorsed, and encouraged a policy whereby City marshals routinely enforced laws outside their statutory jurisdiction in violation of *Nev. Rev. Stat.* § 280.125(3)(b). *See* SAC ¶¶ 26, 81. The City's marshals, under Potts' command, conducted stops, searches, and arrests

on state and federal highways—far beyond any property owned or controlled by the City. As the Ninth Circuit has repeatedly made clear, supervisors are liable for (1) their own culpable action in the training, supervision, or control of subordinates; (2) their acquiescence in the constitutional deprivation; or (3) conduct that shows a reckless or callous indifference to the rights of others. *Edgerly*, 599 F.3d 946, 961; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). That is precisely what Plaintiff alleges here: Potts knew of the marshals' repeated violations of territorial limits and failed to intervene. He oversaw the very department responsible, ratified the practice, and made no attempt to curtail it. *See* SAC ¶¶ 26, 84–85.

This case is distinguishable from the case cited by the Defendants, *Chuman v. Wright* 76 F.3d 292 (9th Cir. 1996), where the plaintiff failed to tie supervisory liability to any particular conduct. Here, the *Second Amended Complaint* ties Potts' supervisory authority directly to a clearly articulated and unlawful policy. Unlike *Chuman*, Plaintiff does not allege group liability—he alleges personal culpability. As the Ninth Circuit reaffirmed in *Larez v. City of Los Angeles*, supervisors may be liable under § 1983 when they promulgate unconstitutional policies or fail to act upon knowledge of repeated violations. *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991). In *Larez*, the police chief was held personally liable because he knowingly permitted unconstitutional conduct through lack of training and ratification of subordinates' actions. *Id.* at 646. The same rationale applies here: Potts knowingly permitted his marshals to enforce laws outside their jurisdiction, in defiance of the very statutes limiting their authority.

### 2.  Claims Against Potts Are Not Redundant.

Second, Defendants argue that because Plaintiff has named both the City and Chief Potts, the claims against Potts should be dismissed as redundant. However, this argument reflects a misapplication of the rule stated in *Center for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff's Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). That case stands for the uncontroversial principle that "[a]n official capacity suit against a municipal officer is equivalent to a suit against the entity," and thus, when both the municipality and the official are named in an official capacity only, the official may be dismissed as a redundant defendant. *Id.* However, Potts is not sued only in his official capacity in this case. Instead, Plaintiff expressly alleges that Potts is sued in his *individual* capacity for his

own actions and supervisory failures. *See* SAC ¶¶ 9, 43. Courts have consistently held that individual-capacity claims are distinct from *Monell* claims and not subject to dismissal as duplicative. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (individual capacity suits seek to impose personal liability and are not equivalent to suits against the entity); *Larez*, 946 F.2d at 646 (holding that an individual capacity claim against the police chief was not redundant of *Monell* liability).

Defendants' claim of redundancy thus incorrectly states the pleadings and the controlling law. Unlike in *Ward v. City of Sparks*, No. 3:09-CV-0007-RCJ-VPC, 2011 WL 587153, at *4 (D. Nev. Jan. 12, 2011), where the official was sued only in his official capacity, Potts is sued for his personal role in the unlawful pattern of enforcement that led to Plaintiff's wrongful arrest. The City's attempt to conflate the individual and *Monell* claims while ignoring Potts' role in perpetuating its lawless custom is a dodge that this Court should reject. Where a supervisor acts with deliberate indifference to known constitutional violations and ratifies the offending conduct, § 1983 liability follows.

### G. The Defendant Officers are not Shielded by Qualified Immunity.

Defendants next argue that the City Marshals are entitled to qualified immunity because Plaintiff's rights were not clearly established and that the officers reasonably believed their conduct was lawful. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As the Ninth Circuit has emphasized, the court must address qualified immunity "as a legal issue before trial whenever possible." *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017). Officers may be denied qualified immunity at the motion to dismiss stage where the complaint plausibly alleges that: (1) the officers violated a constitutional right, and (2) the right was clearly established at the time. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). While plaintiffs bear the burden on the second prong, that burden is satisfied where the law was "sufficiently clear that every reasonable official would understand that what he is doing is unlawful."

*District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018); *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991). While there need not be a factually identical case creating such notice, plaintiffs must point to "existing precedent" that puts "the statutory or constitutional questions beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018).

