**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

|  |  |
|---|---|
| Derek Myers, on behalf of himself and all others similarly situated, | Case No. 2:25-cv-00562-GMN-DJA |
| Plaintiff, | **Order** |
| v. | |
| City of Las Vegas, Jason Brooks, Sergio Guzman, Jason Potts, | |
| Defendants. | |

In the afternoon on January 9, 2025, Las Vegas City Marshals Jason Brooks and Sergio Guzman pulled Plaintiff Derek Myers over for alleged moving traffic violations. Brooks and Guzman searched Myers' person and vehicle, arrested Myers, and detained him for about seventeen hours. No criminal charges resulted from the encounter. Myers then filed this class action complaint against Brooks; Sergio; the City of Las Vegas; and the Chief for the City of Las Vegas Department of Public Safety (which department oversees the City Marshals), Jason Potts. (ECF No. 1). Myers' claims arise out of his allegation that the City Marshals arrested him outside of their territorial jurisdiction and had acted extra jurisdictionally on countless other occasions.

Myers now moves for an order to show cause why non-party Vincente Buchanan should not be held in contempt for his failure to comply with Myers' subpoena duces tecum. (ECF No. 33). Defendants do not oppose this motion. No other party has either. The Court therefore grants it in part and will set a show cause hearing at which Buchanan must appear and show cause why the assigned magistrate judge should not certify the facts of Buchanan's failure to comply with the subpoena to the assigned district judge.

Defendants move to compel Myers to produce his communications with third party Doug Roberts in response to one of Defendants' requests for production. (ECF No. 34). Myers produced certain of his communications with Roberts, but clams that certain others are protected

by the attorney-client privilege, the work product doctrine, and the journalist privilege. (ECF No. 37). The Court finds that Myers has not met his burden to show that the attorney-client or the journalist privilege apply to protect the communications listed in his privilege log from disclosure. However, the Court denies the motion to compel because it cannot determine, based on the parties briefing alone, whether the communications are protected by the work product doctrine. The Court denies the motion without prejudice so that the parties may file a renewed motion or motions focused solely on the work product doctrine, may submit the communications at issue in camera for the Court's review, and may attach the communications Myers has produced so that the Court can determine whether Myers has waived the protections of the work product doctrine.

## I.      Myers' motion for order to show cause.

Under Federal Rule of Civil Procedure 45(g), a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or an order related to it." Under 18 U.S.C. § 401, "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as…[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." Civil contempt consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. *GoVideo, Inc. v. Motion Picture Ass'n of Am.*, 10 F.3d 693, 695 (9th Cir. 1993). The contempt need not be willful and there is no good faith exception to the requirement of obedience to a court order. *Id.* But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of a court's order. *Id.* The party alleging contempt must demonstrate the alleged contemnor violated the court's order by clear and convincing evidence. *Id.*

Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). "Compensatory awards are limited to actual losses *sustained as a result of the contumacy*." *Id.* (emphasis in original) (internal quotations omitted).

The civil contempt power of a magistrate judge is governed by 28 U.S.C. § 636(e), which provides as follows:

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

*See* 28 U.S.C. § 636(e)(6)(B).

The Court grants Myers' motion for an order to show cause in part and denies it in part. Myers has demonstrated that Buchanan was aware of the subpoena before it was served, informed counsel that he would not comply with it, and was served with the subpoena on September 5, 2025. (ECF No. 33 at 8). Nonetheless, Buchanan failed to comply with the subpoena by providing the documents it requested or appearing at Myers' counsel's law firm on September 12, 2025. (*Id.*). Buchanan has also neither objected to the subpoena nor responded to the motion for order to show cause, constituting his consent to the Court granting it under Local Rule 7-2(d).

The Court will therefore grant the motion for order to show cause, but will do so in part because the undersigned magistrate judge will hold the hearing. The undersigned is not authorized to hold a contempt hearing. Instead, the undersigned will hold a show cause hearing to determine if the undersigned should certify the facts of Buchanan's failure to comply with Myers' subpoena to the assigned district judge under 28 U.S.C. § 636(e)(6)(B).

