JEFFRY M. DOROCAK
City Attorney
Nevada Bar No. 13109
By: NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
By: PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
(702) 229-6629
(702) 386-1749 (fax)
Email: ngarcia@lasvegasnevada.gov
Email: pmata@lasvegasnevada.gov
Attorneys for DEFENDANTS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DEREK MYERS, on behalf of himself and
all others similarly situated,

            Plaintiff,

    vs.

CITY OF LAS VEGAS, a political
subdivision of the state of Nevada; JASON
BROOKS, individually; SERGIO GUZMAN,
individually; and JASON POTTS,
individually,

            Defendants.

CASE NO. 2:25-cv-0562-GMN-DJA

## DEFENDANTS' RENEWED MOTION TO COMPEL

Defendants CITY OF LAS VEGAS, JASON BROOKS, SERGIO GUZMAN, and JASON POTTS ("Defendants"), through their attorneys of record, JEFFRY M. DOROCAK, City Attorney, NECHOLE GARCIA, Chief Deputy City Attorney, and PAUL MATA, Deputy City Attorney, hereby renews its motion to compel the Plaintiff to produce communications requested by Defendants in their Requests for Productions. Defendants bring this motion after meeting and conferring with Plaintiff on this matter pursuant to Rule 37, LR 26-6(c) and LR IA 1-3(f). This renewed motion is based upon the pleadings and papers on file herein, the following points and authorities, and any oral argument that the Court may entertain.

## DECLARATION OF COUNSEL

Nechole Garcia, being duly sworn, states:

1. I am an attorney licensed to practice law in Nevada. I am over the age of 18, have first-hand knowledge regarding the matters discussed in this declaration, and am competent to make this declaration.

2. I represent Defendants City of Las Vegas, Jason Brooks, Sergio Guzman, and Jason Potts in this litigation.

3. On January 5, 2025, at approximately 11:00 a.m., I telephonically met and conferred as required by LR 26-6(c) with Attorney Adam Breeden, who is counsel for Plaintiff.

4. During the meet and confer, I followed up with Mr. Breeden regarding Plaintiff's response to Defendants' Request for Production ("RFP") No. 12, which seeks all communications pertaining to the matter set forth in the Amended Complaint between the Plaintiff and named witness Doug Roberts.

5. In a prior phone conversation and email dated December 1, 2025, which is attached as Exhibit A, Mr. Breeden represented that he had additional communications but was withholding them under the attorney-client, work product and journalist privileges. Ex. A, pp. 4-5.

6. During the January 5, 2025 meet and confer, counsel for both parties discussed their positions relative to the communications, with Mr. Breeden asserting that certain communications were privileged and could be withheld, while I asserted that Defendants were entitled to all communications as the disclosure of Roberts as a witness waived any privileges.

7. I informed Mr. Breeden that his prior objections to RFP No. 12 did not include objections based on work product or first amendment grounds. He agreed to update the RFP response to reflect those privileges, as well as provide a privilege log.

8. I informed Mr. Breeden that since the parties disagreed on whether the documents were protected, I would seek court intervention to obtain the documents.

. . . .

9. On January 21, 2026 Mr. Breeden produced the updated response to RFP No. 12 which contained objections based on work product and journalist privileges, along with a privilege log.

I declare under the penalty of perjury that the foregoing is true and correct.

DATED: July 29th 2026.

JEFFRY M. DOROCAK
City Attorney


By:    /s/ *Nechole Garcia*
NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
Attorneys for DEFENDANTS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is a civil rights lawsuit brought by Plaintiff Derek Myers ("Plaintiff" or "Myers"), where he alleges Defendants violated his civil rights by arresting him for DUI on January 9, 2025.[1] At the onset of discovery, Plaintiff disclosed Doug Roberts ("Roberts") as an "acquaintance" with discoverable information regarding his interactions with Myers. Myers even produced some of those communications for Defendants. Yet, when Defendants sought the rest of their communications, Myers claimed they were protected by the work product and qualified journalist privileges. In so doing, Myers tries to have it both ways: disclose communications he believes helps his case, while withholding other communications as privileged. Thus, the City filed a Motion to Compel with this Court. ECF No. 34. This Court denied the Motion without prejudice. ECF No. 55. However, the Court permitted the parties to file a renewed motion on the narrowed

