**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
**BREEDEN & ASSOCIATES, PLLC**
376 E. Warm Springs Road, Suite 120
Las Vegas, NV 89119
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DEREK MYERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; SERGIO GUZMAN, individually; and JASON POTTS, individually,<br><br>Defendants. | CASE NO. 2:25-cv-00562-GMN-DJA<br><br>**PLAINTIFF DEREK MYERS'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO COMPEL [ECF NO. 58]** |

Plaintiff Derek Myers, individually and on behalf of all others similarly situated, by and through his counsel of record, Adam J. Breeden, Esq. of Breeden & Associates, PLLC, opposes Defendants' Renewed Motion to Compel (ECF No. 58). Simultaneously with this Opposition, Plaintiff is submitting to chambers for *in camera* review a complete copy of the fifty-five withheld documents, MYERS 002101 through MYERS 002290, together with a Revised and Supplemented Privilege Log attached hereto as **Exhibit 1**. Having reviewed each document individually, it is Plaintiff's position that every one of them is protected by the attorney-client privilege, exempt as attorney work product and trial-preparation material, or both. The renewed motion should be denied.

## I. INTRODUCTION

A party to a lawsuit, and the party's attorney, may hire a researcher or an investigator to assist in preparation of the case. That is not a loophole; it is the ordinary practice of litigation, and Fed. R. Civ. P. 26(b)(3)(A) says so in terms, extending trial-preparation protection to materials

prepared by or for a party or the party's "representative," a category the Rule defines to include the party's "consultant" and "agent." Defendants' renewed motion asks this Court to hold the opposite: that because Douglas Roberts is not a licensed attorney and was engaged by the client rather than by the client's lawyer, nothing he wrote to Plaintiff's counsel about this case is protected. That rule would strip protection from the work of every non-lawyer investigator, researcher, or consultant retained in aid of a civil case.

When this Court denied Defendants' first motion to compel, it did not simply invite a second attempt. It narrowed the dispute to the work-product doctrine and specified what a renewed motion would have to contain: an *in camera* submission of the withheld communications, the communications and audio recording Myers had already produced, and argument addressing "what the scope of the waiver should be given the content of those communications." ECF No. 55 at 16–17. The Court also made preliminary observations that favor Myers, finding that the work-product doctrine "may protect the communications between Myers and Roberts outlined in the privilege log," that the Power of Attorney and Research Services Agreement are evidence that Myers "retained Roberts as his investigator and researcher and, in some regard, as his representative," and that "the communications were related to this litigation." *Id.* at 15. What the Court lacked was document-level information: who the participants were, why Myers hired Roberts, whether and how counsel relied on his work, whether each withheld communication was created because of this litigation, and — on the waiver side — the content of the produced materials measured against the withheld ones. *Id.* at 11, 15–16.

Myers supplies that information here, in the accompanying declarations from Myers, his counsel Breeden, and the investigator/researcher Roberts (**Exhibits 2, 3 and 4**, respectively), in the revised log, and by concurrent *in camera* submission. Defendants supply almost none of it. Their renewed motion is, in substance, their first motion re-filed. On the single issue the Court directed the parties to brief, Defendants offer one conclusory sentence: because the produced recording concerns "the marshal's authority to stop Myers, which is the very subject of this lawsuit," they assert that "any work product privilege as to that subject has been waived." *Id.* at 4. That is not a scope-of-waiver analysis. It is a demand for total subject-matter waiver in a case where the "subject"

is the entire case.

Three defects are fatal to the Motion, and each is independent of the others. **First**, Defendants misread the Rule. They quote Rule 26(b)(3)(B), the opinion work-product subsection, and treat its reference to "a party's attorney or other representative" as defining who may prepare protected material. *Id.* at 8. The operative scope provision is Rule 26(b)(3)(A), which protects materials prepared "by or for another party or its representative (including the party's attorney, *consultant*, surety, indemnitor, insurer, or *agent*)." Consultants and agents are named in the text. **Second**, Defendants have not established the predicate for any waiver: a disclosure of protected material. The two items they offer cannot bear that weight. Def.'s Exhibit B is the real-time cellular telephone call captured on Roberts' dashcam in the minutes after the stop — five days before the Power of Attorney, seven weeks before Myers retained litigation counsel, and nearly three months before this action was filed. Def.'s Exhibit J is a compilation of public posts from Roberts' X account, Bates-numbered ROBERTS 000003 through ROBERTS 000013 and produced by a non-party in response to Defendants' own subpoena. Neither is trial-preparation material; neither was ever protected. **Third**, Defendants still have not attempted the showing Rule 26(b)(3)(A)(ii) requires before ordinary work product may be compelled. Myers raised that omission in opposing the first motion. Defendants answered that they were "not required to make that showing." ECF No. 41 at 4; *see* ECF No. 55 at 8. The phrases "substantial need" and "undue hardship" appear nowhere in the renewed motion.

What remains, once the legal errors are set aside, is a fishing expedition by the Defendants. Defendants tell the Court that the produced recording "raises questions about other conversations between Myers and Roberts regarding marshal jurisdiction and Myers['] long-standing desire to initiate a lawsuit against Defendants." ECF No. 58 at 4. Nothing prevents the City from doing its own work; it employs the officers, holds the records, and can read the same public filings Roberts read. What the City cannot obtain elsewhere, and is not entitled to, is its adversary's investigative file: the record of what Plaintiff's counsel chose to look for, what his researcher found, and what they concluded it meant. The renewed motion should be denied.

