JEFFRY M. DOROCAK
City Attorney
Nevada Bar No. 13109
By: NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
By: PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
(702) 229-6629
(702) 386-1749 (fax)
Email: ngarcia@lasvegasnevada.gov
Email: pmata@lasvegasnevada.gov
Attorneys for DEFENDANTS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEREK MYERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LAS VEGAS, a political subdivision of the state of Nevada; JASON BROOKS, individually; SERGIO GUZMAN, individually; and JASON POTTS, individually,<br><br>Defendants. | CASE NO. 2:25-cv-0562-GMN-DJA |

**DEFENDANTS' REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL**

Defendants CITY OF LAS VEGAS, JASON BROOKS, SERGIO GUZMAN, and JASON POTTS ("Defendants"), through their attorneys of record, JEFFRY M. DOROCAK, City Attorney, NECHOLE GARCIA, Chief Deputy City Attorney, and PAUL MATA, Deputy City Attorney, file this Reply in Support of Defendants' Renewed Motion to Compel. Plaintiff's Response failed to establish the existence of a blanket work product privilege, so this Court should compel disclosure.

This reply is based upon the pleadings and papers on file herein, the following points and authorities, and any oral argument that the Court may entertain.

. . . .

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Myers attempts to draw a time limit on when Defendants may access communications between himself and Roberts. But his argument that Defendants are only entitled to communications from before the Power of Attorney and Research agreements ("the agreements") were executed fails for two reasons. First, the representative relationship undergirding the work product doctrine is functional, not contractual. A document does not become work product simply because a party later characterizes the person who created or received it as an "investigator," "researcher," or "consultant." That is particularly true here because Roberts was initially disclosed as a percipient witness. However, to the extent a representative relationship is present, it existed on January 9, 2025. Indeed, when examining the disclosed January 9th call between Myers and Roberts, it is clear Roberts was already functioning in the role of consultant. Second, Roberts and Myers made the Research Agreement retroactive to January 9, 2025. Thus, the contractual representative relationship was in effect on January 9, 2025. Either way you slice it, the disclosed communications were eligible for waiver because they took place when the purported representative relationship existed. Voluntarily disclosing the communications to Defendants served as a waiver as to the subject matter in the call.

The disclosed call contains not only facts regarding the incident, but facts and commentary regarding whether the Marshals have authority to make the stop, commentary as to whether Myers should take the ticket or go to jail, and discussion of litigation against Defendants. Thus, Myers' waiver encompasses all these subject areas. Therefore, this Court can narrowly tailor the waiver to include: 1) factual information regarding the January 9th incident; 2) facts regarding Myers' intent to sue Defendants and "make case law" before the incident; and 3) facts and commentary regarding the marshal's conduct and authority. Additionally, those documents not prepared in anticipation of litigation – such as communications including Darcy Spears - should also be disclosed to Defendants.

Finally, the facts and timeline surrounding Myers' retention of Roberts make it apparent they entered into the agreement at least in part to shield communications from Defendants.

According to Roberts' own declaration, he is a journalist. ECF 63-5 at ¶2. He is not a paralegal or an investigator. He has no formal legal or investigative training. Yet, Myers hired him, an important fact witness, instead of someone much more qualified, to be his "consultant." This Court should not sanction Myers' attempts to use the privilege as a sword and shield, and grant Defendants' Renewed Motion to Compel.

## II. ARGUMENT

Myers argues that it is not improper to have hired a fact witness as a consultant on this case, and that it was totally within his rights to do so. However, there is a reason why courts have looked with skepticism at the claims that a fact witness will also serve as a consultant: because it muddies the waters regarding what information is discoverable. Moreover, such an action allows the party to selectively claim privileges, which is fundamentally unfair to the opposing party. The fact is that Myers initially disclosed Roberts as a fact witness when the supposed consultant/representative relationship existed. This fact alone should preclude his ability to claim the work product privilege. Even if this Court finds the work product privilege does apply, Myers waived that privilege when he produced communications between himself and Roberts. Finally, while Defendants do not have to show a substantial need because the work product doctrine does not apply, such a need exists here. Thus, this Court should grant Defendants' Renewed Motion to Compel.