Here, the *Second Amended Complaint* alleges that marshals stopped and arrested Plaintiff on I-11/US Route 95, despite lacking statutory authority to operate on property not owned, leased, or otherwise controlled by the City of Las Vegas. That prohibition is clearly set forth in *Nev. Rev. Stat.* § 280.125(3)(b). The language is direct, unambiguous, and restrictive: marshals may enforce state and local laws only on City-controlled property. Plaintiff has alleged that these jurisdictional restrictions were known and ignored by the Defendant officers. *See* SAC ¶¶ 16–24, 27–30. There is no plausible ambiguity here. The statute is clear.

Qualified immunity cannot shield officers who act outside the bounds of lawful authority. Defendants rely on *Virginia v. Moore,* 553 U.S. 164 (2008) to argue that violations of state arrest rules do not create Fourth Amendment violations. However, this is not a correct statement of *Moore*. *Moore* only ruled that the Fourth Amendment does not *automatically* incorporate all state procedural laws regarding arrests, ergo a violation of state law in an arrest in not per se, in all cases, also a violation of the Fourth Amendment. *Moore* did <u>not</u> involve an extraterritorial arrest at all. For Fourth Amendment purposes, extraterritorial arrests violate the Fourth Amendment. *Ross v. Neff*, 905 F.2d 1349, 1353-1354 (10th Cir. 1990) ("We have implied that an arrest made outside of the arresting officer's jurisdiction violates the Fourth Amendment to the Constitution and is therefore actionable pursuant to 42 U.S.C. § 1983 under the appropriate circumstances…We now so hold expressly."). *See United States v. Henderson*, 906 F.3d 1109, 1117 (9th Cir. 2018) (magistrate judge's issuance of warrant to be executed outside the geographic bounds of the judge's district violated the Fourth Amendment). This is because the Fourth Amendment's "reasonableness" requirement is determined under the common law at the time of the adoption of the Fourth Amendment. The common law of the founding era deemed searches and seizures unreasonable when police officers acted outside the bounds of their jurisdiction. When the Fourth Amendment was adopted, the common law drew clear distinctions based on whether an officer was acting within or outside the scope of his authority.

When attempting to execute a warrant, for example, an officer could execute the warrant only "so far as the jurisdiction of the magistrate and himself extends." *Henderson*, 906 F.3d at 1116 (quoting 4 William Blackstone, Commentaries). Furthermore, "[a]t common law, an officer [could not] arrest a person outside of his precinct, even though the offense was committed within it." 2 David S. Garland & Licius P. McGehee, The American and English Encyclopaedia of Law 863 (2d ed. 1896). While the Fourth Amendment does not incorporate all state arrest and jurisdiction laws, it does protect against extraterritorial arrests by law enforcement. Because the *Second Amended Complaint* plausibly alleges that this conduct violated clearly established Fourth Amendment protections, the motion to dismiss based on qualified immunity must be denied.

**H. Myers has Pleaded a Plausible Battery and False Imprisonment Claim.**

Defendants next argue that Plaintiff's state law tort claims for battery and false imprisonment should be dismissed on the basis that the officers' conduct was lawful and justified under both Nevada and federal law. However, Plaintiff's allegations, accepted as true at this stage, plausibly support that the Defendant officers acted without lawful authority when they detained and arrested him outside their statutorily defined jurisdiction. Both battery and false imprisonment require a showing that the officer's conduct was not legally justified. Plaintiff has met this standard by alleging the marshals exceeded their legal jurisdiction under *Nev. Rev. Stat.* § 280.125(3)(b), which plainly limits their enforcement authority to City-controlled property. Accordingly, the motion to dismiss these claims must be denied.

**1. Plaintiff Has Stated a Plausible Claim for Battery and False Imprisonment Against the Defendant Officers.**

Defendants contend that the battery and false imprisonment claims fail because the officers acted lawfully. But this presumes the very issue in dispute: whether the Defendant officers had any legal authority to stop and arrest Plaintiff on I-11/US Route 95. The *Second Amended Complaint* alleges that the marshals were acting well outside their jurisdiction as defined by *Nev. Rev. Stat.* § 280.125(3)(b), which restricts enforcement powers to property "owned, leased or otherwise under the control" of the City. That statutory limitation is neither ambiguous nor qualified—and it forecloses any claim of lawful authority by the officers at the time of the incident. *See Humboldt*

16

*Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 132 Nev. 544, 549, 376 P.3d 167, 172 (2016) ("Battery is an intentional and offensive touching of a person who has not consented to the touching.").