## II.     Defendants' motion to compel.

### A.     Background.

Defendants move to compel Myers to disclose documents responsive to Defendants' Request for Production ("RFP") No. 12. That request seeks "any and all communications between you, Derek Myers, and Doug Roberts pertaining to the matters alleged in this matter's pleadings." (ECF No. 34 at 4). Myers originally disclosed Roberts as a witness in his initial disclosures and described him as an "acquaintance of Plaintiff Derek Myers [who] will testify as to his interactions with Myers and the marshals/NHP and all other matters of which he has knowledge." (*Id.*). In his initial disclosures, Myers produced a phone call between him and

Roberts that occurred in the moments after Myers was stopped by the marshals and emails from Roberts. (*Id.*).

In originally responding to RFP 12, Myers wrote:

> OBJECTION: This request is overly broad and vague as to "pertaining to the matters alleged in this matter's pleadings." Additionally, this request is unduly burdensome. Plaintiff further objects to these requests to the extent that they seek documents not in Plaintiff's possession, custody, or control. Subject to these objections: See VIDEO 000001; MYERS 001735-001740. Discovery is continuing and Plaintiff reserves the right to supplement this response as additional information becomes available.

(ECF No. 34-5 at 3).

Defendants later attempted to obtain the documents sought in RFP 12 through a subpoena duces tecum to Roberts. (ECF No. 34-6). Roberts responded to the subpoena with a declaration asserting that, because he is a member of the press, he uses communication applications that delete his communications shortly after sending them and that his custom is to immediately delete emails. (ECF No. 34-7). So, Roberts explained, he had no communications to produce in response to the subpoena. (*Id.*). Roberts did, however, produce a Power of Attorney and a Research Services Agreement, both between him and Myers, in response to the subpoena. (*Id.*); (ECF No. 34-10); (ECF No. 34-11).

The Power of Attorney is dated January 14, 2025, and gives Roberts the power to "institute, maintain, defend, compromise, arbitrate or otherwise dispose of, any and all actions, suits, attachments or other legal proceedings for or against" Myers and to make public records requests on Myers' behalf. (ECF No. 34-10). The Research Services Agreement is dated March 27, 2025, and authorizes Roberts to conduct public records requests, perform video documentation, and investigate and provide background information related to Myers' suit against Defendants. (ECF No. 34-11). Roberts explained in his declaration that shortly after the January 9th incident, Myers retained him "as a researcher for the purposes of researching claims [Myers] may have against the City of Las Vegas and retaining legal counsel on [Myers'] behalf." (ECF No 34-7 at 2-3).

Defendants' counsel and Myers' counsel then met and conferred on January 5, 2025. (ECF No. 34 at 2). At that meet and confer, Myers' counsel asserted that certain communications responsive to RFP 12 were privileged and would be withheld. (*Id.*). After the parties met and conferred, Myers updated his objection to RFP 12 to include the following:

> This Request also seeks documents and materials prepared in anticipation of litigation and for trial and is therefore protected from disclosure by the work-product doctrine under Fed. R. Civ. P. 26(b)(3). Plaintiff further objects to the extent this Request seeks documents and materials protected by the qualified journalist's privilege, including unpublished newsgathering materials, editorial processes, and information obtained in the course of reporting. Disclosure would intrude upon constitutionally protected newsgathering activities. Such information is also protected from disclosure by NRS 49.275.

(ECF No. 34-8 at 3-4).

Myers also produced a privilege log detailing emails between himself, his counsel, Roberts, and other parties. (ECF No. 34-9). He also produced some social media communications between the parties and the Power of Attorney and Research Services Agreement between him and Roberts. (ECF No. 34 at 5).