---

[1] On June 9, 2025, Myers was criminally charged with Driving Under the Influence of a Controlled Substance and Reckless Driving as a result of this incident. *City of Las Vegas v. Dereck Myers,* Case No. 25-001674.

issue of whether the withheld communications are protected by the work product doctrine. ECF No. 55 at 17:12-16. Defendants continue to maintain that no work product privilege applies here. However, even assuming *arguendo* that the work product privilege applied, Myers waived the privilege when he disclosed Roberts as a witness and produced some of their communications to Defendants. As this Court will see by reviewing the communications, the subject of the communication is the marshal's authority to stop Myers, which is the very subject of this lawsuit. Thus, any work product privilege as to that subject has been waived, and this Court should grant Defendants' motion to compel.[2]

## II.    **BACKGROUND**

On January 9, 2025, City marshals were traversing the freeway when a vehicle approached from the rear and began aggressively tailgating the marshals. The vehicle then pulled onto the freeway shoulder and proceeded to speed past the marshals. The marshals conducted a traffic stop and determined that the vehicle was being driven by Myers. Right after the marshals pulled over Myers, he called Roberts, who was also driving at the time. Their conversation was recorded by Roberts' dash camera. Ex. B. There, Myers asked Roberts what authority the marshals had to stop him on the freeway. *Id.* Roberts told Myers that the marshals had no authority on the freeway. *Id.* On the call, you can hear Myers begin to argue with the marshals that they have no authority. *Id.* At that point, Roberts urged Myers to just take a ticket and said that it would probably be dismissed by the prosecutor. *Id.* However, Myers responded that the marshals could take him to jail. *Id.* Then he told Roberts, "I told you I was going to make new case law out here." *Id.* This recording raises questions about other conversations between Myers and Roberts regarding marshal jurisdiction and Myers long-standing desire to initiate a lawsuit against Defendants.

True to his word, Myers initiated this lawsuit against Defendants. ECF No. 1. Ultimately, the parties began to conduct discovery. On June 26, 2025, Plaintiff produced his Initial List of Disclosures and Witnesses Pursuant to Rule 26(a)(1). Ex. C. There, Myers listed Roberts as a witness. *Id.* at 4:15-18. Under "Description of Testimony," Myers provided, "[t]he witness is an

---

[2] The parties subsequently agreed to a discovery stay with the caveat that any discovery already issued could be completed. ECF No. 30. The RFP at issue in this matter was propounded before the stay so it is appropriate to bring a motion to compel.

**acquaintance** of Plaintiff Derek Myers and will testify as to his **interactions with Myers** and the marshals/NHP and all other matters of which he has knowledge." *Id.* (emphasis added).[3] Thus, Myers identified Roberts as an acquaintance, not as a representative or a journalist. Moreover, Myers asserted that Roberts has discoverable information pertaining to their interactions. *Id.* Myers also voluntarily produced some of their interactions. Specifically, Myers disclosed a phone call between Roberts and himself that occurred in the moments after Myers was stopped by the marshals on January 9, 2025. Ex. B. As described above, Myers and Roberts discussed the stop and marshal authority – the matters pertaining to the complaint – in some detail. *Id.*

Defendants sought to pursue further communications between Myers and Roberts as well as other relevant information, so it issued Requests for Production ("RFP") to Myers on August 14, 2025. RFP #12 sought production of "any and all communications between you, Derek Myers, and Doug Roberts pertaining to the matters alleged in this matter's pleadings." Ex. E at 6:19-20. On October 14, 2025. Myers responded by objecting on the basis of the request being overly broad, vague, and unduly burdensome. Ex. E at 6:22-23. Myers also indicated he may not have all communications, as he objected to the requests "to the extent they seek documents not in Plaintiff's possession, custody or control." *Id.* at 6:23-25. Objections notwithstanding, Myers directed Defendants to his previously disclosed communications but provided nothing else. *Id.* at 6:25-26. Myers made no privilege-based objections at that time.