## II. CONCURRENT IN CAMERA SUBMISSION AND THE REVISED PRIVILEGE LOG

The Court ordered that any renewed motion "be accompanied by an *in camera* submission of those communications to the Court and attach the communications that Myers has already produced to Defendants." ECF No. 55 at 17. Myers offered *in camera* review in opposing the first motion and complies now. Concurrently with this filing, Plaintiff is delivering to chambers a complete, Bates-numbered set of the fifty-five withheld documents, MYERS 002101 through MYERS 002290. Because Defendants omitted MYERS 001735 through 001740 — the Roberts emails the Court identified as part of Myers' production, *id.* at 3–4 — Plaintiff is also lodging the complete set of materials he produced, so that the Court's comparison of produced against withheld material is not hampered by that gap. Submission for this limited purpose does not waive any privilege or protection. *United States v. Zolin*, 491 U.S. 554, 568–69 (1989); *United States v. Zolin*, 842 F.2d 1135, 1141 (9th Cir. 1988).

Attached as **Exhibit 1** is Plaintiff's Revised and Supplemented Privilege Log. It supersedes the log Defendants filed as their Exhibit I. For each of the fifty-five documents it identifies the date, the Bates range, the author, every "to" and "cc" recipient, the subject line, a description of the withheld content, and the protections asserted, and it supplies a date for the one entry previously logged as undated. It also includes an index identifying each person who appears on any logged communication and that person's relationship to the claim of protection — the precise information the Court found missing. *See* ECF No. 55 at 11 ("Myers provides no explanation regarding who these individuals are or why emails including them may be privileged."). Counsel has reviewed each document. It is Plaintiff's good-faith position, asserted under Rule 26(b)(5)(A), that each withheld document is privileged, exempt, or both, and Plaintiff submits every one of them — including the entries as to which the Court has already expressed reservations — for the Court's independent examination.

## III. WHO THE PARTICIPANTS ARE

The revised log identifies eleven individuals. They fall into five groups, and not one of them is an adversary, a stranger to the representation, or a member of the general public.

**The client.** Derek Myers is the Plaintiff, the proposed class representative, and a working journalist. He is Mr. Breeden's client in this civil action and Mr. Siegel's client in the criminal matter described below.

**Counsel of record and counsel's staff.** Adam J. Breeden, Esq. of Breeden & Associates, PLLC is Plaintiff's counsel of record. Alyssa Piraino, Esq. was an associate attorney at the firm and appears on Documents 48 and 49. Kirsten Brown is the firm's paralegal and appears on Documents 36, 37, 48, and 49. This Court has already determined as much from the docket. ECF No. 55 at 11 n.6. Mr. Breeden is a party to fifty-three of the fifty-five withheld documents; the only two he is not on are Documents 54 and 55, which predate his retention and were sent for the purpose of finding other legal counsel prior to retention of Mr. Breeden.

**The retained researcher and investigator.** Doug Roberts was retained by Myers, and worked at the direction and in coordination with Plaintiff's counsel, to develop the facts of this case. His engagement is documented by a Power of Attorney executed January 14, 2025, ECF No. 58-12, and a Research Services Agreement dated March 27, 2025 with an Addendum dated May 26, 2025 making the term retroactive to January 9, 2025, ECF No. 58-13. He is compensated at an hourly rate payable only out of court-awarded costs and fees or the proceeds of this lawsuit. *Id.* at 6–7. He is also a member of the news media credentialed by the Nevada Legislature. **Exhibit 3**. Functionally, he has served as a compensated investigator and paralegal for Plaintiff and his counsel.

**Myers' other attorneys.** Chip Siegel, Esq. represents Myers in the criminal prosecution the City itself brought arising out of this same traffic stop — *City of Las Vegas v. Myers*, Case No. 25-001674, filed June 9, 2025, as Defendants' own motion recites. ECF No. 58 at 3 n.1. Mr. Siegel appears on ten logged documents (Documents 8–11, 22, 23, 30, 32, 34, and 38). Tony Sgro, Esq. and Joshua D. Judd, Esq. of Sgro & Roger were consulted as prospective civil counsel and later declined the representation on conflict grounds; they appear on Document 54. Paola Armeni, Esq. and Vincent Savarese, Esq. of Clark Hill PLC were contacted for purposes of potential representation of Myers; they appear on Document 55. Each of these individuals is or was a lawyer for Myers, or a lawyer from whom Myers sought representation, on the events at issue in this case. A communication among a client and his own lawyers is not a disclosure to a third person at all.

**A fellow journalist.** Darcy Spears is the Chief Investigative Reporter for KTNV Channel 13, the ABC affiliate in Las Vegas. She appears on five of the fifty-five documents (Documents 1, 2, 5, 28, and 29), each of which involves newsgathering by three journalists — Myers, Roberts, and Ms. Spears — concerning marshal conduct. Those five entries assert the news shield and First Amendment protections in addition to work product. NRS § 49.275; *Shoen v. Shoen*, 5 F.3d 1289, 1292–93 (9th Cir. 1993).