### A. Myers failed to establish work product protection for his communications with Roberts.

Myers bears the burden of establishing that each withheld document is work product. *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003). He has failed to meet that burden on two fronts. First, he has failed to establish that the agreements turn Roberts into some sort of "consultant" or paralegal for Myers. Much of the work for which Myers supposedly retained Roberts, such as performing public records requests, did not require any sort of special representative relationship to accomplish. Myers further failed to establish that Roberts' involvement was for litigation rather than general newsgathering or personal advocacy. At a minimum, Myers must establish on a document-by-document basis that Roberts acted as a

litigation consultant at counsel's direction when the communication was created. Instead, he just makes blanket claims that he relied on Roberts. That is insufficient to establish a representative relationship.

Moreover, Myers failed to establish that the documents were because of litigation. Myers' own framing shows mixed purposes, including newsgathering with Darcy Spears and public records activity that would occur irrespective of litigation. The Response describes multiple entries involving statutory research, public records responses, media related content, and commentary on news stories, some of which include Spears and are said to serve journalistic purposes. Myers must show that each withheld communication would not have been created in substantially similar form but for the prospect of litigation. His Response does not carry that burden. Instead, it relies on generalized narratives and role characterizations. Where the same content would have existed for non-litigation purposes (e.g., journalism, public commentary, or advocacy), it is not protected work product and must be produced.

**B. Waiver exists because Myers intentionally and voluntarily disclosed communications.**

Myers attempts to argue the work product relationship did not exist until after the communications were disclosed, so no waiver exists. That is incorrect. The representative relationship that forms the basis for the work product doctrine is functional, not contractual. The January 9, 2025 communications between Myers demonstrate that, to the extent there is a representative relationship, Roberts was already functionally in that role. Indeed, Roberts acts as a representative of Myers by providing his commentary as to whether marshals have the authority to stop Myers and advises Myers just to take a ticket. In the call, Roberts further acts in a representative capacity by calling the City of Las Vegas on Myers behalf. Thus, Roberts functionally acted as a representative. Moreover, in the call, Myers also makes clear that he is already preparing for litigation when he says, "I told you that I was going to make case law."

Even if the representative relationship only started when the agreements were signed, the January 9th communications were still covered. Myers and Roberts made the Research Agreement retroactive back to January 9, 2025. ECF 37-3 at p. 6. Therefore, the contractual relationship

existed on the date of the disclosed communications. Either way, the purported representative/consultant relationship existed on the date of the disclosed communications. Thus, disclosure of those communications constitutes a waiver.

Defendants still maintain the agreements alone do not create work product privilege. Roberts is a fact witness, and as such, should be precluded from also serving as a consultant. Nonetheless, to the extent this Court is inclined to consider the work product doctrine here, Myers waived it when he disclosed communications between himself and Roberts. The Ninth Circuit has made clear there is no blanket waiver when a disclosure takes place. *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010). Rather, the waiver would be narrowly tailored to the subject matter that has been disclosed. *Id*. Here, this Court can narrowly tailor the waiver to match the matters already disclosed, namely: 1) factual information regarding the January 9th incident; 2) facts regarding Myers' intent to sue Defendants and "make case law" before the incident; and 3) facts and commentary regarding the marshal's conduct.

Myers also now distinguishes his communications with Roberts as being "opinion" work product. It is true that opinion work product is afforded greater protection. *In re Martin Marietta Corp*., 856 F.2d 619, 626 (4th Cir. 1988). However, opinion work product can be protected through targeted redaction. *See In re Allen*, 106 F.3d 582, 599 (4th Cir. 1997). To be clear, Defendants do not seek the disclosure of the mental impressions or legal theories of Myers' counsel. Rather, Defendants seek factual material, commentary and attachments. To the extent they are intertwined with opinion work product, the solution is partial redaction rather than blanket withholding.

Finally, Myers also attempts to distinguish his case from *U.S. v. Nobles*, by arguing that no waiver has occurred because Roberts has not offered up any testimony. However, that is a distinction without a difference. FED. R. EVID. 502 does not require testimony in order for a waiver to occur; intentional disclosure is enough. FED. R. EVID. 502(a)(2).

Ultimately, Myers' call contained facts about the stop and Myers' prior intent to initiate a lawsuit, commentary as to whether the Marshals have authority to make a stop, and commentary in the form of Roberts advising Myers to take a ticket and get it dismissed later. Thus, a waiver

. . . .

occurred as to all these subjects. This Court should order Myers to produce withheld communications that cover this subject matter.