Peace officers are privileged to use force only when it is reasonably necessary to carry out a lawful detention or arrest. *Yada v. Simpson*, 112 Nev. 254, 913 P.2d 1261, 1262 (1996) (superseded by statute on other grounds) ("a police officer who uses more force than is reasonably necessary to effect a lawful arrest commits a battery"). In *Plank v. Las Vegas Metro. Police Dep't,* 2016 U.S. Dist. LEXIS 32438, *27, 2016 WL 1048892, the court found issues of fact prevented summary judgment as to battery claims despite dismissal of a *Monell* action.

Any force used to make this arrest was, by definition, excessive because the marshals had no legal authority to stop Meyers at all. Here, the *Second Amended Complaint* alleges that the marshals stopped and arrested Plaintiff without any legal basis to do so, since they were not on property under City control. *See* SAC ¶¶ 18, 27–30, 87. The statute governing their authority was clear, and the City itself had acknowledged its marshals' jurisdictional limits in prior litigation. When an officer detains and uses force on a citizen outside the scope of any legal authority, that conduct is neither privileged nor lawful. Accordingly, Plaintiff has plausibly alleged that any physical contact during that stop constituted battery.

Similarly, false imprisonment under *Nev. Rev. Stat.* § 200.460(1) is "an unlawful violation of the personal liberty of another," and is established by confinement "without sufficient legal authority." *Yada*, 913 P.2d at 1262. Again, this hinges on whether the officers were acting with lawful authority when they initiated the detention. The *Second Amended Complaint* pleads that they were not—and that their lack of jurisdiction rendered the stop and arrest illegal. Because the marshals acted outside the bounds of their statutory authority, Plaintiff's liberty was restrained without legal justification, which satisfies the elements of false imprisonment.

Defendants' reliance on federal Fourth Amendment standards to justify dismissal of these claims is misplaced. In *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996), the court made clear that "the standard for common-law assault and battery by a police officer...mirrors the federal civil rights law standard," but that does not mean a federal Fourth Amendment analysis controls the outcome of a state law tort claim—especially where the arrest itself is alleged to be

17

jurisdictionally void. Furthermore, as previously discussed, the holding in *Virginia v. Moore*, does not immunize officers from liability under state tort law. In *Moore*, the officers performed a custodial arrest despite the fact that under Virginia state law, they should have simply issued a ticket or citation and summons. *Moore* did not concern an extraterritorial arrest at all. The Supreme Court held that an arrest made in violation of state procedural rules did not violate the Fourth Amendment where the officer had general statutory authority to arrest. *Id.* However, that holding is inapplicable here, where Plaintiff alleges that the Defendant officers had no jurisdiction at all—not just that they exercised poor discretion. The distinction is legally significant. Whether the officers' conduct was ultimately justified is a question of fact and law to be addressed at summary judgment—not a basis for dismissal at the pleading stage.

## 2. Plaintiff Has Plausibly Alleged Chief Potts's Liability for Battery and False Imprisonment.

Defendants also argue that Chief Potts should be dismissed from Plaintiff's battery and false imprisonment claims on the grounds that he did not personally participate in the arrest or detention and that the claims against him are redundant of those against the City. This argument misstates the applicable standard for supervisory liability and fails to account for the *Second Amended Complaint*'s allegations of Chief Potts' direct role in ratifying, encouraging, and maintaining the unlawful policy that led to the violations at issue. Supervisors can be held liable for tortious conduct if they directly participate in, authorize, ratify, or otherwise causally contribute to the alleged wrongful conduct. This is consistent with the rule that supervisory liability under 42 USC § 1983 is appropriate where a policymaker is not merely a passive figurehead, but actively sets or allows a policy that results in constitutional or statutory violations. *See Taylor*, 880 F.2d 1040, 1045. That principle applies equally to state law tort claims arising from the same facts. The Nevada Supreme Court has not insulated municipal supervisors from state tort liability where their own conduct— such as deliberate failure to supervise or approve of unlawful policing policies—directly causes a violation of rights.