In their motion to compel, Defendants argue that neither the attorney-client privilege, nor the work product doctrine, nor the journalist privilege apply to Myers' communications with Roberts. (ECF No. 34 at 6-7). Regarding the attorney-client privilege, Defendants argue that Myers has waived the privilege because the privilege log shows that Roberts and other third parties are copied on the emails with Myers and his counsel. (*Id.* at 12). Regarding the work product doctrine, Defendants argue that Roberts was not a representative of Myers or his counsel such that the privilege applies to his work product, particularly because Myers listed Roberts as an acquaintance and a witness in his initial disclosures. (*Id.* at 7-8). Defendants add that the Power of Attorney and Research Services Agreement do nothing to change this fact because, the Power of Attorney does not indicate that Roberts was working at the behest of Myers' counsel and because the Research Services Agreement does not allow Roberts to represent Myers. (*Id.*). But even if the work product doctrine did apply, Defendants argue that Myers is improperly

attempting to use it as both a sword (by having produced some communications between him and Roberts) and a shield (by refusing to produce others) in such a way that Defendants have a substantial need for the documents to fairly present their defense. (*Id.* at 9).[1] Defendants also assert that, if the work product doctrine does apply, then Myers waived it by disclosing certain portions of his communications with Myers. (*Id.* at 9-10). Additionally, Defendants argue, if Roberts testifies about any portion of Myers' communications, that waives the work product doctrine protections over the communications themselves. (*Id.*).

Regarding the journalist privilege, Defendants assert that the privilege does not apply to protect the communications because Myers cannot establish that his intent was to use the communications between him and Robert to disseminate information to the public. (*Id.* at 10-11). Defendants argue that Myers and Roberts, although journalists by profession, were not communicating with the intent of pursuing a story, but with the intent of pursing a lawsuit. (*Id.*). Defendants add that neither Myers nor Roberts were acting as journalists in their professional capacities as required by Nevada's journalist privilege because they were working to collect information to help Myers' case, not to publish a story. (*Id.*).

In response, Myers claims that the attorney-client privilege, work product doctrine, and journalist privilege each apply to protect his communications with Roberts. (ECF No. 37). He explains that Roberts properly serves different roles in his case given his involvement with it. (*Id.* at 3). Myers asserts that Roberts is a lay witness because, on the evening of Myers' arrest, Myers and Roberts were both at a function together and, afterwards, Myers followed Roberts to Roberts' home to pick up camera equipment. (*Id.* at 3-4). When City Marshals pulled Myers over, Myers

---

[1] Defendants also assert that the Nevada Rules of Professional Conduct that prevent a lawyer from acting as an advocate at a trial where the lawyer is likely to be a necessary witness should apply to preclude Roberts from being categorized as some kind of advocate to avoid disclosing his communications, while he is also a necessary witness. (ECF No. 34 at 9). It is not clear to the Court that Roberts is acting as an advocate for Myers in this litigation such that the Nevada Rules of Professional Conduct would restrain him from being a witness. And beyond claiming that Myers is attempting "to have [Roberts] categorized as some sort of advocate to avoid disclosing certain communications," Defendants offer no case law or legal basis for the Court to exclude Roberts as a witness at this stage and in deciding the instant motion to compel. So, the Court does not reach this issue.

called Roberts, the audio of which call was produced in this case. (*Id.* at 3-4). Roberts returned to the scene and is seen on City Marshals' body-worn camera footage. (*Id.*). Myers therefore asserts that Roberts' knowledge as a lay witness begins and ends on January 9, 2025. (*Id.*).

Myers also asserts that Roberts is a retained investigator in this case. (*Id.*). After Myers was arrested and detained, he sought to research why the City Marshals were pulling people over outside of their jurisdiction and to explore a lawsuit against them. (*Id.*). To do this, he enlisted Roberts and Roberts signed the Power of Attorney and Research Services Agreement[2] to formalize their relationship and so that Roberts would be compensated for his efforts. (*Id.*). Myers points out that the Research Services Agreement even describes Roberts' duties as "preparing detailed reports or presentations of research findings as requested by [Myers] or [Myers'] legal counsel" and "[c]ollaborating with [Myers'] legal team to identify additional research needs and prioritize tasks." (*Id.*). Myers also points out that he had entered into the Research Services Agreement after he retained his attorney—Adam Breeden—on February 26, 2025, and that Roberts was on emails between Myers and his counsel regarding the case in Roberts' capacity as a "legal researcher hired to assist Mr. Breeden." (*Id.*). Myers admits that choosing a legal researcher who is also a witness "muddies the waters somewhat" but asserts that it was not improper. (*Id.* at 5). Myers also points out that Breeden has a separate attorney client relationship with Roberts, who retained Breeden in January of 2026 to represent him in a First Amendment case. (*Id.*).