**A. Myers subsequently asserts journalist and work product privileges.**

Since part of Myers' objection indicated that some of the communications were not in his custody or control, Defendants sought to obtain them through a subpoena duces tecum to Roberts. Ex. F. It was the issuance of that subpoena that prompted Myers, for the first time, to assert work product and journalist privileges.[4] The parties' counsel then engaged in a series of telephone discussions where they discussed, among other things, their relative positions on the communications between Myers and Roberts. The final discussion was on January 5, 2025, where the parties continued to disagree as to whether the documents were protected. Defendants gave

---

[3] This description of Roberts remains unchanged in Myers' most recent supplemental disclosure, dated January 21, 2026. Ex. D at 6:6-9.

[4] Roberts hinted at those privileges in his response to the subpoena. Ex. G.

Myers an opportunity to update his response to RFP #12 to include the asserted privileges, and informed Myers that they would seek court intervention. Myers updated his response to RFP #12 on January 21, 2026. Ex. H. The updated portion of Myers' objection read:

> This Request also seeks documents and materials prepared in anticipation of litigation and for trial and is therefore protected from disclosure by the work-product doctrine under Fed. R. Civ. P. 26(b)(3). Plaintiff further objects to the extent this Request seeks documents and materials protected by the qualified journalist's privilege, including unpublished newsgathering materials, editorial processes, and information obtained in the course of reporting. Disclosure would intrude upon constitutionally protected newsgathering activities. Such information is also protected from disclosure by NRS 49.275.

Ex. H at 6:25-7:6.

Myers also produced a privilege log itemizing emails between himself, his counsel, Roberts, and other parties. Ex. I. He also produced some social media communications between himself and Doug Roberts. Ex. J. Interestingly, Myers also produced two signed agreements that seem to be the basis for his work product objection. The first was a Power of Attorney ("POA") signed by Myers and Roberts. Ex. K. The POA took effect on January 14, 2025, and gave Roberts power to "institute, maintain, defend, compromise, arbitrate or otherwise dispose of, any and all actions, suits, attachments or other legal proceedings for or against" Myers. Ex. K at p. 1. It also gave Roberts power of attorney for public records requests until August 1, 2025. *Id.* at p. 2. The second legal document Myers produced was a "Research Services Agreement" between Myers and Roberts dated March 27, 2025. Ex. L. That agreement authorized Roberts, among other things, to conduct public records requests, perform video documentation, investigate and provide background information related to Myers' suit against Defendants. *Id.*

Thus, during the course of discovery, Myers has provided contradictory messages about the nature of his relationship with Roberts. In his disclosures, he identifies Roberts as merely an acquaintance who will testify about their interactions. Myers even produced communications where he and Roberts discuss the January 9, 2025 incident. However, once Defendants sought all communications between Myers and Roberts, Myers claimed that they are shielded by the work product privilege.

**B. This Court allows the parties to file a Renewed Motion to Compel**

On July 15, 2026, this Court issued an order regarding Defendants' motion. ECF No. 55. There, the Court found that the journalist and attorney client privileges do not apply. *Id*. at 9:2-3, 13:5-7. However, the Court also found it lacked enough information to determine whether the work product doctrine applies, and if so, whether it has been waived. *Id*. at 17:12-16. The Court denied the motion with prejudice but granted the parties leave to refile a renewed motion that included the previously disclosed recordings and documents. *Id*. It also required Myers to submit the withheld records for an in camera review. *Id*.

**III.    LEGAL STANDARD**

Federal Rule 26 permits a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b). The relevancy standard under this rule is broadly construed. *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-00772-GMN-NJK, 2016 WL 3353935, at *3 (D. Nev. June 10, 2016) (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325-26 (Fed. Cir. 1990)). Indeed, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). When a party refuses to produce relevant, non-privileged discovery, then the opposing party may move for an order compelling discovery. FED. R. CIV. P. 37(a). That motion must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). The local rules for the District of Nevada also require that parties meaningfully meet and confer before filing the motion. LR 26-6(c); LR IA-3(f).