## IV. FACTUAL BACKGROUND

### A. The Stop, and the Two Proceedings It Generated

On January 9, 2025, Las Vegas City Marshals stopped Myers on the freeway, searched his person and his vehicle, arrested him, and detained him for approximately seventeen hours. ECF No. 55 at 1. Myers alleges the Marshals were operating outside their territorial jurisdiction, and that they had done so on many other occasions, giving rise to the class claims in this action. *Id.* Five months later, on June 9, 2025, the City charged Myers in municipal court with offenses arising out of the same stop. ECF No. 58 at 3 n.1. The City is therefore both the defendant here and the prosecuting authority there, a fact that lends particular significance to its demand for communications among Myers, his criminal defense counsel, and their researcher.

### B. Roberts Occupies Three Distinct Positions, and the Motion Collapses Them Into One

First, Roberts is a percipient lay witness to the events of January 9, 2025. He and Myers, both working journalists, had been at a function earlier that evening; Myers was following Roberts to Roberts' home to collect camera equipment before driving to cover the California wildfires when the Marshals pulled him over. Myers telephoned Roberts from the roadside. Roberts returned to the scene and appears on the Marshals' body-worn camera footage. His percipient knowledge begins and ends that night, and much of it is captured on recordings that have been produced. Because Rule 26(a)(1)(A)(i) required it, Myers disclosed Roberts as a witness and described him accurately as an acquaintance who would testify to his interactions with Myers and the marshals.

Second, beginning after the arrest, Myers retained Roberts as a researcher and investigator to develop claims against the City. Roberts confirmed the purpose under oath: shortly after the

January 9 incident, Myers retained him "as a researcher for the purpose of researching claims he may have against the City of Las Vegas and retaining legal counsel on his behalf." ECF No. 58-8 at 2, **Exhibit 2, 3 & 4**. Defendants themselves submitted the Power of Attorney, the Research Services Agreement, the Addendum, and that declaration with their renewed motion.

Third, disclosed voluntarily and not at issue here, Plaintiff's counsel separately represents Roberts in an unrelated First Amendment action, *Roberts v. City of Henderson*, Eighth Judicial District Court Case No. A-26-940710-C. No communication concerning that representation appears on the log, but this is provided for background.

**C. Why Myers Retained Roberts, and How Counsel Used the Work**

The Court identified these gaps precisely, and Myers answers them directly in his prior opposition, ECF No. 55 at 12–13, 15, summarized and more thoroughly explained herein.

**Why a researcher was needed.** Myers was stopped, searched, arrested, and detained for roughly seventeen hours by officers he believed had no jurisdiction to detain him, and he suspected his was not an isolated case. Developing a class case of that kind is not desk work. It required Nevada Public Records Act requests to multiple agencies; identifying, locating, and interviewing other people stopped by these same officers; obtaining and preserving video before it was purged; and monitoring parallel proceedings involving the same marshals. Myers needed a Las Vegas-based investigator with local knowledge, press credentials, and facility with Nevada records practice. Myers himself was not in that position and spends much time out of state. Because Roberts would need to submit records requests and take formal steps in Myers' name, including retaining counsel on his behalf, Myers executed the Power of Attorney, authorizing Roberts to institute and maintain legal proceedings for him and to sign his name on public records requests and subpoenas. *Id.* at 2–3. Myers Decl. Exhibit 2 ¶¶ 10; Roberts Decl. Exhibit 4 ¶¶ 8.

**How counsel used the work.** Myers retained Mr. Breeden on February 26, 2025. The Research Services Agreement followed, and it is a litigation instrument on its face. Its recitals identify this action by caption and case number and state that Myers "requires expert research services to support the litigation." ECF No. 58-13 at 2. Its scope of services requires Roberts to conduct public records requests for information relevant to this lawsuit; document relevant

locations, events, and activities; analyze and summarize records and video "for use by Client and Client's legal counsel"; investigate and compile background on persons and entities pertinent to the lawsuit; prepare "detailed reports or presentations of research findings as requested by Client or Client's legal counsel"; "[c]ollaborat[e] with Client's legal team to identify additional research needs and prioritize tasks"; and provide consultation or testimony regarding the research "subject to approval by Client's legal counsel." *Id.* at 2–3. The engagement runs through the conclusion of this action including appeals; compensation is payable only from court-awarded costs and fees or the proceeds of this lawsuit; and Roberts must deliver all work product to Myers on termination. *Id.* at 3–4, 6–7. The Agreement also imposes an express confidentiality obligation barring disclosure of materials obtained in the engagement without Myers' written consent. *Id.* at 4, 7. The engagement thus has no existence independent of this litigation.

Myers' Counsel did in fact direct, receive, and rely on that work. **Breeden Decl. Exhibit 3**. Counsel used Roberts' research to identify putative class members and potential witnesses, to obtain and evaluate public records concerning marshal activity and jurisdiction, to locate and monitor parallel proceedings against the same officers, to prepare and effect service of subpoenas in this action, and to prepare and support the operative pleading and motions filed in this case. Breeden Decl. Exhibit 3 ¶¶ 6. The revised log corroborates this at nearly every entry. **Exhibit 1**.