**C. Myers voluntarily disclosed Roberts as a witness.**

Myers argues that he had to disclose Roberts as a witness because he is required by Rule 26 to disclose any possible witness. That is a misreading of the rule. What Rule 26 actually requires is the disclosure of witnesses "that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i). Thus, it is not that Myers had to disclose every possible witness; really, he only had to disclose witnesses that he seeks to use to support his claims. And Myers' Response makes clear that it is his intent – to have Roberts testify in support of his claims. It is also important to note that the supplemental disclosures are dated after Roberts' supposed agreements with Myers, yet that did not stop Myers from characterizing Roberts as merely an "acquaintance" with discoverable information in his disclosures. Myers' disclosure of Roberts as a fact witness he intends to use as trial serves as a waiver of any privilege. This disclosure of some of their conversations further serves as a waiver of the privilege. Myers' bare assertion that it does not waive the privilege does not satisfy his burden to prove the privilege was not in fact waived. *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

**D. The timeline of events indicates Myers' intent to use the work product protection as a sword and shield.**

Several factors lend credence to the notion that Myers is attempting to use the work product privilege as a sword and shield. First, Myers provides nothing to justify why he picked Roberts of all people to perform work for him. According to Roberts, he is a journalist. ECF 63-5 at ¶2. He is not an attorney, a paralegal, or investigator by trade. He has no legal training. One would think Myers would hire an individual in one of those professions to perform legal research and consult with his attorney. Instead, he picks a key fact witness with no legal training to conduct research and opine about legal strategy. Myers' claim that Roberts is needed to obtain public records also strains credulity because anyone can obtain public records, including those who, like Myers, live out of state. One does not need to hire a consultant for that purpose. Moreover, the Research

Agreement permits Roberts to break confidentiality by sharing matters with Darcy Spears. ECF 37-3 at p. 7. If Roberts' work was truly only for litigation purposes, it would not permit sharing information with a news reporter.

Adding to the skepticism is the fact that Myers did not initially object to Defendants' requests for communications on the basis of any privilege. Instead, Myers only objected on the basis of the request being overbroad and burdensome. He also did not initially produce a privilege log. It was not until after Defendants met and conferred with Myers that he first raised the journalist, attorney-client, and work product privileges. Likewise, Myers provides shifting rationales for his disclosure of prior communications. First, he asserted a blanket protection for all communications; now, the protection only applies to communications subsequent to the agreements. These sorts of "rolling" objections by Myers are not only suspect, they unfairly prejudice Defendants. *Rogers v. Webstaurant Store, Inc.*, No. 4:18-CV-00074-JHM, 2018 WL 6728575, at *3 (W.D. Ky. Dec. 21, 2018).

Indeed, these discrepancies lend further credence to the notion Myers is using the work product doctrine as a sword and shield. He suggests that Roberts be available to testify about things that help Myers prove his case, such as whether Myers was drinking prior to the incident. However, he posits that Roberts should not be questioned about other interactions that may hurt his case, such as any discussions that bring Roberts' credibility, the possibility of bias, or Myers' motivations into doubt. Such an approach hamstrings Defendants' ability to defend its case, which is exactly what the sword and shield doctrine is designed to avoid. *Lambright v. Ryan*, 698 F.3d 808, 823 (9th Cir. 2012). Myers should not be permitted to wield privileges as a sword and shield. Thus, Defendants' Renewed Motion to Compel should be granted.

**E. Defendants do not have to show a substantial need because waiver occurred, but such a need exists.**

Myers also argues that Defendants' motion should be denied because Defendants failed to show a substantial need for the materials pursuant to Rule 26(b)(3). However, that rule only applies when the materials are in fact protected by the work product privilege. That privilege has been waived here, so Defendants do not have to demonstrate a substantial need. Indeed, Defendants are

entitled to the information simply because it is relevant and can also serve as impeachment material. FED. R. CIV. P. 26(b)(1). However, even if substantial need was required, Defendants meet that criteria. The produced communications raise the strong possibility that Myers intended to sue Defendants before he was even pulled over. This raises questions that go to Myers' motivation for driving recklessly in front of the marshals in the first place. The statement points to other conversations between Myers and Roberts that may shine more light on Myers' motivations. Further, the contemporaneous factual content of the Myers-Roberts' exchanges is uniquely captured in the withheld communications and is not reproducible through depositions alone without access to what was said, transmitted, or relied upon at the time. Defendants can only get that information by accessing the withheld communications between Myers and Roberts.