Admittedly, the *Second Amended Complaint* does in part seek to impose respondeat superior or vicarious liability on Potts for state law claims. However, the *Second Amended Complaint* does

not rely solely on respondeat superior to hold Potts liable. Rather, it alleges that Chief Potts, in his role as Chief of the Department of Public Safety, ratified, permitted, and in fact encouraged a policy of marshals performing traffic enforcement outside the jurisdictional boundaries set by *Nev. Rev. Stat.* § 280.125(3)(b). *See* SAC ¶¶ 26, 81, 90, 102. This policy directly caused Plaintiff's unlawful detention and arrest, which underlies both his battery and false imprisonment claims. The law does not require that Chief Potts be physically present during the arrest; it only requires that he played a causal role in enabling the unlawful conduct.

Indeed, Plaintiff's theory of liability is that Chief Potts oversaw and maintained a systemic practice that was known to violate statutory law. That is more than sufficient to state a plausible claim. As the Ninth Circuit explained in *Center for Bio-Ethical Reform*, an official-capacity defendant may be dismissed as redundant only where the plaintiff seeks damages for the entity's liability alone, and no independent basis for personal or supervisory liability exists. *Center for Bio-Ethical Reform*, 533 F.3d 780, 799 (9th Cir. 2008). Here, Plaintiff specifically sues Potts in his individual capacity for his own conduct in permitting the illegal policy, as clearly alleged in *Second Amended Complaint* ¶ 9.

Moreover, the argument that Potts' liability is "redundant" is inapplicable where, as here, Plaintiff brings claims against the City for *Monell* liability and against Potts for personal involvement in the creation or enforcement of the policy. See *Larez*, 946 F.2d 630, 646 (rejecting redundancy argument where police chief was sued in both individual and official capacity for his own actions in approving unlawful conduct). Likewise, *Graham*, 473 U.S. 159, 165–66, confirms that individual and official capacity claims are legally distinct, and that individual liability flows from personal participation. The *Second Amended Complaint* states a plausible claim for battery and false imprisonment against Chief Potts based on his personal role in establishing and perpetuating the unlawful policy. The Court should deny Defendants' motion to dismiss Chief Potts from these claims.

### 3. Plaintiff Has Plausibly Pleaded Battery and False Imprisonment Claims Against the City.

Defendants argue that Plaintiff's battery and false imprisonment claims against the City of

Las Vegas must be dismissed because the officers' conduct was not committed within the scope of their employment and was not reasonably foreseeable. However, under both common law principles and Nevada's statutory codification at *Nev. Rev. Stat.* § 41.745, Plaintiff's claims against the City are plausibly alleged and should proceed.[1] The Nevada Supreme Court has long held that an employer may be held liable for intentional torts committed by its employees where those torts occur within the course and scope of the employee's assigned duties. *Prell Hotel Corp. v. Antonacci*, 86 Nev. 390, 391, 469 P.2d 399, 400 (1970) ("[W]here the willful tort is committed in the course of the very task assigned to the employee, liability may be extended to the employer"). The relevant inquiry is not whether the conduct was malicious or excessive, but whether the employee was performing the type of work the employer directed at the time of the alleged tort. Here, the *Second Amended Complaint* alleges that the City marshals were actively engaged in conducting a traffic stop and arrest—core law enforcement functions—when they allegedly violated Plaintiff's rights. *See* SAC ¶¶ 27–30, 91, 96.

Moreover, *NRS* § 41.745 does not alter this rule; it refines it. Under the statute, the City may be held liable where the employee's conduct (1) was not a truly independent venture, (2) was committed in the course of the very task assigned to the employee, and (3) was reasonably foreseeable. See *Wood v. Safeway, Inc.*, 121 Nev. 724, 738, 121 P.3d 1026, 1036 (2005) ("Whether an act is reasonably foreseeable depends on whether a person of ordinary intelligence and prudence could have reasonably anticipated the conduct and probability of injury").