Myers argues that the work product doctrine applies to protect the communications between him and Roberts because they were in anticipation of litigation and because Roberts is his representative even if Roberts is not a lawyer. (*Id.* at 7). Myers adds that Defendants have failed to show a substantial need for the documents or that they cannot obtain their equivalent elsewhere. (*Id.*). Myers argues that he did not waive the work product doctrine's protections by disclosing certain documents or listing Roberts as a potential witness. (*Id.*). Myers points out

---

[2] Myers explains that although the Research Services Agreement was not signed until May 27, 2025, the parties acknowledged that it was retroactive to work done since January 9, 2025. (ECF No. 37 at 4).

that he was required to disclose Roberts as a witness because Roberts was indeed a witness to the incident and asserts that he did not *intentionally* waive any work product protections. (*Id.* at 7-8).

Regarding the attorney-client privilege, Myers asserts that the privilege applies to communications involving third parties like paralegals, researchers, and experts if the communications were made for the purpose of obtaining legal advice, like Myers asserts the communications were here. (*Id.* at 8-9). Myers adds that he is not attempting to wield the work product doctrine as a sword and a shield, but that his disclosure of Roberts as a witness and retention of communications as privileged is proper under the rules and circumstances. (*Id.*). Finally, Myers offers to submit the documents at issue in camera so that the Court can determine if they are privileged. (*Id.* at 5-6).

In reply, Defendants argue that Myers' shifting explanations regarding Roberts' relationship to this case indicate that Myers is indeed trying to use any applicable privilege as both a sword and a shield. (ECF No. 41 at 2). Defendants assert that Myers used his response to claim for the first time that Roberts has a separate attorney-client relationship with Breeden and to argue that the relationship somehow protects Roberts' communications further. (*Id.*). Defendants assert that it is unethical for Myers to have hired a percipient witness as an investigator. (*Id.*). Defendants also claim that in camera review is unnecessary here because Myers has not made the threshold showing that any privilege applies to the documents, so the Court need not go through those documents to determine what portions of those documents are privileged. (*Id.* at 2-3). Defendants reiterate that Myers has waived any privilege over the communications because of Myers' use of Roberts as a percipient witness (which Defendants argue Myers was not required to do, instead they argue that Myers only had to disclose witnesses he would use to support his claims) and because of Myers' production of certain of his and Roberts' conversations. (*Id.* at 3-4).

Responding to Myers' argument that Defendants did not show a substantial need for the communications, Defendants assert that they were not required to make that showing because they argue that the materials are not protected by the work product doctrine at all. (*Id.*). Regarding Myers' argument that he did not intentionally waive work product protections,

Defendants argue that the intent contemplated by Federal Rule of Evidence 502 is not whether a party intends to waive the privilege, but whether a party intentionally produced documents. (*Id.*). Here, Defendants argue that Myers intentionally produced supposedly privileged communications in order to help his case and therefore, waived any supposed privilege over other communications. (*Id.* at 5). Regarding Myers' argument that Roberts' inclusion on emails did not waive the attorney-client privilege, Defendants assert that Myers has not demonstrated that Roberts is an agent of his counsel like a paralegal, expert, or consultant would be. (*Id.*). And any argument that Roberts is a consultant or expert is farfetched, Defendants argue, because consultants and experts are not also properly disclosed as fact witnesses. (*Id.*). Defendants argue that Myers has failed to respond to Defendants' arguments regarding how the journalist privilege does not apply and has therefore waived that argument. (*Id.*).