A court has broad discretion when deciding a motion to compel. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

**IV.    ARGUMENT**

At the outset of discovery Myers disclosed Roberts as a witness and disclosed some of their communications. However, Myers later asserted that the work product privilege makes his communications with Roberts confidential. The work product privilege does not exist because

Roberts is not Myers' attorney nor his representative. Ultimately, Myers' selective assertion of the work product privilege amounts to an attempt to use it as both a sword and a shield. Such use is impermissible. Therefore, this Court should grant Defendants' motion to compel.

**A. There is no work product privilege.**

Rule 26(b)(3) protects "the mental impressions, conclusions, opinions, or legal theories **of a party's attorney or other representative** concerning the litigation." FED. R. CIV. P. 26(b)(3)(B) (emphasis added). Moreover, "to qualify for protection against discovery under Rule 26(b)(3), documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation and or for trial,' and (2) they must be 'prepared by or for [the] party [seeking the protection] or by or for that … party's **representative**." *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (emphasis added). Courts have interpreted "attorney or other representative" to mean either the party's attorney or a person working for the attorney who assists in compiling materials in anticipation of litigation. *United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (holding that the work product doctrine protects materials "prepared by agents for the attorney as well as those prepared by the attorney himself.")

Here, Roberts is not and has not ever been identified as a representative of Myers, or an agent of Myers' counsel. In fact, in his initial and supplemental disclosures, Roberts was identified as <u>merely an acquaintance</u> of Myers who will testify as to his interactions with Myers. The entire purpose of providing initial disclosures is to identify individuals with "discoverable information … that the disclosing party may use to support its claims or defenses." *See* FED. R. CIV. P. 26(a)(1)(A)(i). Thus, the act of listing Roberts as a witness was a concession that Roberts is not Myers' representative and that their interactions are discoverable and not privileged. At no point has Myers ever amended his disclosure to reflect that Roberts represents him in some way. Nor has Myers represented that the communications between himself and Roberts were at the behest or direction of his counsel; in other words, that Roberts is an agent of his counsel. Indeed, Myers has produced nothing indicating that Roberts is his representative in this litigation.

Defendants anticipate that Myers will point to the POA giving Roberts' authority to handle claims on his behalf as proof of Myers' "representation." However, this document does not make

Roberts a representative of Myers within the meaning of Rule 26(b)(3). Even though the POA calls Roberts his "attorney-in-fact," Roberts is not a licensed attorney representing Myers in this case, nor has Myers produced any evidence that Roberts is working at the behest of his licensed counsel. Moreover, nowhere in the POA is Roberts designated as an agent of Myers' counsel. Finally, the Research Agreement between Myers and Roberts does not shield their communications either. The Research Agreement merely allows Myers to conduct research on behalf of Myers; it does not permit Roberts to represent Myers in this litigation.

**1. Myers cannot use the work product privilege as both a sword and shield**.

The position Myers asserts to withhold communications – that Roberts is his representative, and their communications are work product – directly contradicts Myers' disclosure of Roberts as an acquaintance in possession of discoverable information. Moreover, Myers has already released certain relevant communications between himself and Roberts. Specifically, Myers produced telephone communications with Roberts where they discuss the events set forth in the complaint. Ex. B. Thus, it is clear that Myers seeks to use certain communications as a sword in his case, while conveniently shielding other information under the cloak of the work product doctrine. However, use of the work product doctrine as a sword and shield is prohibited due to the lack of fairness it presents to the opposing party. *Lambright v. Ryan*, 698 F.3d 808, 823 (9th Cir. 2012) (citing *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.")