### D. The Line Plaintiff Actually Drew, and Why No Waiver Was Intended

Plaintiff did not withhold factual information about Roberts, and no waiver of any kind was intended by what he produced. Roberts was disclosed as a witness. The audio of the roadside telephone call was produced as VIDEO 000001 with no claim of privilege or exemption, precisely because it is factual — a contemporaneous recording of the event itself, made before any engagement existed. The Roberts emails at MYERS 001735 through 001740 were produced for the same reason. A protection was asserted only as to communications generated after Roberts assumed the role of researcher, investigator, and paralegal working with counsel. The Defendants' waiver argument is one of bootstrapping. Myers' counsel has never heard the absurd argument that a party produced certain non-privileged information and thus it waives the privilege or exemption as to documents to which a privilege was claimed. That simply isn't how the process works.

The chronology of the revised privilege log confirms that the line was principled rather than tactical. Myers retained counsel on February 26, 2025. The earliest withheld document, Document 1, is dated February 27, 2025 — the following day — and every one of Documents 1 through 53 postdates counsel's retention. The only two earlier documents are Document 55 (January 18, 2025) and Document 54 (January 24, 2025), and both are communications with lawyers for the purpose of obtaining representation. Nothing from the eyewitness period has been withheld, and nothing withheld comes from the eyewitness period. Counsel also flagged the work-product issue to Defendants' counsel before any privilege log was requested, explaining that "shortly after the January 9 traffic stop my client, Mr. Myers had hired Mr. Roberts to do research and therefore there would possibly be a lot of work product." ECF No. 58-2 at 6.

### E. RFP No. 12, the Court's Order, and What Defendants Filed

Request for Production No. 12 seeks "any and all communications between you, Derek Myers, and Doug Roberts pertaining to the matters alleged in this matter's pleadings." ECF No. 58-6 at 6. Myers objected, produced the responsive unprotected materials, supplemented to assert work product, and served a privilege log. ECF Nos. 58-9, 58-10. On July 15, 2026, the Court denied the first motion to compel without prejudice, holding that it could not determine on the briefing alone whether the work-product doctrine applies or was waived, and authorizing renewed briefing on that narrowed question. ECF No. 55 at 15–17. In response to the requirement that Defendants attach what Myers produced, Defendants filed the dashcam recording (Def.'s Exhibit B, lodged manually) and Roberts' X posts (Def.'s Exhibit J), omitted MYERS 001735 through 001740, and performed no comparison of produced content against withheld content.

## V. GOVERNING LAW

Broad discretion rests with this Court to permit or deny the discovery sought. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The movant bears the initial burden of demonstrating why the response at issue is deficient and why the objections asserted are not justified; conclusory assertions do not satisfy it. *See Fahey v. Wally's Las Vegas, LLC*, No. 2:25-cv-01044-APG-NJK, 2026 LX 88632, 3-4 (D. Nev. Jan. 15, 2026) ("As to each request, [Defendants] provide the full text of the discovery originally sought, Plaintiff's responses, and an explanation as to why they believe

the response is deficient."). A party invoking waiver bears the burden of establishing it. District courts "need not condone the use of discovery to engage in 'fishing expedition[s]'." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004). *See e.g., Exxon Corp. v. Crosby-Mississippi Resources, Ltd.*, 40 F.3d 1474, 1487 (5th Cir. 1995).

Rule 26(b)(3)(A) protects from discovery documents and tangible things prepared in anticipation of litigation or for trial "by or for another party or its representative (including the party's attorney, consultant, surety, indemnitor, insurer, or agent)." Ordinary work product may be compelled only if the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989). Even where that showing is made, the Court must protect against disclosure of the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative." Fed. R. Civ. P. 26(b)(3)(B).

The doctrine reaches well beyond documents authored by a lawyer. In *United States v. Nobles*, 422 U.S. 225, 238–39 (1975), the Supreme Court explained that attorneys "often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," and that it is therefore "necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." This Court applied that principle in its Order. ECF No. 55 at 13. The text of Rule 26(b)(3)(A) is broader still, expressly including a consultant or agent or a party or the party's attorney.

Where material serves more than one purpose, the Ninth Circuit applies the "because of" test, asking whether, considering the totality of the circumstances, the document was created because of anticipated litigation and "would not have been created in substantially similar form but for the prospect of that litigation." *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 907–08 (9th Cir. 2003); *United States v. Richey,* 632 F.3d 559, 567–68 (9th Cir. 2011). A litigation purpose need not be the sole purpose; protection applies where the litigation purpose so permeates the material that its non-litigation aspects cannot be discretely severed. *Torf*, 357 F.3d at 910. Opinion work product receives heightened, nearly absolute protection. *Holmgren v. State Farm Mut.*

*Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

Work-product protection is not waived as readily as the attorney-client privilege. Because the protection exists against "adversaries," "only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119–21 (9th Cir. 2020). Any implied waiver must be no broader than necessary to cure a demonstrated unfairness, and opinion work product remains subject to heightened protection even where some waiver is found. *Id.* at 1124–26. A waiver premised on testimony is similarly confined: *Nobles* held that a party who elected to present his investigator as a witness waived protection only "with respect to matters covered in his testimony." *United States v. Nobles*, 422 U.S. 225, at 239–40 (1975). Further, where protected material is actually produced, the waiver reaches "only as to that subject," a blanket waiver untethered to the matter actually disclosed is error. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100–01 (9th Cir. 2010). Federal Rule of Evidence 502(a) imposes the same limits: an intentional disclosure of protected material extends to undisclosed material only where the two concern the same subject matter **and** ought in fairness to be considered together.