Moreover, the withheld communications appear to contain compilations, identification, and descriptions of incidents, witnesses, and public records responses that Myers contends support his claims. Thus, these are directly relevant to Defendants' core defenses and class issues and are not available elsewhere. Finally, a substantial need exists because Roberts is an important fact witness whose testimony may have been shaped by his exposure to the legal theories and strategies he discussed with Myers' counsel. Indeed, Defendants are entitled to determine whether "coaching from the attorney concerning the party's legal theory … could bleed over and affect the witness' recitation of [his] underlying factual observations." *Pacificorp v. Northwest Pipeline GP*, No. 3:10-cv-00099-PK, 2012 WL 13195528, at *1, *3 (D. Or. Nov. 6, 2012). This not only creates bias in witness fact testimony; it creates an unfair advantage gained by Myers. That unfair advantage further creates a substantial need that should be rectified by this Court.

**F. The waiver was intentional for purposes of Rule 502.**

Finally, Myers argues that any waiver is not intentional, so it does not exist pursuant to FED. R. EVID. 502. However, the intent mentioned in this rule is not just whether a party intends to waive the privilege. Intent can also be established when a party intentionally produced a privilege document it believes supports its position. *Ringelberg v. Vanguard Integrity Professionals – Nevada, Inc.*, No. 2:17-cv-01788-JAD-PAL, 2018 WL 555694, at *4 (D. Nev. Jan. 24, 2018) (citing Advisory Committee Notes to Rule 502(a) revised, 11/28/07) ("A party may

not intentionally put privilege or protected information into litigation in a selective, misleading, or unfair manner"). Indeed, the Advisory Committee notes to Rule 502 make clear that the rule "does not alter the substantive law regarding when a party's strategic use in litigation of otherwise privileged information obliges the party to waive privilege regarding other information on the same subject matter, so that the information being used can be fairly considered in context." *Id.*

In *Century Aluminum Co. v. AGCS Marine Ins. Co.*, the court found that the intentional disclosure of a privileged document constituted an intentional waiver. 285 F.R.D. 468, 471-2 (N.D. Cal. 2012); *Carmody v. Board of Trustees of University of Illinois*, 893 F.3d 397, 406 (7th Cir. 2018). Many other courts likewise have found intentional production of a privileged document to constitute a waiver of the privilege. *Ringelberg,* 2018 WL 555694, *at 4; *Zeiter v. Walmart Inc.*, No. 2:21-cv-00061-APG-DJA, 2024 WL 1907385, at *3 (D. Nev. Apr. 29, 2024); *Jordan v. United States*, 552 F. Supp. 3d 575, 579 (S.D. W. Va. 2021); *Courtade v. United States*, 243 F. Supp. 3d 699, 704 (E.D. Va. 2017). Indeed, the question here is not whether Myers intentionally waived the privilege; it is whether they intentionally produced communications between himself and Roberts that are supposedly privileged to help his case. Here, Myers intentionally produced communications between himself and Roberts where they discuss the traffic stop and filing a lawsuit against Defendants. Indeed, it is clear from the Initial and Supplemental Disclosures that Myers intentionally produced that information. Thus, he waived any supposed privilege.

**G. Myers improperly reasserts the attorney-client and journalist privileges.**

In his Response, Myers attempts to reassert the attorney-client privilege and to a lesser extent, the journalistic privilege. However, this Court already ruled that those privileges do not apply here. ECF No. 55 at 10:2-3, 13:5-7. It found that Myers failed to carry his burden in those regards and only invited re-briefing on the narrowed topic of the work doctrine. *Id.* at 13:5-7, 17:13-14. Myers' attempt to reassert those privileges after this Court has already ruled is improper. Thus, this Court should disregard those portions of Myers' Response.

## III. <u>CONCLUSION</u>

Myers fails to establish that the work product privilege applies, especially when he voluntarily disclosed Roberts as a fact witness. Even this Court finds that the work product

privilege does apply, Myers waived it by intentionally producing communications he believes are beneficial to his case. Those communications encompass facts and commentary regarding the stop, marshal authority and prior conversations about suing Defendants. Thus, Myers should be compelled to produce communications that fall into these subject areas. Moreover, while Defendants did not have to demonstrate a substantial need for the documents because of the waiver, a substantial need exists. Therefore, Defendants respectfully request that this Court grant their Renewed Motion to Compel.

DATED this 3rd day of September, 2026.

JEFFRY M. DOROCAK
City Attorney

By: */s/ Nechole Garcia*
NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
PAUL MATA
Deputy City Attorney
Nevada Bar No. 14922
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
Attorneys for DEFENDANTS