Here, all three prongs are met. First, the marshals were not acting on a personal frolic but rather engaged in law enforcement duties on behalf of the City. Second, traffic enforcement is indisputably one of the "very tasks" marshals are assigned to perform. Third, the violation alleged— overstepping geographic enforcement boundaries defined by statute—was plainly foreseeable to the City and on information and belief was actually known and encouraged by Potts. The City's own

---

[1] For federal 42 USC § 1983 claims, a municipality is not vicariously liable. However, the state of Nevada lacks such a rule for state law claims. In fact, to the opposite the City *must* be named in a tort action against its employees for state law claims. NRS § 41.0337.

admissions and prior litigation confirm that its marshals were knowingly permitted to act outside their jurisdiction, despite *NRS* § 280.125(3)(b)'s clear limitations. *See* SAC ¶¶ 21–24. This pattern of misconduct, ratified by City leadership, makes it not only foreseeable, but systemic.

Defendants also argue that Plaintiff alleges only that the City is vicariously liable because it employed the marshals. But that argument ignores that Plaintiff has specifically alleged that the City was aware of, permitted, and failed to correct the ongoing practice of City marshals conducting traffic enforcement outside of their jurisdiction. Accordingly, the statutory and common law standards are satisfied, and the City's liability is properly pleaded. The Court should therefore deny Defendants' motion to dismiss the state law claims against the City.

> **4. Discretionary Function Immunity Does Not Shield Defendants from Liability for Battery and False Imprisonment.**

Defendants also argue that Plaintiff Myers' battery and false imprisonment claims are barred by discretionary function immunity under *Nev. Rev. Stat.* § 41.032. This argument should also be rejected. The *state actor* asserting the immunity "has the burden of proving that the discretionary function exception applies," not the Plaintiffs. *Sigman v. United States*, 217 F.3d 785, 793 (9th Cir. 2000). **"In a close case, [the court] must favor a waiver of immunity and accommodate the legislative scheme [generally waiving immunity]."** *Hagblom v. State Director of Motor Vehicles*, 93 Nev. 599, 571 P.2d 1172, 1174-75 (Nev. 1977) (*quoting State v. Silva*, 86 Nev. 911, 478 P.2d 591, 593 (Nev. 1970)); *see also Martinez*, 168 P.3d at 724 ("Because the primary legislative intent behind the qualified waiver of sovereign immunity from tort liability under NRS Chapter 41 was to waive immunity, we strictly construe limitations upon that waiver." (quotation marks and footnote citation omitted)). Further, **"decisions made in bad faith, such as 'abusive' conduct resulting from 'hostility' or 'willful or deliberate disregard' for a citizen's rights, aren't protected under the immunity statute even if they arise out of a discretionary function."** *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1133 (9th Cir. 2017) *citing Davis v. City of Las Vegas*, 478 F.3d 1048, 1060 (9th Cir. 2007). Lastly, conduct in violation of the Constitution cannot qualify for discretionary-function immunity because following the Constitution (or any law) is not discretionary but rather mandatory. *Martinez v. United States*, 997 F.3d 867, 877 (9th Cir. 2021)

("[e]ven if the agents' actions involved elements of discretion, agents do not have discretion to violate the Constitution.").

Admittedly, the scope of discretionary-function immunity is difficult to grasp and not all reasonable lawyers and judges agree on its scope. Yet, the present case is an easy one to determine that discretionary-function immunity does not apply to the Defendants. Broadly speaking, the purpose of discretionary-function immunity is to provide immunity for "decisions [that] require analysis of government *policy* concerns." For the immunity to apply, the suit must be "be based on considerations of social, economic, or political policy." *Martinez,* 168 P.3d at 724. However, performing one's job as a peace officer in a manner which is unlawful and unconstitutional is not the type of broad policy-making decision the discretionary function immunity was meant to protect.

Equally clear under Nevada law is that "certain acts, although discretionary, do not fall within the ambit of discretionary-act immunity 'because they involve negligence unrelated to any plausible policy objectives.'" *Butler v. Bayer*, 123 Nev. 450, 466, 168 P.3d 1055, 1066 (2007). The Ninth Circuit has repeatedly held that routine law enforcement activities—including arrests, detentions, and traffic stops—are not the kind of policy-based decisions protected under discretionary immunity. *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168–69 (9th Cir. 2014) (discretionary immunity did not apply where officers' conduct showed deliberate disregard for constitutional rights); *Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 924 (9th Cir. 2024) (affirming discretionary immunity where no bad faith was alleged, but reaffirming that immunity does not attach to constitutional violations).