### B. Discussion.

When a party fails to respond to requested discovery, the party propounding the discovery may move to compel that discovery. Fed. R. Civ. P. 37(a). Nonetheless, broad discretion is vested in the district court to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Parties are permitted to seek discovery of any nonprivileged matter that is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party seeking to avoid discovery bears the burden of explaining why discovery should be denied. *U.S. E.E.O.C. v. Caesars Entertainment*, 237 F.R.D. 428, 432 (D. Nev. 2006).

### 1. The journalist privilege.

The Ninth Circuit has recognized a qualified privilege for journalists. *See Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). That privilege protects facts acquired by a journalist in the course of gathering news and protects journalists against compelled disclosure in all judicial proceedings. *See id.* "[T]he critical question for deciding whether a person may invoke the journalist's privilege is whether she is gathering news for dissemination to the public." *Id.* at 1293.

Here, Myers has asserted the journalist privilege in withholding his communications with Roberts. However, other than describing himself and Roberts as journalists in his response to

Defendants' motion, Myers does not advance any argument that the journalist privilege protects the communications. So, the Court does not find that the journalist privilege protects the communications from disclosure.

### 2.    The attorney-client privilege.

"The attorney-client privilege is the oldest of the privileges for confidential communications" and "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted). In cases involving federal questions, the Court applies federal law regarding attorney-client privilege. *See* Fed. R. Evid. 501; *see also Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005) (same for pendent state law claims). "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)). Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed. *Id.* Typically, an eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Ruehle*, 583 F.3d at 607-08 (citing *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 n. 2 (9th Cir. 1992)). Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject. *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). But the attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice. *Id.* "If the advice sought is not legal advice, but, for example, accounting advice from an accountant, then the privilege does not exist." *Id.*

In Myers' privilege log, he identifies each of the responsive emails he has withheld as being protected by the attorney-client privilege. And indeed, Myers' counsel Adam Breeden is a party to each of the email communications that Myers has withheld. However some of the emails do not include the client asserting the privilege—Myers—at all.[3] And Myers does not explain why these emails are privileged if they are not between him and his attorney. So, the Court finds that the emails that do not include Myers are not protected by the attorney-client privilege.

Some of the emails add third parties beyond just Roberts. Some include investigative reporter Darcy Spears.[4] Myers has argued that Spears is a member of the press, but that does not mean that the emails including her are privileged. And Myers provides no argument that either he or his counsel retained Spears for the purpose of assisting his counsel in providing legal advice. So, the emails with Spears are not protected by the attorney-client privilege. Some of the emails also include third parties like Chip Siegel, Tony Sgro, Joshua Judd, Paola Armeni, and Vincent Savarese.[5] Myers provides no explanation regarding who these individuals are or why emails including them may be privileged. While the Court is generally aware that these third parties are lawyers, that alone is not enough to establish that their inclusion on the emails does not waive Myers' privilege with Breeden. This is particularly true because Myers does not argue that these third party attorneys were engaged to assist Myers' counsel in providing legal advice to Myers. So, these emails are not protected by the attorney client privilege.

The remainder of the emails are between Myers, Roberts, and Breeden and his law firm. [6] Myers has not carried his burden of showing that Roberts' inclusion on these emails does not waive the attorney-client privilege. Myers' assertion that he hired Roberts as an investigator to

---

[3] These emails are numbered MYERS 2156, 2173, 2187, 2264-65, 2266-67, 2268-70, 2274, 2275, and 2278-87.

[4] These emails are numbered MYERS 2101, 2102-103, 2111-149, 2188-98, and 2199.

[5] These emails are numbered MYERS 2156, 2157-60, 2161-164, 2165-168, 2180-181, 2182-183, 2200, 2202-222, 2227-228, 2234-260, 2289, and 2290.

[6] Neither Myers' response nor the privilege log make it clear who on these emails is a member of Breeden's law firm. However, the Court can determine from the filings and the docket that Alyssa Piriano is an attorney at Breeden's firm and that Kirsten Brown is a paralegal.

assist in this case and granted him a power of attorney does not, by itself, establish that communications between him, Roberts, and counsel are privileged.  And Myers' remaining arguments are not fully developed.