Nevada courts have also recognized that it violates the principles of fundamental fairness when a party uses the work product privilege as a sword and shield, because it "deprive[s] the opposing party the opportunity to test the legitimacy of that claim." *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp. 2d 1084, 1092 (D. Nev. 2003). Here, permitting Myers to selectively withhold communications with Roberts unfairly prejudices Defendants, as it makes Myers the arbiter of what information can be disclosed and what can be withheld. Nothing prevents Myers from releasing communications he believes is beneficial while withholding information he perceives as detrimental. Indeed, "parties should not be able to selectively disclose privileged

communications they consider helpful while claiming privilege on damaging communications relating to the same subject." *Id.* at 1093. Defendants cannot adequately defend this case when they are prevented from getting communications or other evidence from a disclosed witness.

Finally, it is also noteworthy that the Nevada Rules of Professional Conduct prohibit a lawyer from "acting as an advocate at a trial in which the lawyer is likely to be a necessary witness." NRPC Rule 3.7(a). The purpose of this rule is to prevent the lawyer from confusing and prejudicing the jury by appearing as both witness and advocate. *DiMartino v. Eighth Judicial Dist. Court ex rel. County of Clark*, 119 Nev. 119, 122, 66 P.3d 945, 947 (2003). Indeed, this rule protects the integrity of the judicial proceeding because the lawyer may not "argue his own veracity to a court or other body." *Id.* While Roberts is not a lawyer, Myers nonetheless attempts to have him categorized as some sort of advocate to avoid disclosing certain communications. It would be prejudicial and confuse the jury to allow Roberts to serve as a witness at trial while also acting as an advocate for Myers. Since Roberts was first identified as a witness, he should be precluded from being categorized as an advocate that can withhold communications due to a nonexistent privilege.

### 2. Myers waived any work product privilege.

Even if a work product privilege exists here, Myers waived it with his disclosures. Indeed, the work product privilege is a qualified privilege that may be waived. *United States v. Sanmina Corp*, 968 F.3d 1107, 1119 (9th Cir. 2020). A party "can waive work-product protection to the extent that he reveals or places the work product at issue during the course of litigation." *Id.* The doctrine of waiver is rooted in the principle of fundamental fairness. *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996). "Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Id.* The act of disclosing privileged communications is what waives the privilege, regardless of the intent of the holder. *Id.* at 341.

. . . .

–10–

Myers' disclosure of Roberts as a witness who would testify about their interactions also served as a waiver of privilege as to their communications. In *United States v. Nobles*, the Court held that a criminal defendant's decision to present his defense investigator as a witness waived work product privilege over the investigator's report "with respect to matters covered in his testimony." 422 U.S. at 239. Likewise, here, Myers' decision to disclose Roberts as a witness who could testify about their interactions served as a waiver of work product as it pertains to their communications about the incident set forth in the complaint.

Production of privileged materials during discovery also serves as a waiver of the right to claim the privilege as to communications about the matter actually disclosed. *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). In *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010), a party's production of an attorney's notes to support his opposition to a motion constituted a waiver of work product privilege over the subject matter of the notes disclosed. Myers' disclosure of communications between himself and Roberts similarly waived any work product privilege as to their communications. Thus, Defendants' motion to compel should be granted.

## V.    CONCLUSION

Myers disclosed Roberts as an acquaintance with discoverable information as to their interactions. He also disclosed some of their interactions. It was only after Defendants sought the rest of the communications that Myers claimed the work product privilege. However, that privilege does not apply here. Roberts is not a representative for purposes of the work product doctrine. Even if he is, Myers waived the work product privilege by disclosing his communications with Roberts regarding the incident. Myers should not be permitted to use that privilege as a sword and

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

a shield by selectively disclosing some communications while withholding others. Accordingly, Defendants respectfully request that this Court grant their Motion to Compel.

DATED this 29th day of July, 2026.

JEFFRY M. DOROCAK
City Attorney


By:    /s/ Nechole Garcia
       NECHOLE GARCIA
       Chief Deputy City Attorney
       Nevada Bar No. 12746
       PAUL MATA
       Deputy City Attorney
       Nevada Bar No. 14922
       495 South Main Street, Sixth Floor
       Las Vegas, NV 89101
       Attorneys for DEFENDANTS