## VI. ARGUMENT

### A. A Party and His Counsel May Retain a Researcher or Investigator, and Doing So Forfeits Neither the Privilege Nor the Work-Product Exemption

#### *1. The Rule protects material prepared by consultants and agents, not only by lawyers.*

Defendants' lead argument requires Roberts to be either a licensed attorney or an employee of Plaintiff's counsel. ECF No. 58 at 8–9. Both observations about Roberts are true, and neither is relevant. Rule 26(b)(3)(A) protects material prepared "by or for another party or its representative," and expressly lists a "consultant" and an "agent" among covered representatives. It does not require the representative to practice law, to appear as an advocate, or to be retained by counsel rather than by the party. *Nobles* holds squarely that the doctrine protects "material prepared by agents for the attorney as well as those prepared by the attorney himself," 422 U.S. at 238–39, and this Court has already recognized that the doctrine "applies to documents created by investigators working for attorneys, provided the documents were created in anticipation of litigation," ECF No. 55 at 13.

Defendants cite no authority — because there is none — holding that a party forfeits work-product protection by engaging a non-lawyer investigator directly rather than through counsel. The distinction Defendants press would make protection turn on which of two allied parties signs the engagement letter.

The same is true of the attorney-client privilege. It "may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *Richey*, 632 F.3d at 566. Nevada's privilege statutes are to the same effect and reach both directions of this relationship: a "representative of the client" is "a person having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client," NRS § 49.075 — which is precisely what the Power of Attorney made Roberts — and a "representative of the lawyer" is "a person employed by the lawyer to assist in the rendition of professional legal services," NRS § 49.085. Communications between the client or the client's representative and the client's lawyer are privileged. NRS § 49.095(1).

***2. Roberts is Myers' representative on this record.***

The documents Defendants filed establish that Roberts served as a litigation consultant, researcher, investigator, or other similar role. As set out above, the Research Services Agreement identifies this case by caption and number, recites that Myers required research to support the litigation, assigns Roberts the tasks of obtaining and analyzing evidence and collaborating with counsel's team, runs through the conclusion of this action, and ties compensation to the outcome; the Addendum applies it retroactively to the date of the arrest. ECF No. 58-13 at 2–3, 6–7. The Power of Attorney separately authorized claims, litigation, records, and subpoena activity in Myers' name, including the retention of counsel. ECF No. 58-12 at 2–3. On this record the Court has already observed that Myers "retained Roberts as his investigator and researcher and, in some regard, as his representative." ECF No. 55 at 15.

The Agreement's independent-contractor clause which recites that Roberts is not an employee, agent, or partner of Myers, ECF No. 58-13 at 4, allocates employment and tax status between the contracting parties. It does not negate Roberts' status as a litigation "consultant" under Rule 26(b)(3)(A), which conditions protection on function rather than on employment, and which

lists consultants precisely because they are not employees. The same Agreement defines litigation-support duties, imposes confidentiality, and requires delivery of Roberts' work product to Myers. Nor does Myers contend that the Power of Attorney made Roberts an attorney at law. It is evidence that Myers authorized Roberts to act on claims, records requests, subpoenas, and the retention of counsel while investigating anticipated litigation.

***3. Disclosing Roberts under Rule 26(a)(1) was mandatory, not a concession.***

Defendants argue that listing Roberts in initial disclosures was "a concession that Roberts is not Myers' representative" and that their interactions are discoverable. ECF No. 58 at 8. That logical conclusion does not follow. Rule 26(a)(1)(A)(i) *required* disclosure of an individual likely to have discoverable information and Roberts was an eyewitness to certain events. Roberts was present at the scene of the arrest and appears on the Marshals' body-worn camera. Disclosing him was *required*, and a party does not waive protection over his litigation file by complying with the disclosure rules. Defendants have themselves disclosed their marshals as witnesses; yet no one supposes that opened the City Attorney's file to discovery. Defendants also revive the suggestion that Nevada Rule of Professional Conduct 3.7 (which governs attorneys, of which Mr. Roberts is not one) should disqualify Roberts from being "categorized as an advocate." *Id.* at 10. This Court addressed that argument: it was not clear Roberts is acting as an advocate at all, Defendants offered "no case law or legal basis" for the relief implied, and the Court did not find the argument to have weight. ECF No. 55 at 6 n.1. Nothing has been added since. Nev. R. Prof. Conduct 3.7 governs a *lawyer* acting as trial advocate while serving as a necessary witness; Roberts is not a lawyer, is not counsel of record, and will testify only to what he personally saw and heard on January 9, 2025.

**B. Each Withheld Communication Was Created Because of This Litigation**

Defendants treat Roberts' status as a percipient witness as incompatible with later consultant work. ECF No. 58 at 8–11. The question is not whether one person may hold more than one category of information — people routinely do. Instead, the question is whether each withheld document was created because of anticipated or pending litigation, by or for Myers or his representative, resulting in a privilege or work product exemption. *Richey*, 632 F.3d at 567–68.