Lastly, the Ninth Circuit has repeatedly held that government officials accused of *Constitutional* violations cannot hide behind discretionary function immunity because "[e]ven if the agents' actions involved elements of discretion, agents do not have discretion to violate the Constitution." *Martinez v. United States*, 997 F.3d 867, 877 (9th Cir. 2021) (rejecting claims of discretionary-function immunity under the *Berkovitz/Gaubert* framework); *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate…"). Therefore, discretionary function immunity is really only applicable to negligence-type cases and not alleged Constitutional violations. The Third Circuit recently said it

best in *Xiaoxing Xi v. Haugen*, 68 F.4th 824, 829 (3d Cir. 2023), when it held "[w]e clarify today, however, that the 'clearly established' threshold is inapplicable to the discretionary function analysis, and because the Government has no discretion to violate the Constitution, FTCA claims premised on conduct that is plausibly alleged to violate the Constitution may not be dismissed on the basis of the discretionary function exception.").

In summary, the pleaded acts of the Defendants in this case do not invoke discretionary function immunity. Therefore, the Defendants' Motion to Dismiss the claims against them on ground of discretionary-function immunity should be denied.

### I. Plaintiff's Request for Punitive Damages Against the City Should Be Denied Only to the Extent Required by Law, Not Dismissed in Its Entirety.

Defendants argue that Plaintiff's request for punitive damages against the City must be dismissed because municipalities are categorically immune from punitive damages under both federal and Nevada law. While the City is correct that punitive damages are not recoverable against a municipality under 42 U.S.C. § 1983 or, as to state law claims, under NRS § 41.035(1), Defendants' motion should be denied insofar as it seeks blanket dismissal without acknowledging that the request may remain valid against individual Defendants sued in their personal capacities. To the extent that Defendants seek dismissal of punitive damages solely against the City for *Monell* and state law tort liability, Plaintiff does not object. However, the motion should be denied to the extent that it seeks to strike punitive damages as to all other parties.

### J. The Viability of Plaintiff's Class Allegations is Not Contingent Upon the Ultimate Success of His Individual Claims at the Pleading Stage.

Defendants urge this Court to dismiss Plaintiff's class allegations on the speculative basis that if the Court were to dismiss Plaintiff Myers' individual claims, then the putative class claims must also fall for lack of standing. However, FRCP 23 does not require that class claims be dismissed simply because a named plaintiff's claims are challenged pre-certification. The Ninth Circuit has made clear that class allegations should only be dismissed at the pleading stage if it is apparent from the face of the complaint that the proposed class cannot be maintained under any set of circumstances—a showing the Defendants have not made. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d

1081, 1091–92 (9th Cir. 2011).

Dismissal of class allegations at the pleading stage is strongly disfavored. Class allegations are generally not tested at the pleadings stage and instead are usually tested after one party has filed a motion for class certification. *E.g., Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007). That standard is not met here. The Court should deny the motion and allow the class claims to proceed through discovery and the Rule 23 process in the normal course.

### III.   CONCLUSION.

For the reasons set forth above, Plaintiff Derek Myers has plausibly alleged that the Defendant officers acted outside the scope of their lawful authority under Nevada law and the United States Constitution, and that these violations were carried out under the City's longstanding, systemic, and ratified policies. Accordingly, the Court should deny Defendants' Motion to Dismiss in its entirety.

DATED this 30th day of April, 2026.

BREEDEN & ASSOCIATES, PLLC

ADAM J. BREEDEN, ESQ.
Nevada Bar No. 008768
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

24

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of April, 2026, I served a copy of the foregoing legal document **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** via the method indicated below:

| X | Through the Court's ECF/CM system on all registered users |
|---|---|
|  | Pursuant to FRCP 5, by placing a copy in the US mail, postage pre-paid to the following counsel of record or parties in proper person:<br><br>NECHOLE GARCIA, ESQ.<br>PAUL MATA, ESQ<br>495 S. Main Street, Sixth Floor<br>Las Vegas, NV 89101<br>*Attorneys for Defendants* |
|  | Via receipt of copy (proof of service to follow) |

An Attorney or Employee of the following firm:

*/s/ Kirsten Brown*

**BREEDEN & ASSOCIATES, PLLC**

25