Myers cites three cases for the proposition that "the attorney-client privilege in the Ninth Circuit extends to communications involving paralegals, researchers, experts, and other third parties involved in preparing a case, provided that the communications are made for the purpose of obtaining legal advice and are necessary for effective consultation."  (ECF No. 37 at 8-9) (citing *United States v. Sanmina Corp.*, 968 F.3d 1107 (9th Cir. 2020); *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011); and *Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF (RZX), 2015 WL 13388227 (C.D. Cal. Aug. 21, 2015)).  But Myers does not argue that the emails between him, his counsel, and Roberts were made for the purpose of Myers obtaining legal advice.  This is a critical part of the Court's analysis, as each of the cases Myers cites indicates. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1118-19 (9th Cir. 2020) (finding that the district court did not err in finding that a company waived the attorney client privilege when it provided privileged memoranda to an outside law firm not for legal advice, but for a non-legal valuation analysis); *see United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (explaining that, while "[t]he attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice," "[i]f the advice sought is not legal advice, but, for example, accounting advice from an accountant, then the privilege does not exist."); *see Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF (RZX), 2015 WL 13388227, at *5 (C.D. Cal. Aug. 21, 2015) (explaining that "[t]he vital element to the assertion of the privilege in the case of an attorney's agent—beyond the basic elements of the privilege—is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer*") (emphasis in original).

Myers otherwise provides no arguments that would aid the Court in its analysis.  Myers does not explain *why* he required a third-party researcher to pursue his case or why he hired Roberts specifically.  This explanation is particularly absent given Myers' own claim to be a journalist, in which profession Myers likely conducts research.  This explanation is also absent

given the fact that most attorneys conduct research and investigations on their own or using their own vendors. And other than the bare assertion that Roberts acted in the capacity of a "legal researcher hired to assist Mr. Breeden," Myers has provided no evidence or argument that Breeden had any research or investigatory agreement with Roberts or used used Roberts' research to provide Myers with legal advice. Without more, Myers has not carried his burden of showing that the attorney-client privilege protects the communications between him and Roberts that he has withheld in his privilege log.

### 3.   The work product doctrine.

The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir.1989). Such documents may only be ordered produced upon an adverse party's demonstration of "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). The Supreme Court has concluded that the work product doctrine applies to documents created by investigators working for attorneys, provided the documents were created in anticipation of litigation. *United States v. Nobles*, 422 U.S. 225, 239 (1975). In reaching this conclusion, the Supreme Court stated:

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*Id.* at 238–39.

The Ninth Circuit has previously held that "to qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by

or for that other party's representative.'" *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780–81 (9th Cir. 1989) (quoting Fed. R. Civ. P. 26(b)(3)); *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 906–07 (9th Cir. 2004). In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the "because of" test is used. *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena*, 892 F.2d at 907). Dual purpose documents are deemed prepared "because of" litigation if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. *Id.* "In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Id.* (internal citations and quotations omitted).

"The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (quoting *United States v. Nobles*, 422 U.S. 225, 239 (1975)). Similar to the waiver of the attorney-client privilege, a litigant can waive work-product protection to the extent that he reveals or places the work product at issue during the course of litigation. *Id.* Work product protections are not as easily waived as the attorney-client privilege. *See id.* at 1120. The Ninth Circuit has explained that "[w]hile the attorney-client privilege is designed to protect confidentiality, so that any disclosure outside the magic circle is inconsistent with the privilege, work-product protection is provided against 'adversaries,' so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." *Id.* (internal citations and quotations omitted).

The protection offered by the work product doctrine can be waived with respect to matters covered in testimony or if a party produces selective portions of communications otherwise protected by the work product doctrine to their adversary. *See Nobles*, 422 U.S. at 239-40 (finding that, where a party called an investigator as a witness, the party waived work product protections with respect to the matters covered in the investigator's testimony); *see Hernandez v.*

*Tanninen*, 604 F.3d 1095, 1098, 1100-1101 (9th Cir. 2010) (finding that a party waived work product protection over certain communications between his former attorney and a third party witness when that party produced certain of the communications between the attorney and the witness and notes of those conversations to his adversary).  However, production of materials protected by the work product doctrine to an adversary constitutes a waiver of the privilege "only as to that subject." *Hernandez*, 604 F.3d at 1100.  So, in determining whether a party has waived the work product protections over certain documents or communications, the Court must construe the waiver narrowly so that it does not find waiver of documents or communications that are not about the matters actually disclosed.  *See id.* at 1100-1101.