Four features of the record answer that question, and the *in camera* submission will confirm

it document by document. First, Plaintiff's litigation counsel is a party to fifty-three of the fifty-five withheld communications, and the remaining two are communications seeking legal representation with other lawyers. These are not Roberts' private reporting notes unrelated to litigation; they are exchanges among a client, his lawyers, and the researcher retained to support their work. Second, the subjects are litigation subjects throughout: the Nevada statutes governing marshal jurisdiction and peace-officer classification (Documents 1, 2, 12–14); additional stops and incidents (Documents 6, 16, 34, 41, 45); public records requests and the responses to them (Documents 7, 21, 47, 50, 51); evidence located and evaluated (Documents 3, 4, 15, 20, 27, 31); potential class members (Documents 24, 53); a witness interview (Document 35); filings and rulings in parallel marshal cases (Documents 9–11, 17–19, 28, 29, 32, 39, 40, 46); exhibits to support Plaintiff's motions (Document 38); and the mechanics of discovery in this action, including subpoenas (Documents 22, 23, 25, 26, 30, 42–44, 48, 49, 52). Third, the timing tracks the litigation and not any news cycle: the engagement was formed within five days of the arrest for the express purpose of researching claims and retaining counsel, ECF No. 58-8 at 2; the logged communications begin the day after counsel was retained; and the Agreement was executed a month later. Together these establish that the withheld communications would not have been created in substantially similar form but for this litigation.

As to the five entries that include Ms. Spears, that circumstance calls for the document-specific review this Court ordered, not blanket production. Under *Torf*, a second purpose does not defeat protection where the litigation purpose permeates the material and cannot be discretely severed. *Torf,* 357 F.3d at 910. Those entries concern statutory research, a public records response, and rulings in parallel marshal cases — all litigation matters — and the Agreement's confidentiality covenant conditioned any sharing on Myers' written consent, so the material was never released from the obligation of secrecy as to Myers' adversary. *Sanmina*, 968 F.3d at 1119–21. If the Court's review nonetheless leads it to conclude that a particular communication would have existed in substantially similar form for a purely journalistic purpose, the remedy is an order as to that communication — not production of nearly two hundred pages of counsel-inclusive material. Here, however, it simply appears that the City is trying to peek at communications between journalists who published a high-profile story critical of the Defendants. This is simply abhorrent to the First

Amendment and the Plaintiff was shocked the Court even considered this as unprotected communications. Is the City permitted to subpoena Darcy Spears directly on her sources and research for her story? Can the City depose Darcy Spears about her investigation into the story? Respectfully, the Court should permit a broader First Amendment and journalism privilege that the prior Order seems to set forth.

### C. Most of the Withheld Material Is Further Specifically *Opinion* Work Product

Because counsel is a party to nearly every withheld email, these communications consist of counsel, his client, and his researcher discussing which incidents and individuals matter, which records to seek, which parallel proceedings to track, and what the results mean for the case. Even where such a communication transmits factual material, the selection, organization, and commentary reveal priorities, conclusions, and legal theories of Myers and his legal team. A roadmap of counsel's investigative choices discloses counsel's strategy as surely as a memorandum would. Certain entries are opinion work product in the most conventional sense: Document 35 summarizes an interview Roberts conducted with another person asserting similar claims; Document 38 forwards material assembled to assist counsel in preparing motions; and Documents 22, 23, 25, 26, 30, 31, 42–44, 48, 49, and 52 concern whom to subpoena, how, and how to respond to the City's subpoena. That is core trial-preparation material, discoverable, if ever, only where the mental impressions themselves are at issue and the need is compelling. *Holmgren*, 976 F.2d at 577; *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney"). Defendants do not assert that counsel's mental impressions are an element of any claim or defense, and they cannot: the operative question is whether City Marshals exceeded their statutory jurisdiction, not what Plaintiff's lawyer thought about it. Even if the Court were to find some factual portion of a particular document discoverable, Rule 26(b)(3)(B) requires that mental impressions, conclusions, opinions, and legal theories be redacted or withheld.

### D. Defendants Have Never Attempted to Show Substantial Need or Undue Hardship, and Could Not

Even ordinary work product, let alone opinion work product, is not discoverable on request.

Rule 26(b)(3)(A)(ii) conditions production on substantial need and inability to obtain the substantial equivalent without undue hardship. Myers raised this in opposing the first motion; Defendants answered that they were "not required to make that showing." ECF No. 41 at 4; ECF No. 55 at 8. The renewed motion repeats the omission. A motion to compel work product that does not address the standard for compelling work product fails on its own face.

Nor could the showing of substantial need and inability to obtain the substantial equivalent without undue hardship be made if the Defendants tried. Defendants seek information about the Marshals' jurisdiction and conduct. The City employs the officers. It is the custodian of the Marshals' policies, dispatch and stop records, training materials, body-worn camera footage, and personnel files. It is the agency that answered the public records requests at issue, so it knows what was produced and to whom. The parallel cases Roberts monitored are public court records, and his X posts are public. Defendants have already subpoenaed Roberts, ECF No. 58-7, and remain free to depose him at length about everything he personally observed on January 9, 2025; Myers has never suggested otherwise. They may depose also Myers, their own officers, and any third party, and they may request the same public records Roberts requested, or simply consult their own files. What Defendants cannot obtain elsewhere is Plaintiff's selection, organization, and assessment of the evidence in consultation with counsel, however that is not a hardship the discovery rules exist to relieve. It is the protection the rule exists to preserve; the principal function of the doctrine is to "[create] an environment in which each lawyer feels not only free, but pressured, to do his own work and to make both his investigation and his evaluation of the case as aggressive, as thorough, and as internally frank as possible." *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 538 (N.D. Cal. 1987).

Defendants' own explanation of their motive confirms the point. They say the produced recording "raises questions" about other conversations. ECF No. 58 at 4. A request premised on questions raised is a fishing expedition, and this Court need not condone it. *Rivera*, 364 F.3d at 1072. Defendants also emphasize Myers' statement on the January 9 call that he intended to "make new case law." Whatever rhetorical appeal that line holds, the scope of the Marshals' statutory jurisdiction and the reasonableness of their conduct are objective questions. A plaintiff's

determination to vindicate his rights, and to help others similarly situated do the same, is not a defense to having violated them, and it does not create a substantial need for his lawyer's file.

**E. Defendants Have Not Established Any Waiver**

***1. No waiver was intended, and Fed. R. Evid. 502(a) requires an intentional disclosure of protected material for waiver.***

Myers did not intend to waive, and did not waive, any privilege, exemption or protection. His counsel produced the factual material concerning Roberts as a witness, the recording of the roadside call and the emails at MYERS 001735 through 001740, without asserting any privilege or exemption to them, because that material is factual and unprotected. Everything generated after Roberts assumed his research role was logged and withheld. Under Fed. R. Evid. 502(a), a disclosure extends to undisclosed material only where the disclosure was intentional, the disclosed and undisclosed material concern the same subject matter, and the two ought in fairness to be considered together. None of those conditions is satisfied by the production of unprotected evidence of the underlying event.

***2. Waiver presupposes a disclosure of protected work product; there was none.***

The January 9th recording captured a spontaneous telephone call during a traffic stop, recorded incidentally by a dashcam. It predates the Power of Attorney by five days, counsel's retention by seven weeks, the Research Services Agreement by more than two months, and the filing of this action by nearly three months. Defendants nowhere explain how a contemporaneous recording of the underlying event was "prepared in anticipation of litigation." It was not. Producing unprotected evidence of the event does not waive protection over later trial-preparation communications. Every authority Defendants invoke involves disclosure of genuinely protected material. In *Hernandez*, the party produced his former attorney's actual notes and the attorney's communications with a witness — core work product — and even then the waiver reached "only as to that subject." *Hernandez,* 604 F.3d at 1100. In *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 24–25 (9th Cir. 1981), the disclosure was of privileged attorney-client communications. In *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340–41 (9th Cir. 1996),

the holder produced a protected recording to an adversary. Defendants identify no authority holding that producing a non-privileged recording of a roadside phone call waives protection over a client's later communications with his lawyers.

***3. Exhibit J is not Myers' disclosure of anything.***

The Order directed that a renewed motion "attach the communications that Myers has already produced to Defendants." ECF No. 55 at 17. In place of MYERS 001735 through 001740, Defendants attached Roberts' public X social media posts. Their own index describes Def.'s Exhibit J as "X posts by Doug Roberts," ECF No. 58-1 at 2, and the exhibit bears ROBERTS Bates numbers — it was produced in response to Defendants' subpoena. One page is a screenshot of a messaging thread displaying no content at all. ECF No. 58-11 at 12. A non-party's public statements to the world cannot constitute Myers' selective disclosure of his own trial-preparation materials to an adversary, and they cannot support any theory of unfairness. *Sanmina* requires disclosure to an adversary or conduct inconsistent with maintaining secrecy from an adversary. 968 F.3d at 1119–21. Public commentary about a pending lawsuit is not that. Defendants also refer in passing to "some social media communications" produced by Myers, ECF No. 58 at 6, but they do not analyze the content of any such communication, identify which logged document covers the same matter, or explain why fairness requires the two to be considered together. Defendants bear the burden of establishing the waiver they invoke.

***4. Disclosing a percipient witness is not a waiver, and the Nobles rule is not triggered.***

*Nobles* is a trial case. The defendant there elected to call his investigator as a witness to recount witness interviews, making testimonial use of the investigator's work; the Court held that this waived protection "with respect to matters covered in his testimony." 422 U.S. at 239–40. The waiver arose from testimony actually given, was measured by the content of that testimony, and followed a voluntary election. Neither condition exists here. Roberts has not testified and has not been deposed, so there is no testimony against which to measure a waiver — which makes Defendants' request speculative and premature. Myers' disclosure of Roberts was not an election at all: the rule compelled it, because Roberts was present at the scene of the arrest. Treating mandatory

disclosure as waiver would penalize the transparency the disclosure rules are designed to produce. If Myers later elicits testimony concerning protected work, the Court can address waiver based on the testimony actually offered and limit any relief to the matters that testimony covers. Yet that simply has not occurred.

***5. Any waiver must be narrowly confined to the matter actually disclosed.***

If the Court concludes that the produced recording was protected and that its production waived protection, the waiver reaches only the subject of what was disclosed. ECF No. 55 at 16. That subject is narrow and concrete: what Roberts said to Myers by telephone during the January 9, 2025 stop about whether the Marshals had authority to stop him on the freeway, and whether Myers should accept a citation. Myers produced that conversation in full, along with the Roberts emails at MYERS 001735 through 001740; nothing on the disclosed subject has been withheld. The withheld communications concern something categorically different: the later investigation of the City's conduct toward other people, i.e., additional stops, other incidents, other lawsuits, records requests, potential class members, potential witnesses, and litigation logistics. A real-time lay conversation on the night of an arrest and a lawyer's subsequent direction of a class investigation do not concern the same subject matter, and they need not in fairness be considered together. Fed. R. Evid. 502(a). Defendants' contrary position — that because both touch "marshal authority" the waiver swallows the file — is a blanket-waiver theory under another name, and *Hernandez* forecloses it. 604 F.3d at 1100–01.

***6. There is no sword and shield here.***

The sword-and-shield doctrine prevents a party from affirmatively relying on protected material to establish a claim while denying the adversary the access needed to test that reliance. *Sanmina*, 968 F.3d at 1122–25. *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003), and *Lambright v. Ryan*, 698 F.3d 808 (9th Cir. 2012), on which Defendants rely, are habeas cases in which the petitioner's ineffective-assistance claim made counsel's own conduct the question to be adjudicated. *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 276 F. Supp. 2d 1084 (D. Nev. 2003), involved selective disclosure of privileged communications on the same subject as those withheld. Myers has placed nothing at issue. Producing an unprotected recording of the underlying event is not affirmative use

of later work product, and identifying a percipient witness is not affirmative use of anything.

**F. The Log's Attorney-Client Designations Are Preserved and Now Supported**

The Court's leave was limited to the work-product doctrine, and the arguments above are sufficient by themselves to require denial of the renewed motion. Plaintiff notes, however, that the Court's observations concerning the attorney-client privilege rested expressly on the absence of information rather than on a determination that the privilege could not apply: Myers had not explained who the additional attorneys were, had not argued that the communications were made for the purpose of obtaining legal advice, and had not shown how counsel used the research. ECF No. 55 at 11–13. The revised log and the accompanying declarations answer each point. The communications were made for the purpose of obtaining and delivering legal advice concerning Myers' claims. Mr. Siegel is Myers' own criminal defense counsel in the prosecution the City brought over this same stop; a communication among a client, his civil lawyer, and his criminal lawyer is not a disclosure to a third person. NRS § 49.055. Documents 54 and 55 are communications with lawyers from whom Myers sought representation, which have long been held privileged. *Barton v. U.S. Dist. Court*, 410 F.3d 1104, 1111 (9th Cir. 2005); NRS § 49.045. Because the renewed motion seeks an affirmative order compelling production, Plaintiff may resist it on any applicable ground, and the log's designations are asserted in good faith under Rule 26(b)(5)(A) for the Court's consideration on the record now before it.

**G. In Camera Review, Not Blanket Production, Is the Appropriate Course**

Review of the documents permits a document-specific determination without first destroying the protection in dispute, which is precisely what Defendants' requested order would do. Should the Court find, as to any particular document, that it would have existed in substantially similar form for a non-litigation purpose, or that it falls within the narrow subject actually disclosed, Plaintiff respectfully requests that any resulting order (1) limit production to the particular factual portions the Court finds unprotected or waived; (2) require redaction of all mental impressions, conclusions, opinions, and legal theories under Rule 26(b)(3)(B); (3) preserve protection for communications outside the matter actually disclosed; and (4) designate any produced material confidential and restrict its use to this litigation. However, Plaintiff believes that a review will show both that (1)

various privileges and work product exemptions apply, and (2) the Defendant has not made any showing of need or hardship to invade the work product or mental impressions therein.

## VII. CONCLUSION

The Court gave Defendants a narrow, well-defined second opportunity: brief the work-product question, put the produced materials before the Court, and explain what the scope of any waiver should be in light of their content. Defendants instead re-filed their first motion, substituted a non-party's public social media posts for the production the Order required them to attach, revived an advocate-witness theory the Court had already set aside for want of authority, and again declined to address substantial need or undue hardship. The motion rests on two propositions that Rule 26 and Ninth Circuit law do not support: that a litigation consultant must be a lawyer or a lawyer's employee, and that disclosure of an unprotected roadside phone call and a non-party's public posts waives protection across the subject of an entire lawsuit. Stripped of those propositions, what remains is a request to read opposing counsel's file to learn what Plaintiff's lawyer asked his researcher to look for, what the researcher found, what they made of it, and how they intend to use it. The discovery rules exist to prevent exactly that type of fishing expedition by one's adversary.

Plaintiff respectfully requests that the Court deny Defendants' Renewed Motion to Compel (ECF No. 58). Alternatively, following the *in camera* review conducted concurrently with this briefing, the Court should order only narrowly tailored production of the particular non-opinion material it finds unprotected or actually waived, with the redactions and protections set out above.

Dated this 20th day of August, 2026.

**BREEDEN & ASSOCIATES, PLLC**

*/s/ Adam J. Breeden, Esq.*

**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
376 E. Warm Springs Rd., Suite 120
Las Vegas, NV 89119
Phone: (702) 819-7770
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of August, 2026, I served a copy of the foregoing legal document **PLAINTIFF DEREK MYERS'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO COMPEL [ECF NO. 58]** via the method indicated below:

| | |
|---|---|
| X | Through the Court's ECF/CM system on all registered users |
| | Pursuant to FRCP 5, by placing a copy in the US mail, postage pre-paid to the following counsel of record or parties in proper person:<br>NECHOLE GARCIA, ESQ.<br>PAUL MATA, ESQ<br>495 S. Main Street, Sixth Floor<br>Las Vegas, NV 89101<br>*Attorneys for Defendants* |
| | Via receipt of copy (proof of service to follow) |

An Attorney or Employee of the following firm:

/s/ Kirsten Brown

**BREEDEN & ASSOCIATES, PLLC**