Here, as a preliminary matter, it appears that the work product doctrine may protect the communications between Myers and Roberts outlined in the privilege log.  Myers has produced some evidence in the form of the Power of Attorney and the Research Services Agreement that he has retained Roberts as his investigator and researcher and, in some regard, as his representative.  And given the fact that the communications at issue all involved Myers' counsel in this litigation, it appears that the communications were related to this litigation.

But the Court is still missing critical information to make a work product determination.  Myers does not explain why he hired Roberts or whether his counsel relied on Roberts' services and if so, how.  And while Myers asserts broadly that he retained Roberts to assist him in pursuing his claims, Myers does not explain whether each of the withheld communications was created "because of" the litigation at issue.  This explanation is particularly absent given Myers' assertion that both he and Roberts are members of the press and that Spears—another member of the press—was also on certain of the communications.  So, it appears that certain of the communications may have been created for a purpose other than litigation, such as to prepare a news story.

On the other hand, even if the Court were to consider all of the withheld communications to be protected work product, Defendants have not provided sufficient information for the Court to conduct a waiver analysis.  Defendants argue that by producing the recording of a phone call between himself and Roberts and by producing certain of his communications with Roberts,

Myers has waived work product protections with respect to *all* of his communications with Roberts. But the Court must construe waiver narrowly and can only find that work product protections are waived as to the *subject* of the communications produced. Defendants have not provided the Court with the documents and audio recording that Myers has produced or argued what the scope of the waiver should be given the content of those communications.

Additionally, while the parties disagree over whether to submit the documents in camera for the Court's review, the Court finds that it must review the communications at issue to determine whether the work product doctrine properly applies to protect them. The Court must also review the communications that Myers has already produced to determine whether and to what extent Myers has waived work product protections over the withheld documents. Without these documents, the Court cannot conduct its analysis.

Ultimately, based on the arguments before it, the Court is not equipped to determine whether the communications withheld are protected by the work product doctrine. The Court is also not equipped to determine whether Myers has waived the work product protection over these documents. So, the Court denies Defendants' motion to compel.

The Court does so without prejudice. Now that the issue is narrowed, the parties may file a renewed motion on the limited question of whether the withheld communications are protected by the work product doctrine. If they choose to do so, Myers must submit the withheld communications to the Court in camera. And the parties must also submit the communications and audio recording that Myers has already produced in connection with the renewed motion.

///

///

///

**IT IS THEREFORE ORDERED** that Myers' motion for an order to show cause (ECF No. 33) is **granted in part and denied in part.** It is granted in part regarding Myers' request that the Court set a show cause hearing. It is denied in part in all other respects.

**IT IS FURTHER ORDERED** that a show cause hearing is set for **September 1, 2026, at 1:30 p.m.** in Las Vegas Courtroom 3A before the Honorable United States Magistrate Judge Daniel J. Albregts. Vicente Buchanan is ordered to appear and show cause why the undersigned magistrate judge should not certify the facts of Buchanan's failure to respond to Myers' subpoena dated August 18, 2025, to the Honorable United States District Judge Gloria M. Navarro under 28 U.S.C. § 636(e)(6)(B)(iii).

**IT IS FURTHER ORDERED** that Myers must personally serve a copy of this order on Buchanan and file a proof of that service on or before **August 4, 2026.**

**IT IS FURTHER ORDERED** that Defendants' motion to compel (ECF No. 34) is **denied without prejudice** to the parties filing a renewed motion(s) on the narrowed issue of whether the withheld communications are protected by the work product doctrine. Any renewed motion must be accompanied by an in camera submission of those communications to the Court and attach the communications that Myers has already produced to Defendants.

DATED: July 15, 2026

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE